**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POM WONDERFUL LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE COCA COLA COMPANY,<br><br>　　　　Defendant. | NO. CV 08-06237 SJO (JTLx)<br><br>**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br>[Docket No. 8] |

　　　　This matter is before the Court on Defendant The Coca Cola Company's ("Coca Cola") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed November 26, 2008. Plaintiff Pom Wonderful LLC ("Pom") filed an Opposition, to which Coca Cola replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for January 5, 2009. *See* Fed. R. Civ. P. 78(b). For the following reasons, Coca Cola's Motion is GRANTED IN PART, DENIED IN PART.

I.　　BACKGROUND

　　　　Pom produces, markets, and sells POM WONDERFUL® brand bottled pomegranate juice and various pomegranate juice blends, including a pomegranate blueberry juice blend. (Compl. ¶ 11.) Coca Cola, under the brand Minute Maid, is one of Pom's primary competitors in the bottled pomegranate juice market. (Compl. ¶ 17.) In September 2007, Coca Cola announced a new

product in its "Minute Maid Enhanced Juices" line, called "Minute Maid® Enhanced Pomegranate Blueberry Flavored 100% Juice Blend."[1] ("the Juice").  (Compl. ¶ 18.)

Pom alleges that "the main ingredients in [the Juice] are neither pomegranate nor blueberry juice, but rather, apple and grape juice." (Compl. ¶ 19.)  Specifically, in ranking the ingredients of the Juice by volume, apple juice ranks first, grape juice ranks second, pomegranate juice ranks third, and blueberry juice ranks fifth. (Compl. ¶ 22.)  Nevertheless, Coca Cola labels the Juice as "Pomegranate Blueberry" juice and advertises and markets the Juice, through its packaging, commercials, Minute Maid's website, and other forms of advertising, "based on the representation that [its] primary ingredients . . . are pomegranate and blueberry juice, when, in fact, the primary ingredients are actually apple and grape juice."  (Compl. ¶¶ 8, 20.)  As such, Pom alleges that purchasers of the Juice "are likely to be misled and deceived by Coca Cola's . . . labeling, marketing and advertising," which damages not only the consuming public but also Pom as Coca Cola's competitor. (Compl. ¶¶ 22–26.)

Based on these allegations, Pom brought suit against Coca Cola, alleging claims for (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising under California Business and Professions Code § 17500; and (3) statutory unfair competition under California Business and Professions Code § 17200. (*See* Compl. ¶¶ 27–48.)  Coca Cola now moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def.'s Mot.") 2.)

---

[1] Coca Cola takes issue with the Complaint's consistent reference to the product at issue as "Pomegranate Blueberry" without using the full name of the product, "Pomegranate Blueberry Flavored Blend of 5 Juices," as printed on the label featured in the Complaint. (*See generally* Compl. & Compl., Ex. A.; Def.'s Mot. n.1.)  Although the Court notes that Exhibit B to the Complaint, a depiction of Minute Maid's website, shows that Coca Cola does—at least on occasion—refer to the product as "Pomegranate Blueberry" without including the phrase "Flavored Blend of 5 Juices," the Court will refer to the product at issue as "the Juice" to avoid the conflict between the parties over its proper name. (*See* Compl., Ex. B.)

## II.   DISCUSSION

### A.   Lanham Act Claim

Coca Cola argues that Pom's Lanham Act claim should be dismissed because the claim is merely an impermissible circuitous route to challenge determinations of the FDA, as the name of the Juice conforms to applicable juice-naming statutory and regulatory requirements featured in the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations promulgated by the FDA.  (*See* Def.'s Mot. 7–8.)  In opposition, Pom contends that Coca Cola's misleading statements are actionable under the Lanham Act, because its Lanham Act claim does not depend in any way on violations of the FFDCA or FDA regulations and established authority permits Lanham Act claims involving FDA-regulated products to proceed as long as the court is not required to interpret or give original definition to FDA regulations.  (*See* Pl.'s Opp'n Def.'s Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(6) ("Pl.'s Opp'n") 4–9.)

