ANDREW S. CLARE (SBN 050289)
aclare@loeb.com
MARK D. CAMPBELL (SBN 180528)
mcampbell@loeb.com
DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, California 90067-4120
Telephone:  (310) 282-2000
Facsimile:  (310) 282-2200

DANIEL SILVERMAN (SBN 137864)
dsilverman@roll.com
JOIE MARIE GALLO (SBN 178064)
jgallo@roll.com
ROLL INTERNATIONAL CORP.
LEGAL DEPT.
11444 West Olympic Blvd., 10th Floor
Los Angeles, California 90064-1557
Telephone:  310-966-5700
Facsimile:  310-966-5758

Attorneys for Plaintiff
POM WONDERFUL LLC

MARC T.G. DWORSKY (SBN 157413)
Marc.Dworsky@mto.com
GREGORY D. PHILLIPS (SBN 118151)
Gregory.Phillips@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

MARTIN D. BERN (SBN 153203)
Martin.Bern@mto.com
ALISON J. MARKOVITZ (SBN 219716)
Alison.Markovitz@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105-2907
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Attorneys for Defendant
THE COCA-COLA COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY, a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  CV-08-06237 SJO (FMOx)<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL DOCUMENT PRODUCTION (L.R. 37-2 JOINT STIPULATION); DECLARATION OF DANIEL A. BECK AND [PROPOSED] ORDER**<br><br>Hearing:<br>   Hon. Fernando M. Olguin<br>   Date:    August 5, 2009<br>   Time:    10:00 a.m.<br>   Place:    Courtroom F, 9th Floor<br>              312 North Spring Street<br><br>Discovery cutoff:    Dec. 9, 2009<br>Pretrial conference: March 1, 2010<br>Trial date:              March 9, 2010 |

{031519.1}
8296476.1

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on August 5, 2009 at 10:00 a.m. or as soon

3 thereafter as this matter may be heard, in Courtroom F (9th Floor) of the United

4 States District Court for the Central District of California, 312 North Spring Street,

5 Los Angeles, California, before the Honorable Fernando M. Olguin, United States

6 Magistrate Judge, Plaintiff POM WONDERFUL LLC ("Pom Wonderful" or

7 "Plaintiff") will move and hereby does move for entry of an order compelling

8 Defendant The Coca-Cola Company ("TCCC") to produce documents in response to

9 Pom Wonderful's First Set of Request for Production of Documents (the "Request"

10 or "Requests").

11          Pom Wonderful served its Requests on TCCC on or about April 15, 2009.

12 TCCC provided written responses on or about June 2, 2009. TCCC's responses

13 were deficient for the reason, among others, that TCCC refuses to produce

14 documents relating to the naming, labeling and packaging of its Pomegranate

15 Blueberry juice product.

16          On June 4, 2009, Pom Wonderful's counsel requested in writing a discovery

17 conference with TCCC's counsel, pursuant to Local Rule ("L.R.") 37-1, to discuss

18 TCCC's responses and objections to Pom Wonderful's Request. See Declaration of

19 Daniel A. Beck (attached to the Joint Stipulation), Exhibit A (June 4, 2009 letter).

20 The discovery conference occurred on June 15, 2009. During the discovery

21 conference, TCCC refused to produce the documents requested by Pom Wonderful.

22          This Motion is made pursuant to L.R. 37-2 and is based on the parties'

23 attached Joint Stipulation and the exhibits and declarations attached thereto, any

24 supplemental memoranda subsequently filed, such additional evidence and

25 argument as may be presented at the hearing on this motion, all of the pleadings,

26 files and records in this proceeding, and such other evidence as may later be

27 submitted.

28

{031519.1}
8296476.1

1

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1  A copy of the initial scheduling order in this action is attached as Exhibit B

2  to the Beck Declaration.

3

4  Dated: July 10, 2009                    ROLL INTERNATIONAL CORPORATION
                                          LEGAL DEPARTMENT

5

6                                         By:___/s/ _Daniel S. Silverman_____
                                              Daniel S. Silverman

7                                             Attorneys for Plaintiff
                                              POM WONDERFUL LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTORY STATEMENTS................................................................ 1

   A.  Pom Wonderful's Introductory Statement ........................................... 1

   B.  TCCC's Introductory Statement.......................................................... 4

II.  ISSUES IN DISPUTE ............................................................................... 7

   A.  TCCC's Objections To Producing Its Naming, Labeling, and Packaging Documents ............................................................................ 7

   B.  Pom Wonderful's Position Re: TCCC's Objections To Producing Its Naming, Labeling, And Packaging Documents................................................................................................ 8

      1.  Judge Otero's Order Permitted Pom Wonderful's Lanham Act Claim To Proceed Against The Pomegranate Blueberry Product's Naming, Labeling, and Packaging. ................................................ 9

      2.  Judge Otero's Order Permitted Pom Wonderful's State Law Claims Under Cal. Bus. & Prof. Code §§ 17200 and 17500 To Proceed Against The Pomegranate Blueberry Product's Naming, Labeling, and Packaging. ................................................ 12

      3.  TCCC's Interpretation of the Otero Order's Ruling on Preemption is Erroneous.. ....................................... 15

      4.  Documents Relating to the Naming, Labeling, and Packaging of the Pomegranate Blueberry Product are Relevant to Pom Wonderful's Claims that the Product's Marketing and Advertising is False and Misleading. ............................................................... 17

   C.  TCCC's Position Re: Its Objections To Producing Its Naming, Labeling, and Packaging Documents ................................... 20

      1.  Judge Otero Dismissed Pom's Lanham Act and State Law Claims Based On The Name and Label of The Minute Maid Pomegranate Blueberry Flavored Blend of 5 Juices Product........................................... 21

      2.  Pom Has Not Asserted Any Claims Regarding The Product's Name or Labeling Other than Those Already Dismissed from The Case. .......................................... 24

      3.  Pom's State Law Claims Regarding The Formal Name and Labeling of The Product Were Dismissed. ................................................................. 25

i

4.  Pom's Attempt To Define "Advertising and
    Marketing" As Including the Name and Label of the
    Product Is A Transparent End-Run Around The
    Court's Ruling. ............................................................. 26

5.  TCCC's Discovery Requests Are Not At Issue Here. ............. 27

III.    THE DISPUTED DOCUMENT REQUESTS AND TCCC'S
        RESPONSES ...................................................................... 28

IV.     CONCLUSIONS ...................................................................... 39

    A.  Pom Wonderful's Conclusion ............................................. 39

    B.  TCCC's Conclusion............................................................ 39

# THE PARTIES' RULE 37-2 JOINT STIPULATION

## I. INTRODUCTORY STATEMENTS

### A. Pom Wonderful's Introductory Statement

Plaintiff POM WONDERFUL LLC ("Pom Wonderful" or "Plaintiff") respectfully requests that the Court order Defendant The Coca-Cola Company ("TCCC") to produce a complete set of documents in response to Pom Wonderful's First Set of Request for Production of Documents ("Request").

Pom Wonderful's Complaint asserts false advertising claims against TCCC pursuant to (1) the Lanham Act, 15 U.S.C. § 1125(a); (2) Cal. Bus. & Prof. Code § 17200, and; (3) Cal. Bus. & Prof. Code § 17500, accusing TCCC of misleading and deceiving consumers into believing that its Minute Maid Enhanced Pomegranate Blueberry juice product (the "Pomegranate Blueberry Product") primarily contains pomegranate and blueberry juice, when it actually contains primarily apple juice and grape juice, and includes relatively little pomegranate or blueberry juice. See Complaint, ¶¶ 17-26. TCCC thereby sought to capitalize on consumers' desire for the health benefits provided by pomegranate juice, benefits which are known due to scientific research that Pom Wonderful has funded and publicized. Id., ¶¶ 12-16. The Complaint asserts that TCCC has utilized deceptive marketing, advertising, naming, labeling, and packaging for its Pomegranate Blueberry Product. Id. ¶¶ 17-26. Consistent with the broad scope of discovery permitted under Fed. R. Civ. P. 26(b)(1), Pom Wonderful propounded Requests that are reasonably calculated to lead to the discovery of admissible evidence in support of its claims, and in rebuttal of TCCC's defenses.

In response to Pom Wonderful's Requests, TCCC has refused to produce documents relating to the product's naming, labeling, or packaging.[1] See Section

---

[1] Coca Cola refused to produce such documents in response to Requests nos. 13-18, 20, 22, 24, 26-27, 31, 34, 36, 37, 39, 40, 41, 44, 45, and 53. Each of these Requests, and Coca Cola's response, is quoted in full below in Section III.

1     PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1   II(A), infra (TCCC's objections). TCCC falsely contends that Pom Wonderful's

2   claims regarding the product's naming, labeling, and packaging were dismissed by

3   Judge Otero's February 10, 2009 Order Granting in Part, Denying in Part

4   Defendant's Motion to Dismiss [Docket No. 8] (the "Otero Order") (attached as

5   Exhibit C to the Declaration of Daniel A. Beck ("Beck Decl."), which is attached to

6   this Joint Stipulation). The Otero Order directly refutes TCCC's position. Judge

7   Otero held that "the Court is largely unpersuaded by TCCC's argument, as **TCCC's**

8   **argument does not address the majority of Pom's Lanham Act claim.**" Otero

9   Order, at 7 (emphasis added). Accordingly, TCCC's motion was granted "**only to**

10  **the extent it challenges the Juice's formal name and labeling in areas for which**

11  **the FDA has promulgated regulations implementing the FFDCA.**" Id.

12  (emphasis added). The Otero Order thus permits Pom Wonderful's Lanham Act

13  claim against the product's naming, labeling, and packaging, except regarding

14  "formal name and labeling in areas for which the FDA has promulgated regulations

15  implementing the FFDCA." Id.

