1
2
3
4
5

Nelson L. Atkins (SBN 036752)
nelson_atkins@gshllp.com
Kenneth M. Jones (SBN 140358)
kenneth_jones@gshllp.com
GONZALEZ SAGGIO & HARLAN LLP
3699 Wilshire Boulevard, Suite 890
Los Angeles, California 90010
Telephone:  (213) 487-1400
Facsimile:  (213) 487-1402

6
7
8
9
10

Steven A. Zalesin (admitted *pro hac vice*)
sazalesin@pbwt.com
Derek A. Williams (admitted *pro hac vice*)
dwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Facsimile:  (212) 336-2222

11

Attorneys for Defendant
THE COCA-COLA COMPANY

12
13

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

14
15
16
17
18
19
20
21
22
23

POM WONDERFUL LLC, a
Delaware limited liability company,

          Plaintiff,

   v.

THE COCA-COLA COMPANY, a
Delaware corporation; and DOES 1-
10, inclusive,

          Defendants.

Case No.   CV-08-06237 SJO (FMOx)

**DECLARATION OF SARAH E.
ZGLINIEC IN SUPPORT OF
DEFENDANT'S MOTIONS IN LIMINE**

**PUBLIC REDACTED VERSION**

Judge:   Honorable S. James Otero
Date:    March 9, 2010
Time:    10:00 a.m.
Room:    Courtroom 1, Second Floor

24
25
26
27
28

3759522v.1

1

1            **DECLARATION OF SARAH E. ZGLINIEC**

2        I, Sarah E. Zgliniec, declare under penalty of perjury as follows:

3          1.     I am a member of Patterson Belknap Webb & Tyler LLP which, along

4 with Gonzales, Saggio & Harlan LLP, represents Defendant The Coca-Cola

5 Company ("Minute Maid") in this action brought by Pom Wonderful LLC ("Pom").

6 I have personal knowledge of the facts stated in this declaration, and if called as a

7 witness I could and would competently testify thereto.  I submit this declaration in

8 support of Minute Maid's motions in limine.

9          2.     Attached as Exhibit 1 is a true and correct copy of the expert report

10 prepared on behalf of Pom by Joseph Anastasi, dated November 25, 2009.

11          3.     Attached as Exhibit 2 is a true and correct copy of expert report

12 prepared on behalf of Minute Maid by Dr. Ran Kivetz, Ph.D, dated January 6, 2009.

13          4.     Attached as Exhibit 3 is a true and correct copy of relevant excerpts

14 from the January 4, 2010 deposition transcript of Dr. E. Deborah Jay.

15          5.     Attached as Exhibit 4 is a true and correct copy of a document

16 produced by Pom and Bates-stamped PW00717660.

17          6.     Attached as Exhibit 5 is a true and correct copy of a document

18 produced by Pom and Bates-stamped PW00717661.

19          7.     Attached as Exhibit 6 is a true and correct copy of a document

20 produced by Pom and Bates-stamped PW01714041.

21          8.     Attached as Exhibit 7 is a true and correct copy a document produced

22 by Pom and Bates-stamped PW01698148.

23          9.     Attached as Exhibit 8 is a true and correct copy of the expert report

24 prepared on behalf of Minute Maid by Jeffrey Blumberg, dated January 5, 2010.

25         10.    Attached as Exhibit 9 is a true and correct copy of Plaintiff's Trial

26 Exhibit 280, a 02/19/08 e-mail chain re: Legal Feedback on Board & Script #2.

27

28

DECLARATION OF SARAH E. ZGLINIEC
CV-08-06237 SJO (FMOx)

3759522v.1

11. Attached as Exhibit 10 is a true and correct copy of relevant excerpts from the November 17, 2009 deposition transcript of Ashley Ann Schmidt.

12. Attached as Exhibit 11 is a true and correct copy of relevant excerpts from the January 12, 2010 deposition transcript of Kimberly Ritsema.

13. Attached as Exhibit 12 is a true and correct copy of relevant excerpts from the December 15, 2009 deposition transcript of Denise Rasmussen.

14. Attached as Exhibit 13 is a true and correct excerpt of a record of consumer inquiries to Minute Maid including Bates number ranges TCCC-00155570-73, TCCC-00155590-93, and TCCC-00155530-33.

15. Attached as Exhibit 14 is a true and correct copy of relevant excerpts from the January 6, 2010 deposition transcript of Malcolm Knight.

