Nelson L. Atkins (SBN 036752)
nelson_atkins@gshllp.com
Kenneth M. Jones (SBN 140358)
kenneth_jones@gshllp.com
GONZALEZ SAGGIO & HARLAN LLP
3699 Wilshire Boulevard, Suite 890
Los Angeles, California 90010
Telephone: (213) 487-1400
Facsimile: (213) 487-1402

Steven A. Zalesin (admitted *pro hac vice*)
sazalesin@pbwt.com
Derek A. Williams (admitted *pro hac vice*)
dwilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

Attorneys for Defendant
THE COCA-COLA COMPANY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY, a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV-08-06237 SJO (FMOx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Honorable S. James Otero<br>Date: January 25, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 1, Second Floor |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

I. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON POM'S NAME AND LABEL CLAIMS .......................................................... 1

II. POM HAS NOT PROVIDED ANY PROOF THAT TCCC'S WEBSITE OR ADVERTISEMENTS ARE MISLEADING ......................... 3

    A. Pom's Survey Only Goes to the Juice's Name and Label ..................... 3

    B. Pom Cannot Avoid the Survey Requirement Because TCCC's Website and Ads Are Not Willfully Misleading .................................... 4

# PRELIMINARY STATEMENT

Pom accuses TCCC of being "stricken with amnesia" about this Court's earlier rulings. But it is Pom that seems to have forgotten that this Court in fact *granted* TCCC's motion to dismiss with respect to Pom's claims about the name and label for the Juice. And Pom has completely failed to prove the portion of its case that this Court actually allowed to proceed.

TCCC's motion for summary judgment should be granted for two simple reasons. First, Pom's claims concerning the *name and label* of the Juice are barred, as the Court has twice before ruled. And second, Pom has failed to develop any proof to support its claims as to TCCC's *website and advertising* for the Juice.[1]

## I. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON POM'S NAME AND LABEL CLAIMS

Pom incorrectly contends that this Court "reject[ed] in their entirety" TCCC's two earlier motions to dismiss. Pom's Opp. at 1. This is manifestly false. In its First Order, this Court "GRANTED IN PART" TCCC's motion, dismissing Pom's Lanham Act and state law claims regarding the Juice's name and label on FFDCA preclusion and preemption grounds. First Order at 7, 11. The Court allowed only Pom's claims "that Coca-Cola has *otherwise* advertised and marketed its product in a misleading manner" to proceed. *Id.* at 7 (emphasis added).

When TCCC moved a second time to dismiss Pom's Lanham Act claim in its entirety, this Court did not "reconsider" or "reverse" its earlier decision. Rather, the Court explained that it had not found Pom's "*entire*" Lanham Act claim to be barred, and repeated that Pom was not barred from alleging that TCCC "has advertised or marketed the Juice in a misleading manner *on its website and in other advertising avenues* . . . ." Second Order at 2 (emphasis added). Due to the difficulty of "demarcat[ing]" the line between these barred and permitted claims

---

[1] Unless specifically defined herein, all abbreviated terms were defined in TCCC's opening brief ("TCCC's MSJ").

during discovery, however, the Court allowed Pom to conduct discovery on all fronts, even as to the name and label of the Juice. *Id.* at 3-4.

The Court's decision in the First Order on preclusion and preemption was correct. In issuing its beverage rules in 1993, FDA announced its conclusion that "***this revision of new § 102.33*** along with the others discussed below ***are adequate to prevent misleading labels on multiple-juice beverages***." 58 Fed. Reg. 2897 at 2920 (emphasis added). Once FDA has spoken about a labeling issue (as here) and a manufacturer's label complies with FDA directives, the issue is within FDA's sole purview and cannot be revisited under the Lanham Act. *See* First Order at 4-7; TCCC's MSJ at 10-13.

Pom hopes to persuade the Court to depart from its reasoned decision now, first by arguing that "[t]he preclusion doctrine looks at whether the district court would be required to overrule a specific determination made by FDA." Pom's Opp. at 10. This is not the law, and Pom cites no authority for this assertion.

Second, Pom repeats tired arguments that this Court should not defer to FDA because (1) FDA's regulations only permit, but do not "require," labels such as TCCC's label for the Juice, and (2) FDA has not "specifically reviewed" the Juice's label. These are baseless arguments – and, in any event, FDA ***has*** considered and expressly approved a hypothetical label that is virtually identical to that of the Juice. *See* 58 Fed. Reg. 2897 at 2921; TCCC's Opp. at 8-9.

Next, Pom parades before the Court the decisions of Judges Fischer, Matz, and Pregerson in similar actions, intimating that this Court got it wrong. But in fact, Judge Fischer never ruled on preclusion or preemption. *See Pom v. Tropicana Prods.,* No. CV 09-566 DSF (CTx), (C.D. Cal. Oct. 21, 2009) [Dkt. # 55]. And Judges Matz and Pregerson simply opted not to close the door on Pom's name and label claims at the early motion to dismiss stage, given that the labels in those cases made more and different claims than TCCC's. *See* TCCC's MSJ at 10 n.3; TCCC's Opp. at 10 n.4. Here, the issue is clear-cut; FDA has expressly approved a

hypothetical label that is indistinguishable from the Juice's label. *See supra*.