Both the Lanham Act and the FFDCA regulate the marketing of various products, including juice beverages, but each statute "serves different, although somewhat overlapping, purposes." *See* 15 U.S.C. § 1125(a); 21 U.S.C. § 343; *Mutual Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. Oct. 17, 2006).  The central focus of the Lanham Act is to prevent false or misleading representations in promoting a product in the marketplace.  *See Mutual Pharm. Co.*, 459 F. Supp. 2d at 932.  As such, "the Lanham Act is primarily intended to protect commercial interests from being harmed by the unfair competition created by a competitor . . . using false or misleading advertising" to promote its products.  *Id.* at 933 (internal citations and quotations omitted).  Consistent with this purpose, the Lanham Act expressly establishes a private right of action, allowing a private plaintiff to sue as a result of harm from a competitor's false or misleading advertising.  *See* 15 U.S.C. § 1125(a); *Mutual Pharm. Co.*, 459 F. Supp. 2d at 933.  In contrast, the FFDCA is focused on protecting the public by ensuring that goods sold in the marketplace are safe and not misbranded.  *See id.*  Unlike the Lanham Act, the FFDCA and its implementing FDA regulations may not be privately enforced, as the right to enforce the FFDCA "lies exclusively in the federal government's domain, by way of either the FDA or the Department of Justice." *Id.* at

934 (internal citations omitted); *see* 21 U.S.C. § 337.  As another court in the Central District of California has explained,

> That the statutes may regulate the same market should not be seen as necessarily requiring that application of one be at the sufferance of the other . . . .  Where the statutes overlap they perform different, but complementary roles to regulate what products can make it to market ([F]FDCA), and how those products are then promoted in the market (the Lanham Act and to a certain extent the [F]FDCA through its misbranding standards).

*Mutual Pharm. Co.*, 459 F. Supp. 2d at 933.

Given that the FFDCA, unlike the Lanham Act, does not provide for a private right of action, courts have "tread[ed] carefully when applying the Lanham Act to the advertising of goods . . . that are also subject to regulation by the [F]FDCA lest it be used as a vehicle to accomplish indirectly something a party could not accomplish directly."  *Mutual Pharm. Co.*, 459 F. Supp. 2d at 934 (internal citations omitted).  Thus, courts have dismissed Lanham Act claims that merely seek to enforce a violation of the FFDCA or FDA regulations, thereby attempting to circumvent the FFDCA's denial of a private right of action.  *See Summit Tech, Inc. v. High-Line Med. Instruments, Co., et al.*, 922 F. Supp. 299, 306 (C.D. Cal. Feb. 28, 1996).  Similarly, courts have found that they are unable to consider a Lanham Act claim seeking to "challenge determinations of the FDA."  *See Rita Medical Sys., Inc. v. Resect Med., Inc.*, No. C 05-03291 WHA, 2006 WL 2038328, at *3 (N.D. Cal. July 17, 2006) (finding that court was unable to consider Lanham Act claim implicating review of FDA's determination that defendant was permitted to market device at issue because it was "substantially equivalent" to other devices on the market).  Furthermore, reasoning that the proper interpretation and enforcement of relevant FDA regulations is not an issue properly decided as an original matter by a district court in a Lanham Act case, "courts have refused to permit a Lanham Act claim to proceed where, in order to determine the falsity or misleading nature of the representation at issue, the court would be required to interpret and then apply [F]FDCA statutory or regulatory provisions."  *Mutual Pharm. Co.*, 459 F. Supp. 2d at 934; *see Summit Tech, Inc.*, 933 F. Supp. at 933–35 (dismissing Lanham Act claims that would have required the court to "perform an original interpretation" of the FDA regulations, as "the FDA has not yet determined how it will interpret and enforce its own regulations."); *see also Sandoz Pharms Corp. v. Richardson-Vicks,*

*Inc.*, 902 F.2d 222, 231–32 (3d Cir. 1990) (affirming district court's finding that plaintiff could not proceed on Lanham Act claim, based on allegedly inaccurate labeling, that would require court to "interpret . . . and enforce . . . potentially ambiguous FDA regulations and, thus, "determine preemptively how a federal agency will interpret and enforce its own regulations").