16      With respect to Pom Wonderful's California law claims under Sections 17200

17  and 17500, Judge Otero permitted Pom Wonderful's claims to the extent they are

18  identical to the FFDCA and its implementing FDA regulations. See Otero Order, at

19  11. Pom Wonderful's state-law claims against the naming, packaging, and labeling

20  of the Pomegranate Blueberry Product are therefore not preempted because they are

21  identical to the FFDCA and its implementing FDA regulations. Pom Wonderful

22  further has moved, unopposed, for leave to file a [Proposed] First Amended

23  Complaint, which alleges as a predicate for its Section 17200 claim that TCCC has

24  violated California's Sherman Food, Drug, and Cosmetic Law, Health & Safe. Code

25  § 109875 et seq. (the Sherman Law). See Beck Decl., Exh. D. Preemption does not

26

27

28

1  apply to such a claim, which Pom Wonderful asserts against the product's naming,
2  labeling, and packaging.

3        Even assuming, *arguendo*, that TCCC's interpretation of the Otero Order was
4  correct, TCCC's naming, labeling, and packaging documents fall squarely within
5  the scope of materials discoverable under Fed. R. Civ. P. 26(b)(1). TCCC concedes,
6  as it must, that Pom Wonderful's claims against TCCC's marketing and advertising
7  of its Pomegranate Blueberry Product remain in the case. TCCC's marketing
8  strategy has determined the naming, labeling, and packaging of its Pomegranate
9  Blueberry Product. That naming, labeling, and packaging is a significant aspect of
10  the product's marketing. FDA regulations did not require TCCC to name its product
11  "Pomegranate Blueberry," as opposed to "Grape Apple" or myriad other options.
12  TCCC made that decision because of its marketing strategy. Similarly, FDA
13  regulations did not require TCCC to place a pomegranate image on its label in
14  conjunction with the name "Pomegranate Blueberry." TCCC made that decision
15  because of its marketing strategy. The naming, labeling, and packaging of the
16  Pomegranate Blueberry Product inherently evidences TCCC's continuing desire to
17  mislead consumers to believe its product is "Pomegranate Blueberry" juice, which is
18  further exemplified by its current advertising. TCCC's naming and labeling
19  documents are highly relevant to Pom Wonderful's claims that TCCC's marketing
20  and advertising intentionally misleads consumers – and Pom Wonderful's Requests
21  for those documents will lead to the discovery of admissible evidence.

22        Finally, TCCC has propounded its own document requests seeking Pom
23  Wonderful's naming, labeling, and packaging documents, which Pom Wonderful is
24  producing. TCCC cannot reasonably seek these documents from Pom Wonderful
25  while refusing to produce its own documents. TCCC should be ordered to make a
26  full production of documents in response to Pom Wonderful's Requests nos. 13-18,
27  20, 22, 24, 26-27, 31, 34, 36, 37, 39, 40, 41, 44, 45, and 53.

28

**B.   TCCC's Introductory Statement**

In its detailed order granting in part and denying in part a motion to dismiss brought by defendant The Coca-Cola Company ("TCCC"), the Court concluded that Pom Wonderful's ("Pom's") Lanham Act and state law claims could not proceed with respect to the "naming," "labeling," and "packaging" of the Minute Maid juice blend product at issue in this case. *See* Order Granting in Part, Denying in Part Defendant's Motion to Dismiss [Docket No. 8] (the "Order") (attached as Exhibit C to the Declaration of Daniel A. Beck.) The Court, however, denied a portion of TCCC's motion and allowed Pom to pursue its remaining allegations that TCCC had "*otherwise advertised and marketed* its product in a misleading manner that leads consumers to believe that the primary ingredients" in the Product "are pomegranate and blueberry" juice. *Id.* (emphasis added). Notwithstanding this ruling, Pom has pursued discovery of its dismissed claims as to the naming, labeling and packaging of the Minute Maid juice blend product as though the Court's order did not exist, thereby setting up what is effectively a motion for reconsideration of the Court's prior order addressed to the Magistrate Judge as a discovery dispute. TCCC believes that the Court said what it meant and meant what it said in the Order, and that discovery on claims that have been dismissed from the case is now foreclosed, notwithstanding Pom's attempt to relitigate these issues.[2]

This case is one of four actions brought by Pom in the Central District against defendants who sell fruit juice blends flavored with pomegranate juice and natural pomegranate flavorings. At the heart of Pom's litigation campaign is the legally erroneous claim that manufacturers of juice blends cannot legally name their

---

[2]   Nearly four months after the Court issued its Order dismissing its naming and labeling-based claims, Pom has sought leave of Court to amend its complaint in an effort to reintroduce the product name and label into this case. If the Court grants this request, TCCC will move to dismiss Pom's new legal theory, which is legally deficient for multiple reasons. Accordingly, Pom's presently unfiled and untested amended complaint cannot serve as a basis for discovery at this time.

1  products according to their predominant flavor unless that flavor corresponds with
2  the predominant juices in the blend.[3]

3      The premise underlying Pom's claims is that consumers purchase
4  pomegranate blueberry flavored beverages solely for the alleged heart and prostate
5  benefits that Pom has touted in its marketing. Even though TCCC has never made
6  functional health claims for its Minute Maid Enhanced Pomegranate Blueberry
7  Flavored Blend of 5 Juices that are related in any way to pomegranate or blueberry
8  juices, and has instead touted the brain function benefits of the added Omega-
9  3/DHA in the beverage, Pom nevertheless objects to the inclusion of the words
10 "pomegranate" and "blueberry" in the name of the product to describe its flavor.

11     The FDA, however, has rejected the very premise of Pom's complaint – that it
12 is "unscrupulous" to use the word "pomegranate" in the name of a product that
13 contains little pomegranate juice (¶16), and that consumers are "wrongfully
14 trick[ed]" (¶24) by such names. Instead, the FDA has determined that it is
15 acceptable and not misleading to use the name of a juice that provides the "flavor."
16 The word "flavored" adequately informs consumers of the nature of the product. In
17 adopting this final rule, the FDA stated "that manufacturers can use a product name
18 that identifies the juice that provides the characterizing flavor and specifically shows
19 that the juice is used to flavor the product. . . . The agency believes that using the
20 term 'flavor' with the name of the characterizing juice will inform the consumer that
21 the juice is present in an amount sufficient to flavor the beverage but will not imply
22 that the content of that juice is greater than is actually the case. . . . Accordingly,
23 FDA is providing in §102.33(d)(1) that *a multiple-juice beverage may use a product
24 name that specifically shows that the named juice is used as a flavor.*" 58 FR 2897

25 ─────
   [3]   Thus, according to Pom, consumers who are paying roughly $0.06 per ounce
26 for the Minute Maid Pomegranate Blueberry Flavored Blend of 5 Juices may think
27 they are getting the same juices as those contained in Pom's 100% pomegranate
   blueberry juice product costing between $0.21-$0.31 per ounce, which is 300 to
28 500% more expensive than the Minute Maid Enhanced Juice product.

1  at 2921, ¶50; *see also* 58 FR 2897 at 2900 ¶10 (emphasis added)(" [F]or beverages

2  where one or more but not all the juices are named and the named juice is not the

3  predominant juice, the agency is providing two alternatives for describing the

4  contribution of the named juice. The label must either state that the beverage is

5  flavored by the named juice (e.g. "raspberry flavored juice drink") or declare the

6  content of the named juice in a 5 percent range (e.g., "raspberry juice drink 2 to 7

7  percent raspberry juice"). The agency believes that this approach will adequately

8  deal with the kinds of misleading labeling discussed in the comments from

9  consumer groups.")

10      Nowhere in its complaint has Pom alleged that TCCC's product label fails to

11  comply to the letter with the requirements of the juice naming and labeling

12  regulations that the FDA expressly found would result in a name and label that

13  would be adequate and non-misleading. Rather, Pom simply disagrees with the

14  FDA's considered opinion regarding how juices should be named and labeled, and

15  has asked four different courts in this busy District to impose Pom's new and

16  different "predominance" standard for juice naming and labeling. Judge Otero

17  roundly rejected this attempt in a well-reasoned decision that tossed out of the case

18  Pom's claims based on the highly regulated common name and labeling of the

19  product, but allowed Pom to proceed on the basis of its allegations in the complaint

20  that defendant's "advertising" and "marketing" for the juice product somehow

21  misled consumers into believing that the product was "predominantly" pomegranate

22  and blueberry juice. Pom's recent discovery responses reveal that Pom's

23  "advertising and marketing" claims consist largely of the *same allegations*

24  *regarding the product name and label that the Court found to be non-actionable.*

25  *See* Pom's Response to Interrogatory No. 7, Beck Decl., Exh. I. Left to prosecute a

26  vestigial case that is devoid of factual support, Pom has instead opted to

27  manufacture this discovery dispute as a mechanism to seek reconsideration of the

28  Court's motion to dismiss order.

## II.    ISSUES IN DISPUTE

### A.    TCCC's Objections To Producing Its Naming, Labeling, and Packaging Documents

TCCC has asserted General Objections Nos. 13 and 14 in response to all of Pom Wonderful's Requests, stating as follows:

13.    Defendant objects to Plaintiff's requests for documents regarding the naming, labeling and packaging of the BEVERAGE, including documents that are included within the scope of the term "labeling" as interpreted by the FDA and Courts, in light of the Court's ruling dismissing all such claims from the case.

14.    Defendant objects to Plaintiff's requests for documents regarding the naming, labeling and packaging of the BEVERAGE, including marketing and advertising that does not contain any substantive information beyond the name, labeling and packaging of the BEVERAGE, in light of the Court's ruling dismissing all such claims from the case.

In addition to these General Objections, TCCC has asserted the following specific objection in response to Requests Nos. 13-18, 20, 22, 24, 26-27, 31, 34, 36, 37, 39, 40, 41, 44, 45, and 53:

Defendant further objects to this request as not reasonably likely to lead to the discovery of admissible evidence in this case because the Court has ruled that all of Plaintiff's claims that are based on the naming, labeling and packaging of the BEVERAGE have been dismissed from this case.