16. Attached as Exhibit 15 is a true and correct copy of Plaintiff's Trial Exhibit 166, which contains correspondence between Andrew Nelson of Ventura, California and The Coca-Cola Company.

17. Attached as Exhibit 16 is a true and correct copy of Plaintiff's Trial Exhibit 17, an e-mail chain commencing with a March 20, 2008 e-mail from Katie Taylor to Amanda Van Doorn.

I declare under penalty of perjury under the laws of the State of New York and the United States that the foregoing facts are true and correct.

DECLARATION OF SARAH E. ZGLINIEC
CV-08-06237 SJO (FMOx)

3759522v.1

1    Executed this 2nd day of February 2010 in New York, New York.

2

3

4                                    *Sarah E. Zgliniec*

5                                    Sarah E. Zgliniec

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            4          DECLARATION OF SARAH E. ZGLINIEC
                                                       CV-08-06237 SJO (FMOx)
3759522v.1

**Exhibits 1-9 Filed Under Seal**

# EXHIBIT 10

Highly Confidential - Attorneys' Eyes Only

Page 1

```
 1
 2                UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 3
    POM WONDERFUL LLC, a       )
 4  Delaware limited liability)
    company,                   )
 5            Plaintiff,       )
                               )
 6  vs.                        )   CASE NO. CV08-06237
                               )
 7  THE COCA-COLA COMPANY, a   )
    Delaware corporation; and )
 8  DOES 1-10, inclusive,      )
              Defendants.      )
 9
10
11             ORAL VIDEOTAPED DEPOSITION OF
12                 ASHLEY ANN SCHMIDT
13                  November 17, 2009
14       **Highly Confidential - Attorneys' Eyes Only**
15     ORAL VIDEOTAPED DEPOSITION OF ASHLEY ANN SCHMIDT,
16  produced as a witness at the instance of the Plaintiff
17  and duly sworn, was taken in the above-styled and
18  numbered cause on the 17th day of November, 2009, from
19  9:04 a.m. to 6:46 p.m., before Michelle R. Williamson,
20  Certified Shorthand Reporter in and for the State of
21  Texas, reported by computerized stenotype machine at the
22  offices of Regus, located at Two Allen Center, 1200
23  Smith Street, 16th Floor, Houston, Texas 77002, pursuant
24  to the Federal Rules of Civil Procedure and the
25  provisions stated on the record or attached hereto.
```

Highly Confidential - Attorneys' Eyes Only

Page 24

```
 1                    A. Schmidt

 2    Orange, one of our other juice brands.

 3        Q.   Is that a Minute Maid brand?

 4        A.   It's actually a separate brand.  It's obviously

 5    within CC&A, but just as Odwalla is a separate brand,

 6    Simply Orange is separate, and then Minute Maid is the

 7    third brand.

 8        Q.   When did you begin working as the -- when did

 9    you begin working for Minute Maid?

10        A.   For Minute Maid, November of 2007.

11        Q.   And your title at that time?

12        A.   Director, brand director, Minute Maid.

13        Q.   Did you -- I -- I don't recall.  Did you say

14    your title has since changed?

15        A.   No, not during my tenure on Minute Maid.

16        Q.   What have been your job responsibilities as the

17    brand director for Minute Maid?

18        A.   I oversee the marketing for all of our

19    warehouse delivered products.  That includes our chilled

20    items, the Minute Maid Enhanced line, as well as our

21    orange juices and punches and aids.  I also oversee our

22    shelf stable kids' products that are Minute Maid and

23    HiC, and then I also oversee our frozen business, which

24    are Minute Maid products, and then we also have products

25    under license from Bacardi.
```

215
Exhibit 10

Highly Confidential - Attorneys' Eyes Only

Page 144

1                         A. Schmidt

2       A.    Yes.

3       Q.    Has Doner done work for Coca-Cola with respect

4    to the Minute Maid -- I mean -- yeah, with respect to

5    the Minute Maid pomegranate juice product?

6       A.    Yes, they have.

7       Q.    What work have they done?

8       A.    Advertising.

9       Q.    What do you mean by advertising?  What form of

10   advertising?

11      A.    The TV ads for the Minute Maid Enhanced line

12   and print ads as well.

13      Q.    And did you work with Doner in terms of putting

14   together those TV ads and print ads?