Finally, Pom hopes to resuscitate its state law claims by arguing that *Wyeth v. Levine*, 129 S. Ct. 1187 (2009), has "significantly narrowed FDCA preemption." Pom's Opp. at 14. But *Wyeth* only narrowed *implied* preemption in the unique context of *prescription drug* labels – and has no bearing here, where the Court found that Pom's claims about the Juice's label were ***expressly*** preempted by the FFDCA. In any event, Pom's state law claims are fatally defective because Pom lacks standing to bring them. Judges Fischer and Matz have considered this exact issue in circumstances identical to the ones here, and both Judges dismissed Pom's claims for lack of standing. TCCC's MSJ at 17-20. The same should happen here.

## II. POM HAS NOT PROVIDED ANY PROOF THAT TCCC'S WEBSITE OR ADVERTISEMENTS ARE MISLEADING

Following the First and Second Orders, Pom should have focused on marshalling evidence ***not*** about the Juice's name or label, but about TCCC's marketing of the Juice on its website and in ads. But Pom did not do so. Pom has adduced no evidence that the website and advertisements are misleading.

### A. Pom's Survey Only Goes to the Juice's Name and Label

To prevail under the Lanham Act, a plaintiff must show either that an advertisement is "literally false" or that it is "likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Pom does not claim that TCCC's ads for the Juice are "literally false" – and they are not, since it is indisputably true that the Juice is flavored with pomegranate and blueberry juices. Pom is thus left to argue that TCCC's website and ads are "misleading" to a substantial portion of the viewing audience – a claim that must be supported by a survey of consumers. *Id.* at 1140.

Pom, however, put forward ***no*** survey evidence about the website or advertisements. The consumer survey it has offered is about nothing but the Juice's label – as to which Pom's claims are already dismissed. Pom argues that

"extensive evidence supports [its] claims that TCCC's website misleads and deceives consumers regarding the Juice's contents" (Pom's Opp. at 17) – but Pom cites no such evidence. All that follows is speculation by Pom about what consumers *might* conclude from viewing the website.

Indeed, Deborah Jay, Pom's survey expert, conceded at her deposition that she has no familiarity with any advertising for the Juice other than the website, and ***no opinion as to whether any of TCCC's other advertisements are misleading to consumers***. Jay Decl., Exh. B at 37. Jay also clarified that the survey she conducted was specifically performed on the Juice's package and that ***she did not conduct a survey of consumer response to any aspect of the Juice's website***. *Id*. at 38. Her only opinion regarding whether the website was misleading was based solely on the fact that the website "prominently displays the name of the product and the package of the product." *Id*. at 37-38. And although Pom argues that the website's use of a "shorthand" or informal name for the Juice is misleading to consumers, the Jay survey did not test whether that was in fact the case. (Nor could it be, since on the website, these "shorthand" names always appear in close proximity to the Juice's full name. *See* TCCC's Opp. at 11 n.5.)

**B.  Pom Cannot Avoid the Survey Requirement Because TCCC's Website and Ads Are Not Willfully Misleading**

Pom attempts to circumvent the consumer survey requirement by arguing that TCCC's false advertising is "willful" and thus "inherently establishes that consumers are substantially deceived." Pom's Opp. at 18. Where a defendant has "intentionally misled" consumers by "deliberate conduct of egregious nature," courts may presume that consumers were in fact deceived and shift the burden to the defendant to demonstrate otherwise. *See The William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 131 (3d Cir. 1994). But that exception is not available here. None of Pom's evidence of TCCC's

supposed "willful deception" has anything to do with TCCC's *website or advertisements* for the Juice – the only claims that remain in the case.

For instance, Pom claims that an e-mail from TCCC's Lucy Reid (Exh. H) is a "smoking gun" because she acknowledges that "[t]here is a risk from a misleading standpoint as the product has less than 0.5% of pomegranate and blueberry juices." But that statement is about the Juice's *name* (a precluded claim), and does nothing to prove TCCC's supposed intent to deceive via its *website*. In any event, Reid prefaced the statement above with her assessment that "[w]e are in compliance with the FDA regs related to naming of juice containing products." TCCC's documented belief that it is in compliance with FDA regulations is hardly proof of an egregious intent to deceive.

Similarly, Pom claims that TCCC added "token" quantities of pomegranate and blueberry juice to the Juice "in order to name it as 'Pomegranate Blueberry'" and "mislead[] reasonable consumers." Pom's Opp. at 2. Again, this allegation as to TCCC's deceptive intent has to do with the *name* of the Juice (a precluded claim), not the *website*. And it can hardly be "egregious intent to deceive" to name a product in accordance with FDA regulations, as TCCC has done.

Finally, the select consumer complaints Pom cites (Exhs. L – Q) have nothing to do with TCCC's intent to deceive on its *website* – they are from supposedly disgruntled consumers who bought the product in stores. Moreover, these documents are inadmissible as hearsay. *See* Objections to Evidence.[2]

In sum, Pom has offered no evidence that TCCC's website or ads have misled consumers. TCCC's motion for summary judgment should be granted.

Dated: January 15, 2010     PATTERSON BELKNAP WEBB & TYLER LLP
                            By:  */s Steven A. Zalesin*

---

[2] Pom's also attaches several internal TCCC marketing documents (Exhs. I, J, K) – but since Pom did not even mention them in its opposition brief, they are irrelevant to the motion and TCCC does not address them here.