Concern regarding interference with the FFDCA and FDA regulations, "however, should not be seen as an invitation to leave the field completely occupied by the [F]FDCA; the Lanham Act has its place even with respect to goods otherwise subject to regulation by the [F]FDCA." *Mutual Pharm. Co.*, 459 F. Supp. 2d at 934 (internal citations omitted); *see Ethex Corp. v. First Horizon Pharm. Corp.*, 228 F. Supp. 2d 1048, 1055 (2002) (internal citations omitted) (False statements, however, are actionable under the Lanham Act even if they involve FDA-regulated products. But the cases have cautioned that the courts should not usurp the FDA's authority to interpret and enforce its own regulations."); *Summit Tech, Inc. v. High-Line Med. Instruments, Co., et al.*, 933 F. Supp. 918, 933 (C.D. Cal. July 16, 1996) ("[F]alse statements are actionable under the Lanham Act, even if their truth may be generally within the purview of the FDA."). Therefore, courts have allowed a Lanham Act claim to proceed where the claim "does not require an interpretation or application of FDA regulations." *Summit Tech, Inc.*, 933 F. Supp. at 933, 935 (internal citations omitted); *see Grove Fresh Distribs., Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 715–16 (N.D. Ill. Sept. 28, 1989) (allowing plaintiff to pursue Lanham Act claim based on defendant's alleged misrepresentation that its orange juice is "100% orange juice from concentrate," as plaintiff did not rest claim on FFDCA violations and could establish Lanham Act violation without referencing FDA regulations defining "orange juice from concentrate"). Thus, "so long as courts are not required to perform authoritative interpretation and direct application of FDA regulations, then the simple fact that a matter touches upon an area dealt with by the FDA is not a bar to proceeding with a claim under the Lanham Act." *Mutual Pharm. Co.*, 459 F. Supp. 2d at 935 (*Summit Tech, Inc.*, 933 F. Supp. at 933) (internal quotations omitted).

Here, Coca Cola's objections are partially meritorious, as Pom's Lanham Act claim may be construed to challenge FDA regulations and require interpretation of the FDA's regulations implementing the naming and labeling of multiple-juice beverages. Specifically, the Complaint

alleges that "[b]y name alone, one would expect that the primary ingredients in Coca Cola's Pomegranate Blueberry Product are pomegranate and blueberry juice" and objects to the misleading nature of the Juice's labeling. (*See* Compl. ¶ 22.) The FFDCA and the FDA implementing regulations, however, involve a number of requirements for labeling a multiple-juice beverage. Section 343(f) of the FFDCA governs the prominence of information required by the FFDCA to appear on the label of a food product and Section 343(I) of the FFDCA specifies that "A food shall be deemed to be misbranded . . . [u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) . . . if the food purports to be a beverage containing . . . fruit juice, a statement with appropriate prominence on the information panel of the total percentage of such fruit . . . juice contained in the food . . . ." 21 U.S.C. § 343(f), (I). The FDA's implementing regulations specify that the "common or usual name" of a diluted multiple-juice beverage that identifies a juice on the label other than in the ingredient statement, which also contains another juice or other juices that are not on the label, must indicate that the juice identified on the label "is not the only juice present," e.g., by using the word "blend." *See* 21 C.F.R. § 102.33(c). Furthermore, if the juice identified on the label is not the predominant juice, then the "common or usual name" must indicate that the juice is present as "flavor or flavoring" or include the percentage of that juice contained in the beverage. *See* 21 C.F.R. § 102.33(d). In addition, representing that the juice "is used as a flavor" exempts the multiple-juice beverage from the requirement that if using more than one constituent juice name other than in the ingredient statement, the juice names must be used in descending order of prominence by volume. 21 C.F.R. § 102.33(b). As such, Pom's Lanham Act claim, with regard to the Juice's name and labeling, may be construed as impermissibly challenging the FDA's regulations regarding an acceptable "common or usual name" and appropriate labeling for a multiple-juice beverage. *See Rita Medical Sys., Inc.*, 2006 WL 2038328, at *3. Moreover, if Pom's Lanham Act claim were to focus on areas covered by the FFDCA and the FDA-implementing regulations, the Court would be required to interpret and apply FDA regulations as to the labeling of the Juice, which the FDA has not considered or approved. *Sandoz Pharms Corp.*, 902 F.2d 222, 231–32 (3d Cir. 1990); *Summit Tech, Inc.*, 933 F. Supp. at 933–35; *Mutual Pharm. Co.*, 459 F. Supp. 2d at 934. The