{031519.1}
8296476.1

7

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

**B. Pom Wonderful's Position Re: TCCC's Objections To Producing Its Naming, Labeling, And Packaging Documents**

In contravention of Fed. R. Civ. P. 26(b)(1) and Judge Otero's Order, TCCC has withheld documents in response to Pom Wonderful's Requests Nos. 13-18, 20, 22, 24, 26-27, 31, 34, 36, 37, 39, 40, 41, 44, 45, and 53.[4] Those Requests seek documents with core relevance to Pom Wonderful's false advertising claims against TCCC's Pomegranate Blueberry Product. For example:

- Request no. 15: "All DOCUMENTS, including COMMUNICATIONS, that REFER or RELATE to the design of the label for the POMEGRANATE BLUEBERRY JUICE PRODUCT.

- Request no. 24: "All DOCUMENTS, including COMMUNICATIONS, that REFER or RELATE to YOUR use of the phrase "Pomegranate Blueberry" on the label of the POMEGRANATE BLUEBERRY JUICE PRODUCT.

- Request no. 53: "All DOCUMENTS, including COMMUNICATIONS, that REFER or RELATE to the naming of the POMEGRANATE BLUEBERRY JUICE PRODUCT."

See Section III, below (quoting the verbatim text of each of the disputed Requests and TCCC's response).

For each of the disputed Requests, TCCC has erroneously objected that "Defendant further objects to this request as not reasonably likely to lead to the discovery of admissible evidence in this case because the Court has ruled that all of Plaintiff's claims that are based on the naming, labeling and packaging of the BEVERAGE have been dismissed from this case." See Section III. Judge Otero's

---

[4] Based on its objections, Coca Cola refused to produce *any* documents responsive to Requests Nos. 15, 16, 26, 27, 31, 34, 36, 37, 41, 44, 45, and 53. See Section III, infra. On the same objections, Coca Cola further responded that it will *limit* its production of documents sought by Requests Nos. 13, 14, 17, 18, 20, 22, 24, 39, and 40. Id.

1      Order refutes TCCC's contention that all claims against the Pomegranate Blueberry

2      Products' naming, labeling and packaging have been dismissed, however.

3      Moreover, the documents are independently relevant to Pom Wonderful's claims

4      which attack the product's marketing and advertising – claims which even TCCC

5      concedes, as it must, remain active in this case. Accordingly, TCCC must make a

6      full production of the documents responsive to Requests Nos. 13-18, 20, 22, 24, 26-

7      27, 31, 34, 36, 37, 39, 40, 41, 44, 45, and 53.

8

9

10

         1.      **Judge Otero's Order Permitted Pom Wonderful's Lanham Act**
                 **Claim To Proceed Against The Pomegranate Blueberry Product's**
                 **Naming, Labeling, and Packaging.**

11      Judge Otero denied most of TCCC's motion to dismiss Pom Wonderful's

12      Lanham Act claim, ruling that "the Court is largely unpersuaded by TCCC's

13      argument, as **TCCC's argument does not address the majority of Pom's**

14      **Lanham Act claim**." Otero Order, at 7 (emphasis added). Instead, Pom

15      Wonderful's Lanham Act claim was dismissed "**only to the extent it challenges the**

16      **Juice's formal name and labeling in areas for which the FDA has promulgated**

17      **regulations implementing the FFDCA**." Id. (emphasis added). Ignoring this plain

18      language, TCCC seeks to interpret the Otero Order as dismissing **all** of Pom

19      Wonderful's claims based on the product's naming, labeling, and packaging. Had

20      Judge Otero wanted to make that ruling, his Order would have simply said so. By

21      its express terms, however, the Otero Order permitted Pom Wonderful's Lanham

22      Act claim to continue to challenge the Pomegranate Blueberry Product's naming,

23      labeling, and packaging apart from its formal name and labeling in areas for which

24      the FDA has promulgated regulations implementing the FFDCA.

25      The names, labeling, and packaging which TCCC uses for its Pomegranate

26      Blueberry Product do not consist entirely of FDA-regulated formal names and

27      labeling, and Pom Wonderful's Lanham Act claim was therefore not dismissed

28      against them. For example, Judge Otero's Order found that TCCC occasionally

1   identifies its Blueberry Juice Product as "Pomegranate Blueberry."[5]  See Otero
2   Order at 2, n. 1.  TCCC repeatedly refers to its product as "Minutemaid Enhanced
3   Pomegranate Blueberry" and "Pomegranate Blueberry," both in marketing and
4   advertising and on its product labels and packaging.  See, e.g., Beck Decl., Exh. G
5   (color copy of http://www.minutemaid.com/PomegranateBlueberry.jsp).  Those
6   names for the product do not constitute "formal name and labeling in areas for
7   which the FDA has promulgated regulations implementing the FFCDA."

8          Similarly, the Otero Order did not determine – nor can TCCC establish – that
9   all aspects of the Pomegranate Blueberry Product's label constitute formal name and
10  labeling choices made pursuant to FDA regulations.  No FDA regulations required
11  TCCC to call its product "Pomegranate Blueberry."  No FDA regulations required
12  TCCC to display pictures of pomegranates and blueberries on its product's label.
13  Those marketing-driven images do not constitute the product's "formal name and
14  labeling," and were not placed on the label in order to comply with FDA
15  regulations.  They are squarely within the scope of Pom Wonderful's Lanham Act
16  claim.

17         Confirming the legal error in TCCC's position, Judge A. Howard Matz of the
18  Central District recently analyzed the Otero Order in the context of a similar false
19  advertising lawsuit between Pom Wonderful and Welch Foods, Inc.  On June 23,
20  2009, Judge Matz issued an order denying a motion to dismiss filed by Welch
21  Foods, Inc. (the "Matz Order").  See Beck Decl., Exh. H.  The Matz Order
22  recognized that Judge Otero's Order does not preclude Pom Wonderful's Lanham

23

24  [5]   "Coca Cola takes issue with the Complaint's consistent reference to the
25  product at issue as 'Pomegranate Blueberry' without using the full name of the
    product, 'Pomegranate Blueberry Flavored Blend of 5 Juices,' as printed on the
26  label featured in the Complaint. . . . [T]he Court notes that Exhibit B to the
    Complaint, a depiction of Minute Maid's website, shows that Coca Cola does – at
27  least on occasion – refer to the product as 'Pomegranate Blueberry' without
28  including the phrase "Flavored Blend of 5 Juices[.]"  Otero Order at 2, n.1.

1  Act claim, finding that the claim does not inherently require interpretation of
2  *technical* FDA regulations. Id., at pp. 6-7. "Put another way, Pom could establish
3  that Welch's label is misleading even if the FDA regulations set mandatory
4  standards for when a beverage may include an image of fruit on its label." Id., at 7.

5  In response to Pom Wonderful's document Requests, TCCC has pointed to
6  language in the Otero Order stating that the Lanham Act claim "may be construed as
7  impermissibly challenging the FDA's regulations regarding an acceptable 'common
8  or usual name' and appropriate labeling for a multiple-juice beverage." Otero
9  Order, at 6. With that language, the Otero Order simply noted that Pom
10 Wonderful's Lanham Act claim was subject to dismissal *to the extent it could be*
11 *construed* to challenge these specific FDA regulations. Pom Wonderful agrees that
12 the Otero Order precludes its Lanham Act claim if it sought to challenge these FDA
13 regulations, which Pom Wonderful's claims do not. In misinterpreting the Otero
14 Order as dismissing all claims against the product's naming, labeling, and
15 packaging, TCCC ignores this language and the language that defined the precise
16 scope of preclusion: "only to the extent it challenges the Juice's formal name and
17 labeling in areas for which the FDA has promulgated regulations implementing the
18 FFDCA." Otero Order at 7. Unhappy with this language, TCCC seeks to rewrite
19 the Otero Order as a broad dismissal. It cannot do so. The Otero Order's text,
20 denying the majority of TCCC's motion to dismiss the Lanham Act claim, controls.

21 Accordingly, TCCC's naming, labeling, and packaging documents are
22 relevant to Pom's Lanham Act claim against the naming, labeling, and packaging of
23 the Pomegranate Blueberry Product.

24
25
26
27
28

{031519.1}
8296476.1

11

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

2. **Judge Otero's Order Permitted Pom Wonderful's State Law Claims Under Cal. Bus. & Prof. Code §§ 17200 and 17500 To Proceed Against The Pomegranate Blueberry Product's Naming, Labeling, and Packaging.**

Judge Otero's Order permitted Pom Wonderful's state law claims to the extent they impose obligations "identical" to the FFDCA and its implementing regulations:

> Pom's state law claims for false advertising under California Business & Professions Code § 17500 and statutory unfair competition under California Business & Professions Code § 17200 **are preempted to the extent they seek to impose any obligations that are 'not identical to' the sections of the FFDCA**, including the FDA's implementing regulations, referenced in Section 40A of the FFDCA or 21 U.S.C. § 343-1, the only relevant sections of which appear to be Section 343(f) and 343(i).

Otero Order, at 11 (emphasis added). Accordingly, Pom Wonderful's state law claims were not dismissed insofar as they are "identical" to the FFDCA and its implementing regulation. See Otero Order at 11; see also In re Farm Raised Salmon Cases, 42 Cal. 4th 1077, 1094-95 (2008) (No preemption of Section 17200 claim predicated on violation of state law claims identical to FFDCA provisions). The Otero Order's plain terms provide that Pom Wonderful's state law claims may directly attack the naming and labeling of the Pomegranate Blueberry Product, so long as they do not seek to impose obligations which exceed those imposed by the FFDCA and its implementing regulations.