15      A.    I did.

16      Q.    Who did you work with at Doner?

17      A.    I worked with an account team.  There were

18   three or four members of the account team that I worked

19   with.

20      Q.    And who were they?

21      A.    Monica Tysell, Kim Ritsema, R-i-t-s-e-m-a, and

22   Katie Taylor, and Adina Sigler.  Those were all of the

23   members at the time.

24      Q.    How about David Vawter?  Do you know who that

25   is?

Highly Confidential - Attorneys' Eyes Only

Page 145

                              A. Schmidt

1

2       A.    I do know who that is.

3       Q.    Who's that?

4       A.    He is on the creative team at Doner.

5       Q.    And did you work with him in terms of creating

6    television and print ads?

7       A.    I worked primarily with the account team, and

8    the account team had the primary communication with

9    David.  He and I were involved in a few conversations

10   together, but my primary contact was with the account

11   team.

12      Q.    Do you know who Seth Triezenberg is?

13      A.    The name sounds vaguely familiar, but I can't

14   place it.

15      Q.    How about Christopher Taylor?

16      A.    Also, I can't place the name.

17      Q.    How about Amanda Van Doorn?

18      A.    I'm -- they all sound vaguely familiar, but I

19   can't place exactly who they are.

20      Q.    Okay.  And was Kim Ritsema the account director

21   that you dealt with?

22      A.    I can't remember her exact title, but Kim was

23   my main contact.

24      Q.    You said that you are not aware of the

25   percentage of the juices in this product because it was

217
Exhibit 10

**FILED UNDER SEAL**

Highly Confidential - Attorneys' Eyes Only

Page 212

1                         A. Schmidt

2    for Doner so that's the capacity under which this e-mail

3    was written.

4                   As I look through these, some of these

5    look vaguely familiar, but I want to put some context

6    around it.

7                   During this time, March of 2008, we were

8    looking at creating new advertising for Minute Maid

9    Enhanced.  The advertising agency has a tendency to get

10   their fingers into more things than we ask them to do.

11   So what I'm seeing here is work from Doner that was not

12   part of work that we solicited from them.  To do

13   packaging work, we work with a packaging group, not an

14   advertising agency.

15      Q.   But you do recall that Minute Maid asked Doner

16   to come up with some design changes for the Minute Maid

17   Enhanced products?

18                   MR. ZALESIN:   Objection --

19      A.   I do not.

20                   MR. ZALESIN:   I think that's exactly the

21   opposite of what she just testified, but she's already

22   answered your question.

23      Q.   (By Mr. Silverman) So Doner just went off on

24   its own and came up with a bunch of design labels for

25   Minute Maid even though they weren't asked to do so?

Highly Confidential - Attorneys' Eyes Only

Page 213

A. Schmidt

1

2   A.   It may sound strange, but advertising agencies

3   like to get their fingers into a lot of things that may

4   not be specifically within their scope of services, and

5   to me that's what this looks like.

6   Q.   Prior to today, had you seen these design

7   labels that Doner had prepared?

8   A.   As I mentioned earlier, one of these looks

9   vaguely familiar, but I don't recall them specifically.

10           MR. SILVERMAN:  I'm getting -- getting the

11   hook from the videographer.

12           THE VIDEOGRAPHER:  Off the record at 3:54.

13           (A recess was taken from 3:54 p.m. to

14           4:03 p.m.)

15           THE VIDEOGRAPHER:  Now beginning tape six

16   of the deposition of Ms. Ashley Schmidt.  The time is

17   4:03.  We're back on the record.

18   Q.   (By Mr. Silverman) Turning back to Exhibit 18,

19   the four pages of label designs, the Minute Maid -- I

20   mean, the Pomegranate Blueberry product appears to be

21   the one in the middle of each of these four pages of

22   label designs, correct?

23   A.   I'm not even sure what these are.  They're not

24   labeled well.