1  Court is unable to perform such an interpretation and application of the FDA's regulations as
2  applied to the Juice, because it would "usurp[] the FDA's discretionary role in the application and
3  interpretation of its regulations." *See Summit Tech, Inc.*, 922 F. Supp. at 306 (internal citation
4  omitted).

5        Nevertheless, the Court is largely unpersuaded by Coca Cola's argument, as Coca Cola's
6  argument does not address the majority of Pom's Lanham Act claim.  Pom's Lanham Act claim
7  alleges that Coca Cola misrepresents, in the Juice's advertising and marketing in addition to its
8  packaging, that the Juice's "primary ingredients . . . are pomegranate and blueberry juice." (*See*
9  Compl. ¶ 8.)  In contending that Pom's Lanham Act claim is merely an impermissible attempt to
10 challenge the FDA's juice-naming and labeling requirements, Coca Cola ignores the allegations
11 in the Complaint that extend beyond the "packaging" and "name" of the Juice to its "advertising"
12 and "marketing," including Minute Maid's website, a depiction of which is attached to the
13 Complaint.  (*See* Compl. ¶¶ 20–22, Ex. B.)  Pom's entire Lanham Act claim is not barred simply
14 because the Juice, as a multiple-juice beverage, is an FDA-regulated product. *See Mutual Pharm.*
15 *Co.*, 459 F. Supp. 2d at 934 (internal citations omitted); *Ethex Corp.*, 228 F. Supp. 2d at 1055;
16 *Summit Tech, Inc.*, 933 F. Supp. at 933.  The targeted FDA juice-naming and labeling regulations,
17 which Pom's Complaint does not argue Coca Cola violates, do not bar Pom from showing that
18 Coca Cola has otherwise advertised and marketed its product in a misleading manner that leads
19 consumers to believe that the primary ingredients are pomegranate and blueberry. (*See generally*
20 Compl.)  Because the Court, in contexts beyond the Juice's formal name and labeling areas for
21 which there are relevant FDA regulations, will not be required to interpret FDA regulations, Pom's
22 Lanham Act claim can proceed to the extent it seeks to redress Coca Cola's marketing and
23 advertising in such areas. *See Summit Tech, Inc.*, 933 F. Supp. at 933, 935 (internal citations
24 omitted); *Grove Fresh Distribs., Inc.*, 720 F. Supp. at 715–16.

25       Accordingly, the Court GRANTS IN PART Coca Cola's Motion to Dismiss Pom's Lanham
26 Act claim only to the extent it challenges the Juice's formal name and labeling in areas for which
27 the FDA has promulgated regulations implementing the FFDCA.
28

B. State Law Claims

1. Preemption

Pursuant to the Supremacy Clause, "Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (internal citations omitted). In determining whether a state law is preempted, the "ultimate touchstone" is congressional intent. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *see English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) ("Pre[]emption is fundamentally a question of congressional intent."). "As a result, any understanding of the scope of a pre[]emption statute must rest primarily on a fair understanding of congressional purpose." *Medtronic, Inc.*, 518 U.S. at 485–86 (internal citations and quotations omitted).