Consistent with the Otero Order, Pom Wonderful's state law claims for false advertising under Sections 17200 and 17500 seek to impose obligations identical to 21 U.S.C. § 343(a) (Section 403 of the FFDCA), which provides that a food is misbranded if "its labeling is false or misleading in any particular." Pom Wonderful's state law claims are based on its allegations that TCCC's Pomegranate Blueberry Product utilizes false or misleading marketing, advertising, naming, labeling, and packaging. See Complaint, ¶ 22. The product's naming, labeling, and

(031519.1)
8296476.1

12

1  packaging, taken as a whole, mislead consumers into believing that it is primarily
2  composed of pomegranate and blueberry juice, when it is in fact primarily
3  composed of cheap apple and grape juice. Id., ¶¶ 22-23. Because the FFDCA,
4  through Section 343(a), imposes liability for labels that are "false or misleading,"
5  Pom Wonderful's state law claims may, and do, assert identical claims against the
6  Pomegranate Blueberry Product's naming, labeling, and packaging.

7      Not only does the Otero Order permit this, but the express preemption
8  provision that the Otero Order cited as a basis for its ruling – Section 343-1 –
9  notably applies FFDCA express preemption to virtually every provision of Section
10  343 *except* section 343(a). See 21 U.S.C. § 343-1.[6] Congress has specifically stated
11  its intent that "[t]he [NLEA] shall not be construed to preempt any provision of
12  State law, unless such provision is expressly preempted under Section 403A [21
13  U.S.C. § 343-1] of the Federal Food, Drug, and Cosmetic Act." Pub. L. No. 101-
14  535, § 6(c), 104 Stat. 2535, 2364 (1990) (21 U.S.C. § 343-1 note).

15      Moreover, in addressing parallel preemption issues, and after considering the
16  Otero Order, Judge Matz recently rejected the argument that Pom Wonderful's state
17  law claims are preempted by the FFDCA. See Matz Order, at pp. 7-8 (Beck Decl.,
18  Exh. H); see also Wyeth v. Levine, 129 S.Ct. 1187, 1198-1200 (2009) (limiting
19  scope of FFDCA preemption).

20      Further mooting any contention that its state law claims impose obligations
21  "not identical" to the FFDCA, Pom Wonderful has moved for leave to file its
22  [Proposed] First Amended Complaint, which, albeit not required to do so, expressly

---

23  [6]    The Otero Order appears to assume that Pom Wonderful's state law claims
24  seek to impose obligations similar to what is set forth in 21 U.S.C. §§ 343(f) and (i),
25  which address the prominence of the information on the label (Section 343(f)) and
     the common name used on the label (Section 343(i)). However, Pom Wonderful's
26  state law claims are based on the fact that the label is false and misleading, thereby
     imposing obligations identical to 21 U.S.C. § 343(a), rather than attempting to
27  impose obligations similar to 21 U.S.C. §§ 343(f) and (i).

28

1     alleges as a predicate for its Section 17200 claim that TCCC has violated

2     California's Sherman Food, Drug, and Cosmetic Law, Health & Safe. Code §

3     109875 *et seq.* (the Sherman Law).[7] The motion for leave is unopposed. Section

4     110660 of the Sherman Law imposes obligations identical to 21 U.S.C. § 343(a) of

5     the FFDCA, providing that "[a]ny food is misbranded if its labeling is false or

6     misleading in any particular." The Sherman Law incorporates "[a]ll food labeling

7     regulations and any amendments to those regulations adopted pursuant to the

8     FDCA" as "the food labeling regulations of this state." Health & Safe. Code §

9     110100, subd. (a). Because these provisions of the Sherman Law are *identical* to the

10     FFDCA and its implementing regulations, an unfair competition claim based upon

11     them is *per se* not preempted. See Otero Order at 11; In re Farm Raised Salmon

12     Cases, 42 Cal. 4th 1077, 1098 (2008) (permitting unfair competition claim based on

13     Sherman Law violation because "while allowing private remedies based on

14     violations of state laws identical to the FDCA may arguably result in actions that the

15     FDA itself might not have pursued, Congress appears to have made a conscious

16     choice not to preclude such actions."). The Section 17200 claim pled by Pom

17     Wonderful's original Complaint also encompasses TCCC's Sherman Law violation,

18     but the [Proposed] First Amended Complaint alleges the point expressly. Pursuant

19     to its Sherman Law violation predicate, Pom Wonderful's Section 17200 claim is

20     not preempted against the Pomegranate Blueberry Product's naming, labeling, and

21     packaging.

22          Pom Wonderful's state law claims against the accused product's naming,

23     labeling and packaging have not been dismissed, because those claims are identical

24     to section 343(a) of the FFDCA, as well as its Sherman Law equivalent, Cal. Health

25     & Safe. Code § 110660. Pom Wonderful is thus entitled to the production of the

26     requested documents, as they go to the heart of Pom Wonderful's claims. Further,

27

28

---

[7]     A copy of the [Proposed] First Amended Complaint is attached as Exhibit D
to the Beck Declaration.

{031519.1}
8296476.1

14

1   they are clearly reasonably calculated to lead to the discovery of admissible

2   evidence regarding its claims.

3       **3.    TCCC's Interpretation of the Otero Order's Ruling on Preemption**

4           **is Erroneous.**

5       TCCC has nonetheless contended that Pom Wonderful's state law claims

6   were preempted insofar as they are based on highly-specific FDA naming and

7   labeling regulations. The Otero Order held exactly the *opposite*, however: Pom

8   Wonderful's state law claims are not preempted to the extent they are *identical* to

9   the FFDCA and its implementing regulations. See Otero Order at 11. Under the

10  Otero Order's plain terms, Pom Wonderful may assert state law claims identical to

11  the FFDCA and its corresponding FDA regulations, whether general or highly-

12  specific, without any preemption applying.

13      TCCC's secondary argument is that Pom Wonderful's claims against its

14  naming, labeling and packaging are precluded because TCCC's label complies with

15  all applicable, specific, federal labeling regulations. TCCC maintains that it cannot

16  be held liable under the *general* provisions of Section 343(a) when its labeling,

17  naming and packaging complies with more *specific* federal regulations for the

18  naming and labeling of juices. Based on this "safe harbor" defense, TCCC asserts

19  that Pom Wonderful's state law claims have been dismissed.[8] The "safe harbor"

20  argument fails for multiple independent reasons.

21      *First*, the Otero Order did not decide the safe harbor defense issue. Instead,

22  Judge Otero explicitly declined to address TCCC's safe harbor argument. See Otero

23  Order, at 13-14. TCCC therefore cannot contend that the Otero Order decided the

24  safe harbor defense against Pom Wonderful.

25

26  _____

27  [8]    The "safe harbor" defense was articulated by the California Supreme Court in
    Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 541

28  (1999); see also McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1474 (2006).

1    *Second*, TCCC has cited no legal authority holding that compliance with the
2    FDA's specific naming and labeling regulations – sections 343(f) and (i) – exempts
3    a product label from further liability under the broad misbranding provision of 21
4    U.S.C. § 343(a). In fact, Congress held the opposite by preempting claims under
5    343(f) and (i), but not 343(a), when in 1990 it enacted 21 U.S.C. § 343-1 as part of
6    the Nutrition and Education Labeling Act (NLEA). And as Congress further stated,
7    "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless
8    such provision is expressly preempted under Section 403A [21 U.S.C. § 343-1] of
9    the Federal Food, Drug, and Cosmetic Act." Pub. L. No. 101-535, § 6(c), 104 Stat.
10   2535, 2364 (1990) (21 U.S.C. § 343-1 note).

11            There are many potential ways in which a label may mislead consumers, and
12   there is no indication that Congress intended for specific FDA regulations to
13   preempt the general misbranding liability imposed by Section 343(a) for misleading
14   or deceptive labels. When Congress has wanted to create a safe harbor in the
15   FFDCA, it has done so expressly. See Pearson v. Shalala, 130 F. Supp. 2d 105,
16   107-108 (D.D.C. 2001) (Congress amended the FFDCA to create "safe harbor" for
17   dietary supplements, exempting them from FDA drug regulations); see also Farm
18   Raised Salmon, 42 Cal. 4th at 1092 ("Congress knows how to write a preemption
19   clause."). With respect to the naming and labeling requirements for juices,
20   Congress did not create such a statutory safe harbor premised on compliance with
21   specific FDA regulations. Indeed, the FDA would be robbed of its general authority
22   to seek redress for misbranding, pursuant to 21 U.S.C. § 343(a), if bare compliance
23   with the FDA's specific naming and labeling regulations precludes any more
24   general liability for labels under the FFDCA (such as, for example, misleading label
25   images).

26            **Third**, TCCC improperly presumes that it has complied with all relevant
27   FFDCA provisions and regulations. TCCC's Answer pleads "safe harbor" as its
28   Thirtieth Affirmative Defense, alleging that "Plaintiff's state law claims are barred

{031519.1}                                    16          PLAINTIFF'S MOTION TO COMPEL
8296476.1                                                 DOCUMENT PRODUCTION AND
                                                          JOINT STIPULATION (L.R. 37-2)

by California's safe harbor doctrine because TCCC's alleged actions, at all relevant times and places, were in compliance with applicable law." Answer, at 10. But TCCC has not proven such alleged compliance. The FDA has never determined that TCCC's accused Pomegranate Blueberry Product complies with all of the FFDCA provisions and corresponding FDA regulations regarding naming and labeling. To the extent a "safe harbor defense" even arguably applies to Pom Wonderful's California law claims, TCCC bears the affirmative burden of proving its compliance with all applicable FFDCA provisions and their implementing regulations. See, e.g., Bourgi v. West Covina Motors, Inc., 166 Cal. App. 45h 1549, 1660 (2008) (jury must determine whether defendant complied with Vehicle Code, establishing safe harbor defense against Consumers Legal Remedies Act claim). The Federal Rules, which permit broad discovery, certainly entitle Pom Wonderful to discover evidence rebutting TCCC's intended assertion of its Thirtieth Affirmative Defense.