25   Q.   Well --

# EXHIBIT 11

Page 1

1          HIGHLY CONFIDENTIAL KIMBERLY RITSEMA

2               UNITED STATES DISTRICT COURT

3              CENTRAL DISTRICT OF CALIFORNIA

4

5     POM WONDERFUL LLC, a Delaware

6     limited liability corporation,

7                    Plaintiff,

8        vs.                    Case No. CV08-06237 SJO (JTLx)

9

10    THE COCA-COLA COMPANY, a

11    Delaware corporation; and DOES

12    1 through 100,

13                    Defendants.

14

15    _____

16       HIGHLY CONFIDENTIAL  ATTORNEYS' EYES ONLY

17

18       The Videotaped Deposition of KIMBERLY RITSEMA,

19       Taken at 645 Griswold Street,

20       Detroit, Michigan,

21       Commencing at 9:00 a.m.,

22       Tuesday, January 12, 2010,

23       Before Kathy Adkins, CSR-4697, RMR, RPR, B.A.

24

25

Page 9

```
 1           HIGHLY CONFIDENTIAL KIMBERLY RITSEMA
 2    A.   Just over two years.
 3    Q.   So from approximately when in -- from 2007 to 2009?
 4    A.   March of 2007 to April of 2009.
 5    Q.   What were your job responsibilities at Doner?
 6    A.   Are you asking in the position when I left or --
 7    Q.   Well, let's start with when you joined Doner in
 8         March 2007, what were your job responsibilities?
 9    A.   At that time I was an account manager on the
10         Blockbuster account and was just overseeing account
11         management of advertising for them.
12    Q.   And then your title changed at some point?
13    A.   Yes.  I changed accounts and became an account manager
14         on Minute-Maid and Electrolux.
15    Q.   When did that occur?
16    A.   I honestly don't recall.  I don't recall.
17    Q.   What were your job responsibilities as the account
18         manager for Minute-Maid?
19    A.   Again, overseeing the production of advertising under
20         the supervision of an executive vice president.
21    Q.   Who was that?
22    A.   Monica Tysell.
23    Q.   What forms of advertising did Doner Advertising do for
24         Minute-Maid?
25    A.   We did TV, print, limited radio, and that was pretty
```

Page 10

HIGHLY CONFIDENTIAL KIMBERLY RITSEMA

1
2      much it.

3    Q.   Did your job title change at any point after you were

4         the account manager for Minute-Maid and I think you

5         said Electrolux?

6    A.   Electrolux vacuums.  Yeah, I came on as the account

7         director, sorry, and then it changed to vice

8         president, account director.

9    Q.   You became the vice president and account director for

10        the Minute-Maid product?

11   A.   For Minute-Maid and Electrolux.

12   Q.   Do you recall approximately when that occurred?

13   A.   It would be a total guess.  I honestly have no

14        recollection.

15   Q.   Did -- were you the vice president and account manager

16        for the Minute-Maid products at the time you left

17        Doner Advertising in April 2009?

18            MR. WILLIAMS:  Objection to form.  Vague

19        and ambiguous.

20            You can answer if you are able to

21        understand the question.

22   A.   Could you repeat the question?

23   BY MR. SILVERMAN:

24   Q.   Yeah, were you the vice president and account director

25        for Minute-Maid products at the time you, your

**FILED UNDER SEAL**

```
 1          HIGHLY CONFIDENTIAL KIMBERLY RITSEMA

 2          speaks for itself.  If the word is there, the word is

 3          there.  If it's not, it's not.  But to have this

 4          witness, you know, read word for word a five-page

 5          document to confirm whether that word is present or

 6          not is a waste of -- of time.

 7    BY MR. SILVERMAN:

 8    Q.    Okay.  Well, let's look at the first page.  The bottom

 9          of the page is an E-mail from Adina Sigler,

10          March 18th, 2008, to Juan Cristian, Santa Maria, and

11          Robin Bell and you're one of the people copied, do you

12          see that?

13    A.    Um-hum, yes.

14    Q.    Again, re line, "Confidential pom blue substantiation

15          for networks," right?

16    A.    Yes, that's what it reads.

17    Q.    You received that E-mail, correct?

18    A.    It says that I was copied, so I could only assume that

19          I did receive it.

20    Q.    It says, thank you for the -- "Thank you for your

21          quick response on this matter.  We are going to send

22          the attached letter with your dossier to NBC for

23          clearance.  Please let us know if you see any issues

24          with us sending this information.  Thank you."

25                Does that refresh your recollection, it's
```