Supreme Court precedent establishes that state law is preempted in three circumstances. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). First, in express preemption, Congress may expressly define the extent to which its enactments preempt state law. *Id.* (internal citations omitted). In the absence of an express preemption provision, federal law may implicitly preempt state law. See *Crosby*, 530 U.S. at 372; *Freightliner Corp., et al. v. Myrick, et al.*, 514 U.S. 208, 287 (1995). Specifically, in field preemption, state law is preempted if it regulates conduct in a field that Congress intended federal law to occupy exclusively, which may be inferred if the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or in a field "in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* at 79 (internal citations omitted). The Supreme Court has emphasized that if Congress has legislated in "a field which the States have traditionally occupied," courts "must start with the assumption that the historic police powers of the States were not to be superseded unless that was the clear and manifest purpose of Congress." *Medtronic*, 518 U.S. at 484; *see English*, 496 U.S. at 79 (internal citations omitted). Finally, in conflict preemption, state law is preempted "to the extent that it actually conflicts with federal law," making compliance with both federal and state law impossible, or where it "stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress." *English*, 496 U.S. at 79 (internal citations omitted); *see Crosby*, 530 U.S. at 373 (internal citations omitted).

If Congress includes an express preemption provision in a statute, the inclusion of this provision "implies—i.e., supports a reasonable inference—that Congress did not intend to pre[]empt other matters" beyond the provision's reach. *Freightliner Corp.*, 514 U.S. at 288. An express preemption provision, however, does not "entirely foreclose[] any possibility of implied pre[]emption." *Id.*; *see Geier, et al. v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000).

### a.  The FFDCA's Express Preemption Provision

Coca Cola contends that Pom's state law claims are expressly preempted under the FFDCA's express preemption provision, as they seek to impose different juice-labeling requirements than those imposed by the FFDCA. (*See* Def.'s Mot. 12–14.) In opposition, Pom argues that its state law claims are not expressly preempted because none of the requirements mentioned in the FFDCA's express preemption provision are implicated by Pom's state law claims. (*See* Pl.'s Opp'n 15–16.)

Because the FFDCA contains an express preemption provision, passed as part of the Nutrition Labeling and Education Act of 1990 ("NLEA"), the Court must first focus on the "plain wording of the clause" to identify the "domain expressly preempted" by the language of the statute. *See Sprietsma v. Marine*, 537 U.S. 51, 62–63 (2002); *Medtronic, Inc.*, 518 U.S. at 484; *In re Farm Raised Salmon Cases*, 175 P.3d 1170, 1085 (2008) (internal citations omitted); *see also* Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353 (1990). This express preemption provision, Section 403A of the FFDCA or 21 U.S.C. § 343-1, provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by" various sections of the FFDCA, including section 343(f), 343(i)(1), and 343(i)(2), which may be relevant in this case, "that is not identical to the requirement of such section . . . ." 21 U.S.C. § 343-1(a)(2), (3); *In re Farm Raised Salmon Cases*, 175 P.3d at 1086 (internal citations omitted). For the purposes of this section, "'not identical to' . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or

9

labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) . . . or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) . . . ." 21 C.F.R. § 100.1(c)(4).

Under this statutory framework, state law that imposes obligations that are "not identical to" those imposed in Section 343(f) and 343(i) of the FFDCA, as well as the FDA's implementing regulation for these sections, are expressly preempted. *See* 21 U.S.C. § 343-1(a)(2), (3). As previously explained, Section 343(f) of the FFDCA governs the prominence of information required by the FFDCA to appear on the label of a food product and Section 343(i) of the FFDCA specifies that "A food shall be deemed to be misbranded . . . [u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) . . . if the food purports to be a beverage containing . . . fruit juice, a statement with appropriate prominence on the information panel of the total percentage of such fruit . . . juice contained in the food . . . ." 21 U.S.C. § 343(f), (i). The FDA's implementing regulations specify that the "common or usual name" of a diluted multiple-juice beverage that identifies a juice on the label other than in the ingredient statement, which also contains another juice or other juices that are not on the label, must indicate that the juice identified on the label "is not the only juice present," e.g., by using the word "blend." *See* 21 C.F.R. § 102.33(c). Furthermore, if the juice identified on the label is not the predominant juice, then the "common or usual name" must indicate that the juice is present as "flavor or flavoring" or include the percentage of that juice contained in the beverage. *See* 21 C.F.R. § 102.33(d). In addition, representing that the juice "is used as a flavor" exempts the multiple-juice beverage from the requirement that if using more than one constituent juice name other than in the ingredient statement, the juice names must be used in descending order of prominence by volume. 21 C.F.R. § 102.33(b). Given the allegations in the Complaint regarding Coca Cola's deceptive "packaging" of the Juice, which is a multiple-juice beverage containing apple juice, grape juice, pomegranate juice, and blueberry juice, it appears as though Pom, through its state law claims, may attempt to impose requirements differing from these naming and labeling requirements for multiple-juice beverages in the FFDCA and the FDA's implementing regulations. (*See* Compl. ¶¶