4. **Documents Relating to the Naming, Labeling, and Packaging of the Pomegranate Blueberry Product are Relevant to Pom Wonderful's Claims that the Product's Marketing and Advertising is False and Misleading.**

Assuming, *arguendo*, that TCCC's interpretation of the Otero Order was correct – which it is not – TCCC has conceded that Pom Wonderful's claims against the Pomegranate Blueberry Product's marketing and advertising remain in the case.[9] Because of their manifest relevance to those claims, and the fact that requested documents are certainly reasonably calculated to lead to the discovery of admissible evidence, TCCC's naming, labeling, and packaging documents must be produced.

---

[9] See, e.g., Beck Decl., Exh. F at p.2 (June 11, 2009 letter from Kristin S. Escalante, counsel for Coca Cola, to Daniel S. Silverman, counsel for Pom Wonderful) ("Logically, therefore, when the Court identified those aspects of Pom's Lanham Act claim that may proceed, the Court referred only to *advertising* and *marketing*.") (emphasis original).

1   　　　To take an obvious example, TCCC's decision to name its product
2   "Pomegranate Blueberry" – rather than, say, "Apple Grape," which are the
3   predominant ingredients – evidences TCCC's intention to focus consumers on the
4   pomegranate and blueberry juice in the product, while downplaying the cheaper
5   juices it primarily contains. FDA regulations in no way required TCCC to name its
6   product "Pomegranate Blueberry." See Beck Decl, Exh. E (color copy of the
7   product's label). TCCC selected that particular name purely because of its
8   marketing considerations, considerations which are directly relevant to Pom
9   Wonderful's claims that TCCC's marketing misleads consumers into believing that
10  its product primarily contains pomegranate and blueberry juice. Similarly, TCCC
11  decided to prominently display a pomegranate and blueberries on the product's label
12  because it wanted to attract consumers to these juice components. Id. The FDA did
13  not make TCCC place those pomegranate or blueberry images on the label; TCCC's
14  marketing strategy placed them there. In fact, the name and label itself constitute
15  core aspects of the product's marketing and advertising. They are designed to sell
16  the product, not simply to avoid FDA actions.

17  　　　From the start, TCCC's marketing and advertising considerations have
18  determined the naming, labeling, and packaging of its Pomegranate Blueberry
19  Product. There was no "marketing free" development of that name, label, or
20  packaging. They inherently constitute marketing and advertising. The exact same
21  marketing considerations that drove TCCC to develop the product's name, label,
22  and packaging with a "Pomegranate" focus were equally involved in TCCC's later
23  decisions to market and advertise the product. They form part of the same
24  continuous effort to market the product to consumers, rather than constituting
25  distinct and unrelated "pre-advertising" and "post-advertising" phases of product
26  design.

27  　　　TCCC's position is particularly indefensible because the legal standard for
28  discoverability is simply whether a document is "reasonably calculated to lead to the

{031519.1}
8296476.1

18

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1    discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). It is beyond
2    reasonable dispute that Pom Wonderful's Requests for documents relating to the
3    naming of the Pomegranate Blueberry Product are likely to lead to admissible
4    evidence regarding its claims that TCCC has engaged in false or misleading
5    advertising. For example, TCCC refers to its product as "Pomegranate Blueberry"
6    on its Internet website, without any "flavored" or "blend" qualifications required by
7    FDA regulations. See Beck Decl., Exh. G. Judge Otero's Order recognized this
8    fact. See Otero Order at 2, n.1 ("TCCC does – at least on occasion – refer to the
9    product as 'Pomegranate Blueberry' without including the phrase 'Flavored Blend
10   of 5 Juices' "). The reason why TCCC chose to name its product "Pomegranate
11   Blueberry" in the first place is patently probative of the reason why TCCC later
12   chose to market the product by that same name – without any FDA qualifications –
13   on its website. Pom Wonderful is entitled to the production of documents that will
14   show how TCCC, from the start, intended to exploit the Pomegranate juice market
15   by naming its product "Pomegranate Blueberry," rather than myriad other options.

16        In response to Pom Wonderful's Requests, TCCC has offered to unilaterally
17   determine which specific naming, labeling, and packaging documents TCCC
18   believes are discoverable pursuant to Pom Wonderful's marketing and advertising
19   claims, and then produce only those documents. See Beck Decl., Exh. F, at p.4
20   (June 11, 2009 letter from Kristin S. Escalante, counsel for TCCC, to Daniel S.
21   Silverman, counsel for Pom Wonderful). Exemplifying the inadequacy of that offer,
22   TCCC contended during the parties' meet and confer that the documents relating to
23   its development of the product's name, label, and packaging are all irrelevant
24   because such development occurred prior to the product's marketing and
25   advertising. As pointed out above, that is absurd. From the beginning, TCCC's
26   marketing strategy determined the product's naming, labeling, and packaging. In
27   fact, the marketing department, likely working with a package design consultant,
28   carefully crafted the label to maximize the likelihood that consumers would be

1    misled to believe the product primarily or exclusively contained pomegranate juice

2    and blueberry juice.

3         Finally, ironically, TCCC demanded during the meet and confer that Pom

4    Wonderful produce its own naming, labeling, and packaging documents, despite the

5    fact they are not at issue in the case. Nonetheless, in the spirit of cooperation, and

6    recognizing the broad scope of discovery, Pom Wonderful has agreed to produce

7    those documents, which are irrelevant in this case. TCCC should, in turn, be

8    ordered to make a complete production of its own documents, which lie at the core

9    of this action. It would be an absurd result if TCCC were allowed to have Pom

10    Wonderful's naming, labeling, and packaging documents, while TCCC did not have

11    to produce similar documents.

12    **C.    TCCC's Position Re: Its Objections To Producing Its Naming, Labeling,**

13         **and Packaging Documents**

14         Pom's motion can be boiled down to a simple question: did the Court rule, as

15    its Order repeatedly states, that Pom may proceed only with its claims that defendant

16    advertised and marketed the juice blend product in a manner that was deceptive and

17    misleading and not on its additional claims that the product name and the product

18    label, both of which admittedly comply with specific FDA regulations, were

19    misleading to consumers? TCCC submits that the naming and labeling claims have

20    been dismissed from the case, and that discovery should therefore focus on the

21    issues remaining in this litigation. In addition, Judge Otero will have the

22    opportunity to address Pom's incorrect interpretation of the Court's Order in

23    connection with TCCC's expected Motion to Dismiss the Amended Complaint.

24    Therefore, no discovery inconsistent with the Court's Order should proceed at this

25    time.

26

27

28

1.   **Judge Otero Dismissed Pom's Lanham Act and State Law Claims Based On The Name and Label of The Minute Maid Pomegranate Blueberry Flavored Blend of 5 Juices Product.**

In December 2008, TCCC moved to dismiss Pom's Complaint. TCCC argued that Pom's Lanham Act claims were barred both because TCCC had complied fully with the FDA's detailed regulations regarding product name and labeling, and because Pom's claims would require the Court to interpret and apply the FDA's regulations. With regard to Pom's state law claims, TCCC argued that those claims were expressly and impliedly preempted, as well as precluded by California's "safe harbor" doctrine.

On February 10, 2009, the Court issued a ruling granting in part and denying in part TCCC's Motion to Dismiss ("Order").

**Pom's Lanham Act Claim**: The Court agreed with TCCC that Pom could not maintain a claim regarding the product's name and labeling because Pom's claim would require the Court to interpret and apply the FDA's regulations regarding the "common or usual name" and appropriate labeling for a multiple-juice beverage. As the Court stated, "Pom's Lanham Act claim, with regard to the Juice's name and labeling, may be construed as impermissibly challenging the FDA's regulations regarding an acceptable 'common or usual name' and appropriate labeling for a multiple-juice beverage. *See Rita Medical Sys, Inc.*, 2006 WL 202383283, at *3. Moreover, if Pom's Lanham Act claim were to focus on areas covered by the FFDCA and the FDA-implementing regulations, the Court would be required to interpret and apply FDA regulations as to the labeling of the Juice, which the FDA has not considered or approved. [citations]. The Court is unable to perform such an interpretation and application of the FDA's regulations as applied to the Juice, because it would 'usurp[] the FDA's discretionary role in the application and interpretation of its regulations.' *See Summit Tech, Inc.*, 922 F.Supp. at 306 (internal citation omitted)." Order at 6.

{031519.1}
8296476.1

21

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1    The Court then clarified that Pom could proceed in this matter only on its
2    claims relating to those aspects of TCCC's "advertising" and "marketing" which
3    went "beyond" the product's name and label. As the Order states: "Because the
4    Court, in contexts beyond the Juice's formal name and labeling areas for which
5    there are relevant FDA regulations, will not be required to interpret FDA
6    regulations, Pom's Lanham Act claim can proceed *to the extent* it seeks to redress
7    TCCC's marketing and advertising in such areas." Order at 7 (emphases added). In
8    other words, the Court reserved the possibility Pom could show that "Coca[-]Cola
9    has *otherwise* advertised and marketed its product in a misleading manner that leads
10   consumers to believe that the primary ingredients are pomegranate and blueberry."
11   *Id.* (emphases added).

12   Pom argues to the contrary, relying upon a snippet lifted from Judge Otero's
13   ruling that states "the Court is largely unpersuaded by Coca-Cola's argument, as
14   Coca-Cola's argument does not address the majority of Pom's Lanham Act claims."
15   Order at 7. This statement, when read in its full context, reflects the Court's view
16   that the "majority" of Pom's Lanham Act claims related to the "advertising" and
17   "marketing" of the product (as opposed to the formal name or label), and in no way
18   detracts from the Court's lengthy, reasoned ruling dismissing the "naming" and
19   "labeling" claims from the case. At the time the Court made its ruling on the motion
20   to dismiss, the Court could not have known that, as a matter of fact, Pom had no
21   factual basis for its allegations about advertising and marketing deception that were
22   independent of its naming and labeling claims, and that the claims that remained in
23   the case were a null set. The absence of such statements may explain why Pom
24   continues to assert that its claims regarding the "name" and "label" of the product
25   are still at issue in this case, instead of focusing on the "majority" of its case – the
26   alleged advertising and marketing statements of defendant.