Page 83

```
 1          HIGHLY CONFIDENTIAL KIMBERLY RITSEMA

 2     an E-mail you received, does it refresh your

 3     recollection that there was correspondence with NBC

 4     about a television commercial being run by Doner for

 5     the pomegranate blueberry product?

 6  A.  As I've already stated, I was not directly responsible

 7     for network clearance, my staff was; so I was copied

 8     on the E-mails, and without being directly responsible

 9     for them, I don't recall it specifically.

10  Q.  Do you know somebody by the name of Anca Cornis-Pop?

11  A.  No, I don't.

12  Q.  Let me first back up.  Was Exhibit 281 one of the

13     documents that you reviewed with counsel for the

14     Coca-Cola Company to refresh your recollection in

15     preparation for today's deposition?

16  A.  No, it was not.

17  Q.  Okay.  My question was do you know somebody named Anca

18     Cornice-Pop?

19  A.  No.

20          MR. SILVERMAN:  Let me show you what we'll

21     mark as Exhibit 282.

22          MARKED FOR IDENTIFICATION:

23          DEPOSITION EXHIBIT 282

24          11:13 a.m.

25  BY MR. SILVERMAN:
```

Page 84

```
 1            HIGHLY CONFIDENTIAL KIMBERLY RITSEMA
 2    Q.    This is a four-page document that was produced by
 3          Doner in the litigation, a variety of -- a variety of
 4          E-mails from March 2008.  Your name is listed on
 5          several of them.  Please take a look through and tell
 6          me if you recall receiving these E-mails.
 7    A.    Okay.
 8    Q.    Had a chance to review Exhibit 282?
 9    A.    Yes.
10    Q.    Do you recall receiving the E-mail exchange that's --
11          that is Exhibit 282?
12                 MR. WILLIAMS:  Objection to form.  The
13          exchange at the top does not include the witness's
14          name.
15                 MR. SILVERMAN:  Okay.
16    BY MR. SILVERMAN:
17    Q.    Other than the E-mail at the top from Katie Taylor to
18          Amanda Van Doorn, below that you are copied on an
19          E-mail that includes a chain of several E-mails,
20          correct?
21    A.    Yes, it looks so.
22    Q.    Okay.  I want to have you take a look at the second
23          page.  Let me back up.  Does reviewing it today
24          refresh your recollection that you in fact received
25          this E-mail exchange?
```

Page 88

```
 1          HIGHLY CONFIDENTIAL KIMBERLY RITSEMA

 2      refers to the added vitamins as a bit of a stretch,"

 3      and then she goes on from there.

 4              Did to your knowledge did anybody at Doner

 5      or the Coca-Cola Company correct Ms. Cornice-Pop where

 6      she says, "I'm assuming that the blend," well, where

 7      she says, "which refers I'm assuming to the blend of

 8      pomegranate and blueberry"?

 9              MR. WILLIAMS:  Objection to form.

10  A.  I can only go by what's -- what this E-mail reads and

11      I don't see a correction in this E-mail, so I don't

12      know whether that conversation took place or not.

13  BY MR. SILVERMAN:

14  Q.  It would not be accurate to describe or characterize

15      the -- the product that we've been talking about this

16      morning as a blend of pomegranate and blueberry, would

17      it?

18              MR. WILLIAMS:  Objection to form.  Calls

19      for an opinion.  Are you asking for a regulatory

20      opinion?

21              MR. SILVERMAN:  No, I'm not asking for a

22      regulatory opinion.  I'm asking for the opinion of

23      somebody who worked for Doner Advertising doing

24      advertising for this product.

25  BY MR. SILVERMAN:
```

229
Exhibit 11

```
 1          HIGHLY CONFIDENTIAL KIMBERLY RITSEMA

 2   Q.   It would not be accurate to refer to this product as a

 3        blend of pomegranate and blueberry, would it?

 4               MR. WILLIAMS:  Objection to form.  Vague

 5        and ambiguous as to the nature of your question.

 6   A.   I'm not the one who stated it.  I mean, I don't think

 7        that was the subject matter at hand, which could be

 8        why it wasn't corrected.  So I don't -- I don't know

 9        that there would be a need for anybody to correct it

10        in this E-mail because that was not the point of the

11        E-mail from what I understand.  It was about the

12        vitamin.

13   BY MR. SILVERMAN:

14   Q.   Well, you had known by this time, approximately a

15        month earlier, at least a month earlier you had

16        learned the juice percentages in this product,

17        correct?

18   A.   I would have to go back and look.

19   Q.   Well, February 19th, 2008, is the date that you convey

20        the juice percentages in this product to several

21        people.  That's referenced in Exhibit 280, correct?

22   A.   Correct.

23   Q.   Okay.  Now we're looking at an E-mail of March 19th,

24        2008, so it's a month to the day from which you wrote

25        your E-mail listing the juice percentages, right?
```

**FILED UNDER SEAL**

**FILED UNDER SEAL**

Page 103

1          HIGHLY CONFIDENTIAL KIMBERLY RITSEMA

2                    MR. SILVERMAN:  Why don't we mark as

3          Exhibit 283.

4                    MARKED FOR IDENTIFICATION:

5                    DEPOSITION EXHIBIT 283

6                    11:41 a.m.