8, 19, 20, 22.) Section 403A of the FFDCA or 21 U.S.C. § 343-1, however, explicitly prohibits such an attempt to impose varying obligations through state law.

Accordingly, the Court GRANTS IN PART Coca Cola's Motion to Dismiss, finding that Pom's state law claims for false advertising under California Business and Professions Code § 17500 and statutory unfair competition under California Business and Professions Code § 17200 are preempted to the extent they seek to impose any obligations that are "not identical to"[2] the sections of the FFDCA, including the FDA's implementing regulations, referenced in Section 403A of the FFDCA or 21 U.S.C. § 343-1, the only relevant sections of which appear to be Section 343(f) and 343(i). *See* 21 U.S.C. §§ 343(f), (i); 343-1.

      b.  Implied Preemption

Coca Cola further argues that Pom's state law claims are impliedly preempted because the FFDCA is a comprehensive regulatory scheme of branding and labeling food products and the state law claims create obstacles to the accomplishment of Congress' objectives in enacting the legislation and conflict with the FDA's comprehensive beverage-naming regulations. (*See* Def.'s Mot. 14–15.) Pom, however, contends that its state claims are not impliedly preempted because the FFDCA's express preemption provision evidences that Congress intended to create a narrow preemptive field in light of historical state regulation of food and beverage labeling and false advertising. (*See* Pl.'s Opp'n 16–19.)

As an initial matter, the Court's implied preemption analysis is informed by Supreme Court precedent establishing that the presence of an express preemption provision, like that in the FFDCA, "implies—i.e., supports a reasonable inference—that Congress did not intend to pre[]empt other matters" beyond the reach of this provision. *See Freightliner Corp.*, 514 U.S. at 288; *see also Geier, et al.*, 529 U.S. at 869. Furthermore, consumer protection laws are within the states' historic police powers, which states have continually exercised to protect the health and safety of their citizens. *See Medtronic, Inc.,* 518 U.S. at 475; *In re Farm Raised Salmon Cases*,

---

[2] For FFDCA preemption purposes, "not identical to" has the meaning prescribed in 21 C.F.R. § 100.1(c)(4).

175 P.3d at 1088. Similarly, states' historic police powers also include laws protecting their people "against fraud and deception in the sale of food products at retail markets within their borders." *See Fla. Lime & Avocado Growers, Inc., et al. v. Paul, et al.*, 373 U.S. 132, 144 (1963) (internal citations omitted); *see also In re Farm Raised Salmon Cases*, 175 P.3d at 1088 (internal citations omitted) ("Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers. Indeed, as early as the 1860's, California was enacting laws regulating food marketing."). Given that the state laws at issue regulate a field that states have traditionally occupied, the Court, in accordance with Supreme Court precedent, must work on the presumption that Congress did not intend to preempt state law, which can be overcome only if Congress' intention to preempt is "clear and manifest." *See Medtronic*, 518 U.S. at 484; *English*, 496 U.S. at 79.