27   **Pom's False Advertising and Unfair Competition Claims**: With regard to
28   Pom's state law claims, the Court maintained a similar distinction between the

{031519.1}
8296476.1                                22

1  product's name and labeling, on the one hand, and its marketing and advertising, on

2  the other hand. Pursuant to the express preemption provision for National Uniform

3  Nutrition Labeling, section 343-1 of title 21 of the U.S. Code, the Court found that

4  "to the extent [Pom's state law claims] seek to impose obligations 'not identical to'"

5  those obligations imposed by applicable FFDCA provisions and FDA regulations,

6  those claims were expressly preempted. Order at 11 (quoting 21 U.S.C. § 343-1).

7  The Court concluded that Pom's theory of liability – that consumers were misled by

8  the Product name and label to conclude that the juice consisted primarily of those

9  pomegranate and blueberry juice – applied a standard different from applicable

10  federal naming and labeling regulations, with which TCCC complied.

11  As the Court stated, "[g]iven the allegations in the Complaint regarding

12  Coca[-]Cola's deceptive 'packaging' of the Juice, which is a multiple-juice beverage

13  containing apple juice, grape juice, pomegranate juice, and blueberry juice, it

14  appears as though Pom, through its state law claims, may attempt to impose

15  requirements differing from those naming and labeling requirements for multiple-

16  juice beverages in the FFDCA and the FDA's implementing regulations." Order at

17  10. Therefore, the Court ruled that the conflicting state law claims were expressly

18  preempted and could not proceed; *id.* at 11 (stating that "Pom's state law claims . . .

19  are preempted to the extent they seek to impose any obligations that are 'not

20  identical to' the sections of the FFDCA, including the FDA's implementing

21  regulations."). As with Pom's Lanham Act claims, the Court allowed those aspects

22  of Pom's claim that would not seek to impose different standards for labeling and

23  naming — logically, its advertising and marketing allegations — to proceed.

24

25

26

27

28

{031519.1}
8296476.1

23

1

2

3

    **2.    Pom Has Not Asserted Any Claims Regarding The Product's**
            **Name or Labeling Other than Those Already Dismissed from**
            **The Case.**

4        Pom argues that it is entitled to discovery on the product name and label

5  because it wishes to assert claims about the name and label that were not dismissed

6  from the case. However, no such allegations are contained in the complaint, which

7  likely explains why the Court dismissed these allegations from the case in their

8  entirety, leaving Pom to pursue its hypothetical "advertising and marketing" claims

9  only.

10        In apparent recognition of this fact, Pom's brief argues that it has asserted

11  name and labeling claims, but then cites to statements made on the Minute Maid

12  Internet website. TCCC, however, has already agreed to produce documents related

13  to the website, and any statements made on the website regarding the juice blend

14  product. The only documents TCCC has declined to produce are those responsive to

15  discovery requests served by Pom that are directed specifically at the name of the

16  product and its FDA-compliant labeling.

17        Pom next argues that there are aspects of the product label that are not

18  regulated by the FDA, including images of fruit on the product label. Again, Pom's

19  complaint does not contain any allegations about such images. In addition, as

20  addressed in the motion to dismiss papers filed with the Court, the FDA discussed in

21  its preamble to the final juice labeling regulation an example where "a 100 percent

22  juice product consisting of apple, grape, and raspberry juices, in which the raspberry

23  juice provides the characterizing flavor" and the bottle depicts a vignette containing

24  only raspberries. 58 Fed. Reg. 2897 at 2921, ¶52. The FDA concluded that "the

25  vignette [depicting solely raspberries] *would not be misleading* if the beverage were

26  named 'raspberry flavored fruit juice blend.'" *Id.* (emphasis added). The Minute

27  Maid label at issue here – "Pomegranate Blueberry Flavored Blend of 5 Juices" –

28  contains a common name that is substantively the same as the compliant example

{031519.1}
8296476.1

24

1  provided by the FDA. And although the vignette on the label would have been
2  compliant had it illustrated only pomegranates and blueberries, it actually shows *all*
3  *five of the fruits* in the juice beverage. *See* Complaint, Exh. A. Thus, Pom is simply
4  mistaken when it asserts that the pictures of fruit on the label of a juice blend is not
5  regulated by the FDA. Such vignettes are within the scope of the FDA's
6  regulations, and therefore Pom's claims related thereto have been dismissed from
7  this action.

8      Finally, Pom presents a dubious interpretation of an order issued in another
9  case by Judge Matz – a case that Pom successfully argued to this Court should not
10  be deemed a "related case" because it "involves transactions, happenings, and
11  events which are clearly different from, and unrelated to, those involved in the
12  [Welch's case]." *See* Pom's Opposition to Notice of Related Case [Docket No. 24].
13  Pom also represented to the Court that the cases had "no meaningful overlap
14  between the facts at issue . . . ." *Id.* Thus, by Pom's own admission, Judge Matz's
15  ruling in the Welch's case has no bearing on this action.

16      In any event, the plain language of Judge Matz's order reveals that he neither
17  undertook nor criticized the analysis conducted by Judge Otero in this case. Rather,
18  Judge Matz postponed to another day the issues of preclusion and preemption,
19  finding on the record before him that these issues were more appropriately
20  determined on a motion for summary judgment.

21          3.    **Pom's State Law Claims Regarding The Formal Name and**
22              **Labeling of The Product Were Dismissed.**

23      Pom next argues that the Court's ruling with respect to its state law claims
24  applies only to those claims that are "not identical to" the sections of the FFDCA
25  that regulate the name and label of juice products, from which Pom then implies that
26  the Court, therefore, "permitted" Pom's state law claims to proceed "insofar as they
27  are identical to the FFDCA and its implementing regulation [sic]." The Court,
28  however, did not permit Pom to continue with claims identical to the FFDCA

{031519.1}
8296476.1

25

1    *because Pom did not assert any such claims*, either in its complaint or its opposition
2    brief to defendant's Motion to Dismiss. This explains why the Court stated in its
3    ruling that Pom could pursue its state law claims solely with respect to claims
4    related to defendant's advertising and marketing of the juice product, and not with
5    respect to the name or labeling. Pom's improper attempt to rewrite Judge Otero's
6    ruling in the guise of a discovery dispute should be rejected.

7    Pom next argues that it should be permitted to pursue new state law claims
8    that are "identical to" the requirements of the FFDCA pursuant to California's
9    Sherman Law. These claims are not presently in the complaint, and Pom has
10   requested leave to file an amended complaint to include them. Once the Court
11   grants that request, TCCC will move to dismiss the claims, which are legally
12   deficient on several grounds. TCCC submits, however, that this decision is for the
13   District Court to make on TCCC's expected Motion to Dismiss the Amended
14   Complaint, rather than one to be made in the context of this discovery motion. Pom
15   cannot use its request for leave to amend the complaint, filed nearly four months
16   after the pleadings were settled in this case, as a lever to force open discovery into
17   areas that the Court has already dismissed from the action.

18          4.    **Pom's Attempt To Define "Advertising and Marketing" As**
19                **Including the Name and Label of the Product Is A**
20                **Transparent End-Run Around The Court's Ruling.**

21   Pom next argues that even if TCCC is correctly reading Judge Otero's Order,
22   Pom is nonetheless entitled to take discovery on the name and label of the juice
23   product because both constitute "advertising" and "marketing" for the product. In
24   this way, Pom seeks to circumvent the Court's Order by defining advertising and
25   marketing as including the dismissed claims regarding the name and labeling of the
26   product. This is pure sophistry. If accepted, Pom's argument that the naming and
27   labeling of a beverage is merely an aspect of its advertising and marketing would
28   render the Court's Order purely advisory. It would also eviscerate the entire body of

{031519.1}                                    26          PLAINTIFF'S MOTION TO COMPEL
8296476.1                                                  DOCUMENT PRODUCTION AND
                                                          JOINT STIPULATION (L.R. 37-2)

1   law that has developed around FFDCA preclusion and preemption in the area of
2   product naming and labeling. Such a reading of the law and the Order is neither
3   warranted nor appropriate.

4       Particularly revealing is that, in making this argument, Pom references its
5   allegations regarding the portion of the product name "Pomegranate Blueberry," and
6   the vignette of fruits with juices represented in the product, both of which are
7   specifically subject to detailed FDA regulations. Pom cannot evade the Court's
8   Order by redefining "advertising and marketing" to include "naming and labeling"
9   claims that were expressly dismissed by the Court.

10       TCCC has agreed to produce all documents that constitute, set forth, describe
11   or refer to its advertising and marketing of the juice product. This is ample for Pom
12   to pursue those claims that remain in the case after the Court's ruling. Pom may not,
13   however, redefine the words "advertising" and 'marketing" in a way that sweeps in
14   that which the Court has expressly excluded.

15       **5.   TCCC's Discovery Requests Are Not At Issue Here.**

16       Pom's final argument is that TCCC sought documents regarding Pom's name,
17   label and packaging of its products, and therefore it should be entitled to the same
18   discovery as a matter of reciprocity. The discovery sought by defendant, however,
19   was for purposes completely different than those professed here by plaintiff, and
20   therefore Pom's comparison is entirely irrelevant and improper. TCCC seeks
21   information relevant to its affirmative defenses, and not for purposes of prosecuting
22   a precluded or preempted claim. In any event, Pom has apparently recognized the
23   legitimacy of TCCC's requests because it has agreed to produce the requested
24   documentation.