7     BY MR. SILVERMAN:

8     Q.   Showing you a March 20th, 2008, E-mail from Heidi

9          Riggs to Rob Strasburg copying Lori Soenen, subject MM

10         enhanced use labels of the design group.  Tell me if

11         you recognize the E-mail on the attached design

12         labels.

13    A.   I don't recognize these.

14    Q.   Who is Heidi Riggs?

15    A.   She worked in the design department at Doner.

16    Q.   And to your knowledge was Doner retained to do label

17         designs regarding the enhanced juice line?

18    A.   No, not to my knowledge.  We weren't retained to do

19         labels.  It was a common practice for us to try to win

20         business, to work on label designs and other things

21         that we weren't asked to do just to give them ideas.

22    Q.   And you don't know whether in this particular instance

23         whether the Coca-Cola Company asked for label designs?

24    A.   I don't.

25                    MR. SILVERMAN:  Show you what we'll mark as

**Exhibits 12-16 Filed Under Seal**

**PROOF OF SERVICE**
[CCP 1013a; Fed. R. Civ. P.6]

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF LOS ANGELES      )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 3699 Wilshire Boulevard, Suite 890, Los Angeles, California 90010.

On **February 2, 2010,** I served the foregoing document, described as **<u>DECLARATION OF SARAH E. ZGLINIEC IN SUPPORT OF DEFENDANT'S MOTINOS IN LIMINE</u>** in this action by placing the original/copies thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as follows:

<u>**SEE ATTACHED SERVICE LIST**</u>

[✔]   [BY MAIL] I am "readily familiar" with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Los Angeles, California.

[✔]   [BY E-MAIL] By electronically transmitting the document(s) listed above addressed as set forth on the attached service list.

[ ]   [BY FACSIMILE TRANSMISSION] I transmitted to the above-named person(s), at the fax number(s) listed above, the above-named document, pursuant to Rule 2008. The facsimile machine that I used complies with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2005(I), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this document.

[]   [BY MESSENGER SERVICE] My business address is: First Legal Support Services, 1511 West Beverly Boulevard, Los Angeles, California 90026. On the date shown below, I delivered such envelope by hand to the above address(es)

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

DATED: February 2, 2010

_____
P. BROWN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Service List</u>**
**<u>Pom Wonderful LLC v. The Coca-Cola Company, et al.</u>**
Assigned to: Judge S. James Otero
Related Case: 2:09-CV-06309-SJO-FMO

Attorney

Party

Daniel Scott Silverman, Esq. <u>dsilverman@roll.com</u>
Roll International Corporation-Legal Department
11444 West Olympic Boulevard, 10th Floor
Los Angeles, California 90064-1557

Attorneys for Plaintiff
Pom Wonderful
a Delaware limited liability company

Mark D. Campbell, Esq. <u>mcampbell@loeb.com</u>
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
(310) 282-2000-Telephone/(310) 282-2200-Facsimile

Attorneys for Plaintiff
Pom Wonderful
a Delaware limited liability company

Steven A. Zalesin, Esq. <u>sazalesin@pbwt.com</u>
Derek A. Williams, Esq., <u>dwilliams@pbwt.com</u>
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2110-Telephone/(212) 336-2111-Facsimile
(courtesy electronic copy only)

Attorneys for Defendant
The Coca-Cola Company
a Delaware corporation

Shani Thome, Litigation Counsel <u>sthome@na.ko.com</u>
The Coca-Cola Company
One Coca-Cola Plaza, P.O. Box 1734
Atlanta, Georgia 30301
(404) 676-4407-Telephone/(404) 598-4407-Facsimile
(courtesy electronic copy only)

Attorneys for Defendant
The Coca-Cola Company
a Delaware corporation