Further suggesting a lack of congressional intent to implicitly preempt state law through the FFDCA, in the NLEA, which added the FFDCA's express preemption provision, Congress expressly stated that the "[NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FFDCA]." Nutrition Labeling and Education Act of 1990; *see In re Farm Raised Salmon Cases*, 175 P.3d at 1085. This congressional statement is of particular importance in a preemption analysis where the "ultimate touchstone" is congressional intent. *See Medtronic*, 518 U.S. at 485; *English*, 496 U.S. at 78–79. As the Supreme Court of California has explained, Congress, with this statement, "made clear that the preemptive scope of [the FFDCA's express preemption provision] was to sweep no further than the plain language of the statute itself." *In re Farm Raised Salmon Cases*, 175 P.3d at 1091. Furthermore, the statement "evidences an intent to allow state and federal regulation to co-exist." *Id.* Although the Court is aware that Congress and the FDA, through regulations implementing the FFDCA, have enacted a number of food-labeling requirements, given that an express preemption provision in itself supports "a reasonable inference" that Congress did not intend to preempt matters beyond the scope of this provision, that Congress explicitly stated in an amendment to the FFDCA its intention not to preempt state law other to the extent it is preempted in the FFDCA's express preeemption provision, and the assumption against

preemption exercised in fields traditionally regulated by state police powers, the Court finds that Congress did not intend federal law to occupy exclusively the food-labeling and advertising field. Therefore, the Court will not extend preemption beyond the limits expressly identified by Congress in the FFDCA's express preemption provision and finds that Pom's state law claims are not impliedly preempted on "field preemption" grounds.

Finally, although Coca Cola vaguely contends that the state law claims "conflict with the FDA's comprehensive beverage-naming regulations," Coca Cola does not specify any implicated regulations beyond those already found to expressly preempt state law claims. (*See* Def.'s Mot. 14–15.) Furthermore, Coca Cola does not even attempt to argue that compliance with both the federal and state law at issue is impossible. (*See generally* Def.'s Mot. 14–15.) As such, the Court finds that the state law claims are not impliedly preempted on "conflict preemption" grounds.

Accordingly, the Court DENIES IN PART Coca Cola's Motion to Dismiss to the extent it argues that Pom's state law claims are impliedly preempted.

2. <u>Safe Harbor Doctrine</u>

Coca Cola argues that California's safe harbor doctrine bars Pom's state law claims because "the [F]FDCA and the FDA regulations governing the name of multiple-juice beverages clearly permit a juice beverage to be named by non-primary ingredients where words such as 'flavored' and 'blend' are used." (Def.'s Mot. 15–16; *see* Reply Mem. P. & A. Supp. Notice Mot. & Mot. Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def.'s Reply") 5.) The safe harbor doctrine "simply holds that a plaintiff may not bring an action under [California Business and Professions Code § 17200 that] challeng[es] business practices specifically permitted by other statutes." *McKell, et al. v. Wash. Mut., Inc., et al.*, 142 Cal. App. 4th 1457, 1474 (Cal. Ct. App. Sept. 18, 2006). Specifically, the safe harbor doctrine provides that "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Commc'ns, Inc., et al. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541 (1999). For the safe harbor doctrine to apply, the legislation must "actually 'bar' the action or clearly permit the conduct." *Id.* In other words, "courts may not use the unfair

competition law to condemn actions the Legislature permits. Conversely, the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair." *Id.* at 542.

To the extent the safe harbor doctrine applied in this case, it would only bar Pom's claim for statutory unfair competition under California Business and Professions Code § 17200 with respect to "business practices specifically permitted" or conduct "clearly permit[ted]" by the FFDCA, namely those specifying permissible "common or usual" names for multiple-juice beverages. *See Cel-Tech Commc'ns, Inc., et al.*, 973 P.2d at 541; *McKell, et al.*, 142 Cal. App. 4th at 1474. Because Coca Cola merely contends that the safe harbor doctrine applies to the "FDA's juice naming regulations" and the Court has already held that Pom's state law claims are expressly preempted to the extent they seek to impose obligations differing from those contained in the FFDCA and its accompanying FDA regulations regarding the Juice's "common or usual name," the safe harbor would not extend beyond the portion of the claims that the Court has already found to be expressly preempted by the FFDCA. *See* Def.'s Mot. 16; *supra* Part II.B.1.a. Accordingly, the Court declines to determine the issue.

III. RULING

For the foregoing reasons, Coca Cola's Motion is GRANTED IN PART, DENIED IN PART.

IT IS SO ORDERED.

February 10, 2009

*S. James Otero*

---
S. JAMES OTERO
UNITED STATES DISTRICT JUDGE