25
26
27
28

(031519.1)
8296476.1

27

## III. THE DISPUTED DOCUMENT REQUESTS
## AND TCCC'S RESPONSES

Following below are Pom Wonderful's Document Requests Nos. 13-18, 20, 22, 24, 26-27, 31, 34, 36, 37, 39, 40, 41, 44, 45, and 53, along with TCCC's written response to each Request.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS, including COMMUNICATIONS, that REFER or RELATE to the packaging of the POMEGRANATE BLUEBERRY JUICE PRODUCT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant incorporates its general objections as though set forth here in full. Defendant further objects to the request as vague and ambiguous. Defendant further objects to this request as not reasonably likely to lead to the discovery of admissible evidence in this case because the Court has ruled that all of Plaintiffs claims that are based on the naming. labeling and packaging of the BEVERAGE have been dismissed from this case. Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant will produce copies of the packaging for the BEVERAGE used in the United States.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS, including COMMUNICATIONS, that REFER or RELATE to the labeling of the POMEGRANATE BLUEBERRY JUICE PRODUCT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant incorporates its general objections as though set forth here in full. Defendant further objects to the request as vague and ambiguous. Defendant further objects to this request as not reasonably likely to lead to the discovery of admissible evidence in this case because the Court has ruled that all of Plaintiffs claims that are based on the naming. labeling and packaging of the BEVERAGE have been

1   dismissed from this case. Subject to and without waiving the foregoing objections,
2   Defendant responds as follows: Defendant will produce a copy of the labeling for
3   the BEVERAGE used in the United States.

4   **REQUEST FOR PRODUCTION NO. 15**:

5   All DOCUMENTS, including COMMUNICATIONS, that REFER or
6   RELATE to the design of the label for the POMEGRANATE BLUEBERRY JUICE
7   PRODUCT.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15**:

9   Defendant incorporates its general objections as though set forth here in full.
10  Defendant further objects to the request as vague and ambiguous. Defendant further
11  objects to this request as not reasonably likely to lead to the discovery of admissible
12  evidence in this case because the Court has ruled that all of Plaintiffs claims that are
13  based on the naming. labeling and packaging of the BEVERAGE have been
14  dismissed from this case. Subject to and without waiving the foregoing objections,
15  Defendant responds as follows: Defendant will not produce documents in response
16  to this request.

17  **REQUEST FOR PRODUCTION NO. 16**:

18  All DOCUMENTS sufficient to identify each of YOUR employees who
19  worked on the design of the label for the POMEGRANATE BLUEBERRY JUICE
20  PRODUCT.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16**:

22  Defendant incorporates its general objections as though set forth here in full.
23  Defendant further objects to the request as vague and ambiguous. Defendant further
24  objects to this request as not reasonably likely to lead to the discovery of admissible
25  evidence in this case because the Court has ruled that all of Plaintiffs claims that are
26  based on the naming. labeling and packaging of the BEVERAGE have been
27  dismissed from this case. Subject to and without waiving the foregoing objections,

28

{031519.1}
8296476.1

29

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1  Defendant responds as follows: Defendant will not produce documents in response
2  to this request.

3  **REQUEST FOR PRODUCTION NO. 17**:

4  All DOCUMENTS, including COMMUNICATIONS, that REFER or
5  RELATE to the images depicted on the label for the POMEGRANATE
6  BLUEBERRY JUICE PRODUCT.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

8  Defendant incorporates its general objections as though set forth here in full.
9  Defendant further objects to the request as vague and ambiguous. Defendant further
10  objects to this request as not reasonably likely to lead to the discovery of admissible
11  evidence in this case because the Court has ruled that all of Plaintiffs claims that are
12  based on the naming. labeling and packaging of the BEVERAGE have been
13  dismissed from this case. Subject to and without waiving the foregoing objections,
14  Defendant responds as follows: Defendant will produce a copy of the labeling for
15  the BEVERAGE used in the United States.

16  **REQUEST FOR PRODUCTION NO. 18**:

17  All DOCUMENTS, including COMMUNICATIONS, that REFER or
18  RELATE to YOUR use of the phrase "Enhanced Juice" on the label for the
19  POMEGRANATE BLUEBERRY JUICE PRODUCT.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18**:

21  Defendant incorporates its general objections as though set forth here in full.
22  Defendant further objects to the request as vague and ambiguous. Defendant further
23  objects to this request as not reasonably likely to lead to the discovery of admissible
24  evidence in this case because the Court has ruled that all of Plaintiffs claims that are
25  based on the naming. labeling and packaging of the BEVERAGE have been
26  dismissed from this case. Subject to and without waiving the foregoing objections,
27  Defendant responds as follows: Defendant will produce a copy of the labeling for
28  the BEVERAGE used in the United States.

{031519.1}
8296476.1

30

1 | **REQUEST FOR PRODUCTION NO. 20**:

2 | All DOCUMENTS, including COMMUNICATIONS, that REFER or
3 | RELATE to YOUR use of the phrase "100% Fruit Juice Blend" on the label for the
4 | POMEGRANATE BLUEBERRY JUICE PRODUCT.

5 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

6 | Defendant incorporates its general objections as though set forth here in
7 | full. Defendant further objects to the request as vague and ambiguous. Defendant
8 | further objects to this request as not reasonably likely to lead to the discovery of
9 | admissible evidence in this case because the Court has ruled that all of Plaintiff's
10 | claims that are based on the naming, labeling and packaging of the BEVERAGE
11 | have been dismissed from this case. Subject to and without waiving the foregoing
12 | objections, Defendant responds as follows: Defendant will produce a copy of the
13 | labeling for the BEVERAGE used in the United States.

14 | **REQUEST FOR PRODUCTION NO. 22**:

15 | All DOCUMENTS, including COMMUNICATIONS, that REFER or
16 | RELATE to YOUR use of the phrase "Flavored Blend of 5 Juices" on the label for
17 | the POMEGRANATE BLUEBERRY JUICE PRODUCT.

18 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 22**:

19 | Defendant incorporates its general objections as though set forth here in full.
20 | Defendant further objects to the request as vague and ambiguous. Defendant further
21 | objects to this request as not reasonably likely to lead to the discovery of admissible
22 | evidence in this case because the Court has ruled that all of Plaintiffs claims that are
23 | based on the naming. labeling and packaging of the BEVERAGE have been
24 | dismissed from this case. Subject to and without waiving the foregoing objections,
25 | Defendant responds as follows: Defendant will produce a copy of the labeling for
26 | the BEVERAGE used in the United States.

27 | **REQUEST FOR PRODUCTION NO. 24**:

28 |

{031519.1}
8296476.1

31

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1    All DOCUMENTS, including COMMUNICATIONS, that REFER or

2    RELATE to YOUR use of the phrase "Pomegranate Blueberry" on the label of the

3    POMEGRANATE BLUEBERRY JUICE PRODUCT.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 24**:

5        Defendant incorporates its general objections as though set forth here in full.

6    Defendant further objects to the request as vague and ambiguous. Defendant further

7    objects to this request as not reasonably likely to lead to the discovery of admissible

8    evidence in this case because the Court has ruled that all of Plaintiff's claims that are

9    based on the naming, labeling and packaging of the BEVERAGE have been

10   dismissed from this case. Subject to and without waiving the foregoing objections,

11   Defendant responds as follows: Defendant will produce a copy of the labeling for

12   the BEVERAGE used in the United States.

13   **REQUEST FOR PRODUCTION NO. 26**:

14       All DOCUMENTS, including COMMUNICATIONS, that REFER or

15   RELATE to actual consumer confusion in connection with the label for the

16   POMEGRANATE BLUEBERRY JUICE PRODUCT.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 26**:

18       Defendant incorporates its general objections as though set forth here in full.

19   Defendant also objects to the request as vague and ambiguous. Defendant further

20   objects to this request as not reasonably likely to lead to the discovery of admissible

21   evidence in this case because the Court has ruled that all of Plaintiff's claims that are

22   based on the naming, labeling and packaging of the BEVERAGE have been

23   dismissed from this case. Subject to and without waiving the foregoing objections,

24   Defendant responds as follows: Defendant will not produce any documents in

25   response to this request.

26

27

28

{031519.1}
8296476.1

32

1  **REQUEST FOR PRODUCTION NO. 27**:

2      All DOCUMENTS, including COMMUNICATIONS, that REFER or

3  RELATE to actual consumer confusion regarding the name of the

4  POMEGRANATE BLUEBERRY JUICE PRODUCT.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27**:

6      Defendant incorporates its general objections as though set forth here in full.

7  Defendant also objects to the request as vague and ambiguous. Defendant further

8  objects to this request as not reasonably likely to lead to the discovery of admissible

9  evidence in this case because the Court has ruled that all of Plaintiffs claims that are

10  based on the naming, labeling and packaging of the BEVERAGE have been

11  dismissed from this case. Subject to and without waiving the foregoing objections,

12  Defendant responds as follows: Defendant will not produce any documents in

13  response to this request.

14  **REQUEST FOR PRODUCTION NO. 31**:

15      All DOCUMENTS, including COMMUNICATIONS, that REFER or

16  RELATE to the likelihood of, or potential for, consumer confusion in connection

17  with the label for the POMEGRANATE BLUEBERRY JUICE PRODUCT.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31**:

19      Defendant incorporates its general objections as though set forth here in full.

20  Defendant further objects to the request as vague and ambiguous. Defendant further

21  objects to this request as not reasonably likely to lead to the discovery of admissible

22  evidence in this case because the Court has ruled that all of Plaintiff's claims that are

23  based on the naming, labeling and packaging of the BEVERAGE have been

24  dismissed from this case. Subject to and without waiving the foregoing objections,

25  Defendant responds as follows: Defendant will not produce documents in response

26  to this request.

27

28

{031519.1}
8296476.1

33

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)

1  **REQUEST FOR PRODUCTION NO. 34**:

2  ALL DOCUMENTS, including COMMUNICATIONS, that REFER or
3  RELATE to the likelihood of, or potential for, consumer confusion regarding the
4  name of the POMEGRANATE BLUEBERRY JUICE PRODUCT.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**:

6  Defendant incorporates its general objections as though set forth here in full.
7  Defendant further objects to the request as vague and ambiguous. Defendant further
8  objects to this request as not reasonably likely to lead to the discovery of admissible
9  evidence in this case because the Court has ruled that all of Plaintiffs claims that are
10  based on the naming, labeling and packaging of the BEVERAGE have been
11  dismissed from this case. Subject to and without waiving the foregoing objections,
12  Defendant responds as follows: Defendant will not produce documents in response
13  to this request.

14  **REQUEST FOR PRODUCTION NO. 36**:

15  ALL DOCUMENTS, including COMMUNICATJONS, that REFER or
16  RELATE to consumer comments, inquiries, criticisms, complaints, or questions
17  regarding the label for the POMEGRANATE BLUEBERRY JUICE PRODUCT.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36**:

19  Defendant incorporates its general objections as though set forth here in full.
20  Defendant further objects to the request as vague, ambiguous, compound and
21  overbroad. Defendant further objects to this request as not reasonably likely to lead
22  to the discovery of admissible evidence in this case because the Court has ruled that
23  all of Plaintiff's claims that are based on the naming, labeling and packaging of the
24  BEVERAGE have been dismissed from this case. Subject to and without waiving
25  the foregoing objections, Defendant responds as follows: Defendant will not
26  produce documents in Response to this request.

27

28

{031519.1}
8296476.1

34

1   **REQUEST FOR PRODUCTION NO. 37:**

2       All DOCUMENTS, including COMMUNICATIONS, that REFER or
3   RELATE to competitor comments, inquiries, criticisms, complaints, or questions
4   regarding the label for the POMEGRANATE BLUEBERRY JUICE PRODUCT.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

6       Defendant incorporates its general objections as though set forth here in full.
7   Defendant further objects to the request as vague, ambiguous and compound.
8   Defendant further objects to this request as not reasonably likely to lead to the
9   discovery of admissible evidence in this case because the Court has ruled that all of
10  Plaintiffs claims that are based on the naming, labeling and packaging of the
11  BEVERAGE have been dismissed from this case. Further, this request is not
12  reasonably calculated to lead to the discovery of admissible evidence because the
13  comments, inquiries, criticisms, complaints or questions of competitors regarding
14  the labeling for the BEVERAGE has no bearing upon Plaintiffs allegations in the
15  complaint regarding alleged consumer confusion. Subject to and without waiving
16  the foregoing objections, Defendant responds as follows: Defendant will not
17  produce documents in response to this request.

18  **REQUEST FOR PRODUCTION NO. 39:**

19      ALL DOCUMENTS, including COMMUNICATIONS, that REFER or
20  RELATE to any inquires or proceedings by any governmental body regarding the
21  label for the POMEGRANATE BLUEBERRY JUICE PRODUCT.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

23      Defendant incorporates its general objections as though set forth here in full.
24  Defendant further objects to the request as vague and ambiguous. Defendant further
25  objects to this request as not reasonably likely to lead to the discovery of admissible
26  evidence in this case because the Court has ruled that all of Plaintiff's claims that are
27  based on the naming, labeling and packaging of the BEVERAGE have been
28  dismissed from this case. Subject to and without waiving the foregoing objections,

{031519.1}
8296476.1

35

1  Defendant responds as follows:  Defendant has not located any such documents after
2  a conducting a reasonably diligent search.

3  **REQUEST FOR PRODUCTION NO. 40**:

4       ALL DOCUMENTS, including COMMUNICATIONS, that REFER or
5  RELATE to consumer comments, inquiries, criticisms, complaints, or questions
6  regarding the ingredients in the POMEGRANATE BLUEBERRY JUICE
7  PRODUCT.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 40**:

9       Defendant incorporates its general objections as though set forth here in full.
10  Defendant further objects to the request as vague, ambiguous, overbroad and
11  unintelligible. Defendant further objects to this request as not reasonably likely to
12  lead to the discovery of admissible evidence in this case because the complaint
13  contains allegations regarding the naming, labeling, marketing and advertising of the
14  BEVERAGE only. Subject to and without waiving the foregoing objections,
15  Defendant responds as follows:  Defendant will produce all documents located after
16  a reasonable inquiry and diligent search that constitute, describe, or set forth
17  consumer comments, inquiries, criticisms, complaints, or questions about
18  advertising or marketing regarding the BEVERAGE's ingredients.

19  **REQUEST FOR PRODUCTION NO. 41**:

20       ALL DOCUMENTS, including COMMUNICATIONS, that REFER or
21  RELATE to competitor comments, inquiries, criticisms, complaints, or questions
22  regarding the ingredients in the POMEGRANATE BLUEBERRY JUICE
23  PRODUCT.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41**:

25       Defendant incorporates its general objections as though set forth here in full.
26  Defendant further objects to the request as vague, ambiguous and compound.
27  Defendant further objects to this request as not reasonably likely to lead to the
28  discovery of admissible evidence in this case because the Court has ruled that all of

{031519.1}
8296476.1

36

1  Plaintiffs claims that are based on the naming, labeling and packaging of the
2  BEVERAGE have been dismissed from this case. Further, this request is not
3  reasonably calculated to lead to the discovery of admissible evidence because the
4  comments, inquiries, criticisms, complaints or questions of competitors regarding
5  the ingredients contained in the BEVERAGE have no bearing upon Plaintiff's
6  allegations in the complaint regarding alleged consumer confusion. Subject to and
7  without waiving the foregoing objections, Defendant responds as follows:
8  Defendant will not produce documents in response to this request.

9  **REQUEST FOR PRODUCTION NO. 44**:

10  All DOCUMENTS, including COMMUNICATIONS, that REFER or
11  RELATE to consumer comments, inquiries, criticisms, complaints, or questions
12  regarding the name of the POMEGRANATE BLUEBERRY JUICE PRODUCT.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 44**:

14  Defendant incorporates its general objections as though set forth here in full.
15  Defendant further objects to the request as vague and ambiguous. Defendant further
16  objects to this request as not reasonably likely to lead to the discovery of admissible
17  evidence in this case because the Court has ruled that all of Plaintiff's claims that are
18  based on the naming, labeling and packaging of the BEVERAGE have been
19  dismissed from this case. Subject to and without waiving the foregoing objections,
20  Defendant responds as follows: Defendant will not produce any documents in
21  RESPONSE to this request.

22  **REQUEST FOR PRODUCTION NO. 45**:

23  All DOCUMENTS, including COMMUNICATIONS, that REFER or
24  RELATE to competitor comments, inquiries, criticisms, complaints, or questions
25  regarding the name of the POMEGRANATE BLUEBERRY JUICE PRODUCT.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 45**:

27  Defendant incorporates its general objections as though set forth here in full.
28  Defendant further objects to the request as vague, ambiguous and compound.

1  Defendant further objects to this request as not reasonably likely to lead to the
2  discovery of admissible evidence in this case because the Court has ruled that all of
3  Plaintiff's claims that are based on the naming, labeling and packaging of the
4  BEVERAGE have been dismissed from this case. Further, this request is not
5  reasonably calculated to lead to the discovery of admissible evidence because the
6  comments, inquiries, criticisms, complaints or questions of competitors regarding
7  the name of the BEVERAGE have no bearing upon Plaintiff's allegations in the
8  complaint regarding alleged consumer confusion. Subject to and without waiving
9  the foregoing objections, Defendant responds as follows: Defendant will not
10 produce documents in response to this request.

11 **REQUEST FOR PRODUCTION NO. 53**:

12     All DOCUMENTS, including COMMUNICATIONS, that REFER or
13 RELATE to the naming of the POMEGRANATE BLUEBERRY JUICE
14 PRODUCT.

15 **RESPONSE TO REQUEST FOR PRODUCTION NO. 53**:

16     Defendant incorporates its general objections as though set forth here in full.
17 Defendant further objects to the request as vague, ambiguous and overbroad.
18 Defendant further objects to this request as not reasonably likely to lead to the
19 discovery of admissible evidence in this case because the Court has ruled that all of
20 Plaintiffs claims that are based on the naming, labeling and packaging of the
21 BEVERAGE have been dismissed from this case. Subject to and without waiving
22 the foregoing objections, Defendant responds as follows: Defendant will not
23 produce documents in response to this request.

24
25
26
27
28

{031519.1}
8296476.1                          38          PLAINTIFF'S MOTION TO COMPEL
                                                DOCUMENT PRODUCTION AND
                                                JOINT STIPULATION (L.R. 37-2)

## IV.   CONCLUSIONS

### A.   Pom Wonderful's Conclusion

For all of the reasons discussed above, Pom Wonderful respectfully requests that the Court order TCCC to make a complete production of documents in response to Requests Nos. 13-18, 20, 22, 24, 26-27, 31, 34, 36, 37, 39, 40, 41, 44, 45, 53, and 53. TCCC should further be ordered to withdraw its General Objection No. 10. Finally, Pom Wonderful requests that the Court's order require TCCC to produce its documents within ten (10) calendar days of the order's issuance.

### B.   TCCC's Conclusion

For all the reasons stated above, TCCC respectfully requests that the Court not permit Pom to pursue discovery aimed directly at claims that have been dismissed from this action. Accordingly, no responses to the document requests listed above should be required because they all seek discovery of documents related solely to the formal name and labeling of the Minute Maid juice blend product.

Dated: July 10, 2009

ROLL INTERNATIONAL CORPORATION
LEGAL DEPARTMENT

By: /s/ Daniel S. Silverman
Daniel S. Silverman
Attorneys for Plaintiff
POM WONDERFUL LLC

Dated: July 8, 2009

MUNGER, TOLLES & OLSON LLP

By: /s/ Martin D. Bern
Martin D. Bern
Attorneys for Defendant
THE COCA-COLA COMPANY

{031519.1}
8296476.1

39

PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND
JOINT STIPULATION (L.R. 37-2)