1   Nelson L. Atkins (SBN 036752)
    nelson_atkins@gshllp.com
2   Kenneth M. Jones (SBN 140358)
    kenneth_jones@gshllp.com
3   GONZALEZ SAGGIO & HARLAN LLP
    3699 Wilshire Boulevard, Suite 890
4   Los Angeles, California 90010
    Telephone: (213) 487-1400
5   Facsimile: (213) 487-1402

6   Steven A. Zalesin (admitted *pro hac vice*)
    sazalesin@pbwt.com
7   Derek A. Williams (admitted *pro hac vice*)
    dwilliams@pbwt.com
8   PATTERSON BELKNAP WEBB & TYLER LLP
    1133 Avenue of the Americas
9   New York, New York 10036
    Telephone: (212) 336-2000
10  Facsimile: (212) 336-2222

11  Attorneys for Defendant
    THE COCA-COLA COMPANY
12

13              **UNITED STATES DISTRICT COURT**
14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16   POM WONDERFUL LLC, a              Case No.   CV-08-06237 SJO (FMOx)
     Delaware limited liability company,
17
                                        **DEFENDANT'S MEMORANDUM OF**
18              Plaintiff,              **CONTENTIONS OF LAW AND FACT**

19        v.                            **PUBLIC REDACTED VERSION**

20   THE COCA-COLA COMPANY, a           Judge:   Honorable S. James Otero
21   Delaware corporation; and DOES 1-  Date:    March 9, 2010
     10, inclusive,                     Time:    10:00 a.m.
22                                      Place:   Courtroom 1, Second Floor
23              Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

I.    POM'S CLAIMS AND MINUTE MAID'S AFFIRMATIVE
      DEFENSES ........................................................................................... 1

      A.    Pom's Claims ............................................................................ 1

            Claim 1:    Minute Maid's advertising for the Juice is false or
                        misleading in violation of the Lanham Act, 15 U.S.C.
                        § 1125. ................................................................... 1

            Claim 2:    Minute Maid's advertising for the Juice is false or
                        misleading in violation of Cal. Bus. & Prof. Code §
                        17500. .................................................................... 2

            Claim 3:    Minute Maid has engaged in unfair competition in
                        violation of Cal. Bus. & Prof. Code § 17200. ................... 3

      B.    Minute Maid's Affirmative Defenses ..................................... 4

            Defense 1:  Pom's Lanham Act claim is precluded because it
                        impermissibly challenges FDA regulations. ..................... 4

            Defense 2:  Pom's Lanham Act claim is barred by the doctrine of
                        primary jurisdiction. ............................................... 5

            Defense 3:  Pom's Lanham Act claim is barred because Minute
                        Maid has complied with all applicable laws. ................... 5

            Defense 4:  Pom's state law claims are barred for lack of standing..... 5

            Defense 5:  Pom's state law claims are preempted. ........................... 6

            Defense 6:  Pom's state law claims are barred by California's safe
                        harbor doctrine. ..................................................... 6

            Defense 7:  Pom's claims are barred by its unclean hands. ................. 6

      C.    Key Evidence in Opposition to Pom's Claims and in Support of
            Minute Maid's Affirmative Defenses ..................................... 7

            1.    Minute Maid's Ads Are Not "Literally False" ........................... 7

            2.    Consumers Are Not Misled by the Juice's Advertising ............. 8

|   | 3. | Pom Cannot Circumvent the Survey Requirement .................. 10 |
|   | 4. | Interstate Commerce ................................................................ 11 |
|   | 5. | Pom Has Not Demonstrated the Materiality of Minute Maid's Purportedly False Advertising ....................................... 11 |
|   | 6. | Pom Has Not Been Injured as a Result of Any Allegedly Misleading Advertising ........................................................... 12 |
|   | 7. | Pom Has Suffered No Damages ............................................... 12 |
|   | 8. | Pom's Own Conduct Shows that Minute Maid's Label for the Juice Is Permissible............................................................ 15 |
|   | 9. | Pom's Hands are "Unclean" .................................................... 15 |

II.   CONTENTIONS OF LAW ......................................................................... 17

   A.   Issues to Be Resolved by the Court and the Jury ................................ 17

      1.   The Court Should Decide Dispositive Threshold Legal Questions ................................................................................ 17

      2.   The Court Should Decide the Merits of Pom's State Law Claims ...................................................................................... 18

      3.   The Court Should Decide Whether Pom Is Entitled to the Equitable Remedies It Seeks ................................................... 18

   B.   Key Legal Issues Germane to the Case ............................................... 19

      1.   Pom's Lanham Act Claim Is Not Actionable........................... 19

      2.   Pom's State Law Claims Are Not Actionable........................... 22

      3.   Pom Is Not Entitled to Equitable Relief ................................... 24

III.  EVIDENTIARY ISSUES...................................................................... 27

IV.  ABANDONMENT OF ISSUES ............................................................ 27

V.   ATTORNEYS' FEES............................................................................ 28

VI.  BIFURCATION .................................................................................. 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Home Prods. Corp. v. Procter & Gamble Co.,*
  871 F. Supp. 739 (D.N.J. 1994).............................................................. 9

*American Home Prods. Corp. v. Johnson & Johnson,*
  672 F. Supp. 135 (S.D.N.Y. 1987) ........................................................ 5

*Amoco Prod. Co. v. Village of Gambell, Alaska,*
  480 U.S. 531 (1987) ............................................................................. 24

*AstraZeneca LP v. TAP Pharm., Inc.,*
  444 F. Supp. 2d 278 (D. Del. 2006) ...................................................... 9

*Burndy Corp. v. Teledyne Indus., Inc.,*
  748 F.2d 767 (2d Cir. 1984) ............................................................... 26

*Cairns v. Franklin Mint Co.,*
  24 F. Supp. 2d 1013 (C.D. Cal. 1998)................................................... 2

*Castrol, Inc. v. Pennzoil Quaker State Co.,*
  169 F. Supp. 2d 332 (D.N.J. 2001)...................................................... 19

*Century 21 Real Estate Corp. v. Sandlin,*
  846 F.2d 1175 (9th Cir. 1988)............................................................. 25

*In re Century 21-Remax Real Estate Adver. Claims Litig.,*
  882 F. Supp. 915 (C.D. Cal. 1994)........................................................ 2

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
  526 U.S. 687 (1999) ............................................................................. 18

*Clark v. Time Warner Cable,*
  523 F.3d 1110 (9th Cir. 2008).............................................................. 5

*Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection Serv.,*
  911 F.2d 242 (9th Cir. 1990)........................................................... 2, 11

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
   12 F. Supp. 2d 296 (S.D.N.Y. 1998) ......................................................... 4, 5, 21

*Daghlian v. DeVry University, Inc.*,
   461 F. Supp. 2d 1121 (C.D. Cal. 2006) ......................................................... 2, 4

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
   890 F.2d 165 (9th Cir. 1989) ......................................................... 6, 15

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ......................................................... 24

*Ethex Corp. v. First Horizon Pharm. Corp.*,
   228 F. Supp. 2d 1048 (E.D. Mo. 2002) ......................................................... 21

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
   No. C-07-2424, 2007 WL 2572191 (N.D. Cal. Sept. 5, 2007) ......................................................... 4

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ......................................................... 4

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) ......................................................... 6, 15

*Gracie v. Gracie*,
   217 F.3d 1060 (9th Cir. 2000) ......................................................... 25

*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989) ......................................................... 26

*Heighley v. J.C. Penney Life Ins. Co.*,
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) ......................................................... 4

*Int'l Olympic Committee v. San Francisco Arts & Athletics*,
   781 F.2d 733 (9th Cir. 1986) ......................................................... 25

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ......................................................... 6, 15

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.,*
   19 F.3d 125 (3d Cir. 1994) ................................................................ 8, 10

*Kasky v. Nike, Inc.,*
   27 Cal. 4th 939 (2002) ............................................................................. 2

*Lindy Pen Co. v. Bic Pen Corp.,*
   982 F.2d 1400 (9th Cir. 1993) ............................................................... 26

*Lippitt v. Raymond James Fin. Servs., Inc.,*
   340 F.3d 1033 (9th Cir. 2003) ................................................................. 4

*Lozano v. AT & T Wireless Services, Inc.,*
   504 F.3d 718 (9th Cir. 2007) ................................................................... 2

*Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
   571 F.3d 873 (9th Cir. 2009) ................................................................. 24

*McClaran v. Plastic Indus., Inc.,*
   97 F.3d 347 (9th Cir. 1996) ................................................................... 25

*Monex Deposit Co. v. Gilliam,*
   2010 WL 325570 (C.D. Cal Jan. 25, 2010) ........................................... 24

*Mutual Pharm. Co. v. Ivax Pharm. Inc.,*
   459 F. Supp. 2d 92 (C.D. Cal. 2006) ....................................................... 7

*National Basketball Assoc. v. Motorola, Inc.,*
   105 F.3d 841 (2d Cir. 1997) .................................................................. 11

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,*
   290 F.3d 578 (3d Cir. 2002) .................................................................... 9

*Okura & Co. (America), Inc. v. Careau Group,*
   783 F.Supp. 482 (C.D. Cal. 1991) ......................................................... 18

*Oyster Software, Inc. v. Forms Processing, Inc.,*
   No. C-00-0724, 2001 WL 1736382 (N.D. Cal. Dec. 6, 2001) ............... 19

v

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
    227 F.3d 489 (5th Cir. 2000) ..................................................... 11

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,*
    692 F.2d 1272 (9th Cir. 1982) ................................................... 19

*Playboy Enters., Inc. v. Terri Welles, Inc.,*
    78 F. Supp. 2d 1066 (S.D. Cal. 1999) ......................................... 8

*Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.,*
    970 F.2d 552 (9th Cir. 1992) ..................................................... 18

*Rice v. Fox Broad. Co.,*
    330 F.3d 1170 (9th Cir. 2003) ............................................. 2, 11

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.,*
    902 F.2d 222 (3d Cir. 1990) ......................................... 4, 5, 8, 21

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997) ............................................... 2, 9

*Summit Tech. Inc. v. High-Line Med. Instruments Co.,*
    922 F. Supp. 299 (C.D. Cal. 1996) ....................................... 5, 22

*Summit Tech. Inc. v. High-Line Med. Instruments Co.,*
    933 F. Supp. 918 (C.D. Cal. 1996) ........................................... 22

*U-Haul Intern., Inc. v. Jartran, Inc.,*
    793 F.2d 1034 (9th Cir. 1986) ........................................... 25, 26

*U.S. v. Gen. Dynamics Corp.,*
    828 F.2d 1356 (9th Cir. 1987) ................................................... 5

*Walker v. Geico Gen. Ins. Co.,*
    558 F.3d 1025 (9th Cir. 2009) ................................................... 5

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,*
    178 F. Supp. 2d 1099 (C.D. Cal. 2001) ..................................... 4

*Weinberger v. Bentex Pharm. Inc.,*
    412 U.S. 645 (1973) ................................................................. 5

1

2

*William H. Morris Co. v. Group W, Inc.,*
   66 F.3d 255 (9th Cir. 1995) ............................................................. 8, 10

3

4

*Winter v. Natural Res. Def. Council, Inc.,*
   129 S. Ct. 365 (2008) ......................................................................... 24

5

6

### STATE CASES

7

8

*Buckland v. Threshold Enterprises, Ltd.,*
   155 Cal. App. 4th 798, 66 Cal. Rptr. 3d 543 (2007) ............................. 5

9

10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163, 3 Cal. Rptr. 2d 548 (1999) ............................... 4, 6, 23

11

12

*Citizens of Humanity, LLC v. Costco Wholesale Corp.,*
   171 Cal. App. 4th 1, 89 Cal. Rptr. 3d 455 (2009) ........................ 3, 4, 5

13

14

*Colgan v.  Leatherman Tool Group, Inc.,*
   135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (2006) ............................... 2

15

16

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.,*
   35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983) ........................................... 4

17

18

*Farmers Ins. Exch. v. Superior Court,*
   2 Cal. 4th 377, 6 Cal. Rptr. 2d 487 (1992) .......................................... 4

19

20

*Hodge v. Superior Court,*
   145 Cal. App. 4th, 51 Cal. Rptr. 3d 519 (2006) ................................. 18

21

22

*McKell v. Wash. Mut., Inc.,*
   142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006) ........................ 23

23

24

### STATUTES

25

26

21 C.F.R. § 102.33(d)(1) .................................................................. 20, 23

27

21 U.S.C. § 343-1(a) ............................................................................... 6

28

15 U.S.C. § 1117................................................................................ 18, 25, 26

58 Fed. Reg. 2897 *et seq.*.............................................................. 20, 23, 24

Cal. Bus. & Prof. Code § 17200 ................................................................. 3

Cal. Bus. & Prof. Code § 17500 ................................................................. 2

Cal. Health & Safety Code § 109875 ....................................................... 22

Fed. R. Civ. P. 12(b)(6) ............................................................................. 21

Fed. R. Civ. P. 38(a) ................................................................................. 17

Lanham Act, 15 U.S.C. § 1125................................................................... 1

U.S. CONST. amend. VII ........................................................................... 17

## MISCELLANEOUS

4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION § 32.54[4] (3d ed. 1992) ................................................ 8

1    Plaintiff Pom Wonderful LLC ("Pom") alleges that Defendant The Coca-

2    Cola Company ("Minute Maid") has made false and misleading statements in

3    advertisements for Minute Maid Enhanced Pomegranate Blueberry Flavored Blend

4    of 5 Juices ("the Juice") in violation of the Lanham Act, 15 U.S.C. § 1125, as well

5    as California Business and Professions Code §§ 17200 (Unfair Competition) (the

6    "UCL") and 17500 (False Advertising) (the "FAL").

7    Minute Maid denies these allegations in all respects and asserts that Pom's

8    claims are barred by the doctrines of (1) preclusion, (2) primary jurisdiction, (3)

9    compliance with laws, (4) standing, (5) preemption, (6) safe harbor, and (7) unclean

10    hands.

11    **I.    POM'S CLAIMS AND MINUTE MAID'S AFFIRMATIVE**

12    **DEFENSES**

13    **A.    Pom's Claims**

14    **Claim 1:    Minute Maid's advertising for the Juice is false or**

15    **misleading in violation of the Lanham Act, 15 U.S.C. §**

16    **1125.**

17    i)    In advertisements for the Juice, Minute Maid made false

18    or misleading statements of fact about its product.

19    ii)    Those advertisements actually deceived a substantial

20    segment of their audience.

21    iii)    Such deception is material, in that it is likely to influence

22    the purchasing decision of consumers.

23    iv)    Minute Maid made its statements in interstate commerce

24    or in such a way as to have an impact on interstate

25    commerce.

26    v)    Pom has been or is likely to be injured as a result of the

27    false or misleading statements.

28

1    *See Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d

2    718, 731 (9th Cir. 2007); *Rice v. Fox Broad. Co.*, 330

3    F.3d 1170, 1181 (9th Cir. 2003); *Southland Sod Farms v.*

4    *Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997);

5    *Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection Serv.*,

6    911 F.2d 242, 244 (9th Cir. 1990); *Cairns v. Franklin*

7    *Mint Co.*, 24 F. Supp. 2d 1013, 1036 (C.D. Cal. 1998); *In*

8    *re Century 21-Remax Real Estate Adver. Claims Litig.*,

9    882 F. Supp. 915, 922 (C.D. Cal. 1994).

10   **Claim 2:**    **Minute Maid's advertising for the Juice is false or**

11   **misleading in violation of Cal. Bus. & Prof. Code §**

12   **17500.**

13       i)    Minute Maid intended to sell a product or service.

14       ii)   Minute Maid publicly disseminated advertising that:

15           a.    contained a statement that was untrue or

16                 misleading;

17           b.    Minute Maid knew, or in the exercise of reasonable

18                 care should have known, was untrue or misleading;

19                 and

20           c.    concerned the product or service or its disposition

21                 or performance.

22       iii)  Pom suffered injury in fact and has lost money or

23             property such as would entitle him to restitution as a

24             result of the false advertising.

25             *See* Cal. Bus. & Prof. Code §§17500, 17204 & 17535; *see*

26             *also, e.g., Daghlian v. DeVry University, Inc.*, 461 F.

27             Supp. 2d 1121, 1153-1155 (C.D. Cal. 2006); *Kasky v.*

28             *Nike, Inc.*, 27 Cal. 4th 939, 950-951 (2002); *Colgan v.*

1    *Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679

2    (2006); *Citizens of Humanity, LLC v. Costco Wholesale*

3    *Corp.*, 171 Cal. App. 4th 1, 22, 89 Cal. Rptr. 3d 455, 472

4    (2009).

5    **Claim 3:**      **Minute Maid has engaged in unfair competition in**

6                 **violation of Cal. Bus. & Prof. Code § 17200.**

7              i)      Minute Maid engaged in business acts or practices that

8                 are (1) unlawful, (2) unfair, or (3) fraudulent.

9                      a.      An "unlawful practice" is one that is forbidden by

10                           statute (state or federal), regulation, or decisional

11                           law.

12                     b.      To show that Minute Maid engaged in "unfair"

13                           business acts or practices, Pom must show that

14                           Minute Maid's practices threaten an incipient

15                           violation of an antitrust law, or violate the policy or

16                           spirit of one of those laws because their effects are

17                           comparable to or the same as a violation of the law,

18                           or otherwise significantly threatens or harms

19                           competition.

20                     c.      To show that Minute Maid engaged in "fraudulent"

21                           business acts or practices, Pom must demonstrate

22                           that members of the public are likely to be deceived

23                           by Minute Maid's practices.  The test for likelihood

24                           of deception is whether Minute Maid's practices

25                           are misleading to a reasonable consumer.

26             ii)     Pom suffered injury in fact and has lost money or

27                 property such as would entitle it to restitution as a result

28                 of Minute Maid's unfair competition.

1    *See Daghlian v. DeVry University, Inc.*, 461 F. Supp. 2d

2    1121, 1154-55 (C.D. Cal. 2006); *Lippitt v. Raymond*

3    *James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir.

4    2003); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular*

5    *Tel. Co.*, 20 Cal. 4th 163, 182, 3 Cal. Rptr. 2d 548, 562

6    (1999); *First Advantage Background Servs. Corp. v.*

7    *Private Eyes, Inc.*, No. C-07-2424, 2007 WL 2572191, at

8    *5 (N.D. Cal. Sept. 5, 2007); *Comm. on Children's*

9    *Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 668

10    (Cal. 1983); *Watson Labs., Inc. v. Rhone-Poulenc Rorer,*

11    *Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001);

12    *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995);

13    *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d

14    1241, 1260 (C.D. Cal. 2003); *Farmers Ins. Exch. v.*

15    *Superior Court*, 2 Cal. 4th 377, 383 (1992); *Citizens of*

16    *Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App.

17    4th 1, 22, 89 Cal. Rptr. 3d 455, 472 (2009).

18    **B.    Minute Maid's Affirmative Defenses**

19    **Defense 1:    Pom's Lanham Act claim is precluded because it**

20    **impermissibly challenges FDA regulations.**

21    i)    Once FDA has spoken about a labeling issue and the

22    defendant's label complies with FDA directives, the issue

23    is within FDA's sole purview and cannot be revisited

24    under the Lanham Act.

25    *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp.

26    2d 296, 301 (S.D.N.Y. 1998); *Sandoz Pharms. Corp. v.*

27    *Richardson-Vicks, Inc.*, 902 F.2d 222, 230-31 (3d Cir.

28    1990).

| | | |
|---|---|---|
| 1 | **Defense 2:** | **Pom's Lanham Act claim is barred by the doctrine of** |
| 2 | | **primary jurisdiction.** |
| 3 | i) | FDA has primary jurisdiction over this claim. |
| 4 | | *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 |
| 5 | | (9th Cir. 2008); *U.S. v. Gen. Dynamics Corp.,* 828 F.2d |
| 6 | | 1356, 1362 (9th Cir. 1987); *Weinberger v. Bentex Pharm.* |
| 7 | | *Inc.*, 412 US 645, 654 (1973); *Sandoz Pharms. Corp. v.* |
| 8 | | *Richardson-Vicks, Inc.*, 902 F.2d 222, 230-31 (3d Cir. |
| 9 | | 1990); *Summit Tech. Inc. v. High-Line Med. Instruments* |
| 10 | | *Co.*, 922 F. Supp. 299, 306 (C.D. Cal. 1996). |

**Defense 3:  Pom's Lanham Act claim is barred because Minute Maid has complied with all applicable laws.**

i)  Once FDA has spoken about a labeling issue and the defendant's label complies with FDA directives, the issue cannot be revisited under the Lanham Act.

*See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998); *American Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 143-44 (S.D.N.Y. 1987).

**Defense 4:  Pom's state law claims are barred for lack of standing.**

i)  Pom is not entitled to restitution from Minute Maid and so has no standing to bring a cause of action under Cal. Bus. & Prof. Code sections 17200 and 17500.

*See Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22, 89 Cal. Rptr. 3d 455, 472 (2009); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 817-19, 66 Cal. Rptr. 3d 543, 557-58 (2007); *see also Walker v. Geico Gen. Ins. Co.,* 558 F.3d

5

1    1025, 1027 (9th Cir. 2009).

2    **Defense 5:   Pom's state law claims are preempted.**

3            i)      State law that imposes obligations that are not identical to

4                    those imposed in Section 343(f) and 343(i) of the Federal

5                    Food, Drug, and Cosmetics Act ("FFDCA"), as well as

6                    the FDA's implementing regulation for these sections, are

7                    expressly preempted.

8                    *See* 21 U.S.C. § 343-1(a).

9    **Defense 6:   Pom's state law claims are barred by California's safe**

10                   **harbor doctrine.**

11           i)      Minute Maid's conduct is clearly permitted by the

12                   FFDCA.

13                   *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*

14                   *Co.*, 20 Cal. 4th 163, 182, 83 Cal. Rptr. 2d 548, 562

15                   (1999).

16   **Defense 7:   Pom's claims are barred by its unclean hands.**

17           i)      Pom has acted inequitably through fraudulent conduct.

18           ii)     Pom's inequitable conduct directly relates to the subject

19                   matter of its claim.

20                   *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304

21                   F.3d 829, 841-42 (9th Cir. 2002); *Dollar Sys., Inc. v.*

22                   *Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir.

23                   1989); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826

24                   F.2d 837, 847 (9th Cir. 1987).

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    **Key Evidence in Opposition to Pom's Claims and in Support of Minute Maid's Affirmative Defenses**

1.    **Minute Maid's Ads Are Not "Literally False"**

In cases where advertisers make literally false statements in their ads, a violation may be established without evidence of consumer deception. *See Mutual Pharm. Co. v. Ivax Pharm. Inc.*, 459 F. Supp. 2d 92, 933 (C.D. Cal. 2006). But Minute Maid's label and ads contain no literally false statements. It is indisputably *true* that the Juice contains pomegranate and blueberry juices and is pomegranate and blueberry flavored. Indeed, *Pom itself* has engaged in labeling practices similar to Minute Maid's label for the Juice – practices that Pom now claims are false and deceptive. Pom has marketed products that do not name each ingredient on the label or do not list each ingredient in the order of predominance by volume. In fact, its own Pomegranate Blueberry product originally contained plum, pineapple, apple, and blackberry juices from concentrate, but was always labeled "Pomegranate Blueberry 100% Juice." Pom therefore cannot proceed, let alone recover, on a theory that every mention of pomegranates or blueberries in Minute Maid's ads is literally false.

Pom also cannot attack Minute Maid's website as literally false simply because, on one or two pages of the website, the Juice is referred to as "Pomegranate Blueberry Enhanced Juice." These shorthand references to the Juice appear in close proximity to (*i.e.*, directly underneath) the full name of the product "Pomegranate Blueberry Enhanced Flavored Juice Blend" or on the same page as the "Nutrition Facts" that list all the juices in the product. Visitors to Minute Maid's website therefore are highly unlikely to be left with the misimpression that pomegranate juice or blueberry juice are the exclusive or primary juices. At a minimum, Pom would need a survey, which it does not have, to show that a substantial portion of consumers are likely to interpret Minute Maid's website to communicate that implied message.

1       Beyond this weak attempt relating to Minute Maid's website for the Juice,

2   Pom has not even sought to assert that any of Minute Maid's ads – which focus on

3   the distinct benefits of the Omega 3/DHA and other nutrients with which the Juice

4   is fortified, as well as its flavor – are literally false.

5             **2.     Consumers Are Not Misled by the Juice's Advertising**

6       Pom is thus left to argue that Minute Maid's advertising is "misleading" to a

7   substantial portion of the viewing audience.  A Lanham Act plaintiff that seeks to

8   establish that an advertisement is misleading, as opposed to false on its face, bears

9   the burden of establishing that the ad is likely to deceive a substantial portion of its

10  viewing audience.  *See Playboy Enters., Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d

11  1066, 1083 (S.D. Cal. 1999), *rev'd in part on other grounds,* 279 F.3d 796 (9th Cir.

12  2002); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d

13  Cir. 1990) ("plaintiff bears the burden of proving actual deception by a

14  preponderance of the evidence.  Hence, it cannot obtain relief by arguing how

15  consumers *could* react, it must show how consumers *actually do* react.") (emphasis

16  in original).  Such proof of deception usually turns on a survey of consumers.

17  *Southland Sod Farms*, 108 F.3d at 1140.

18      As a threshold matter, Pom incorrectly claims that a consumer confusion

19  rates between 7.5% and 15% are sufficient to support a Lanham Act claim.  In fact,

20  courts have generally require a deception rate of at least 20% to satisfy the

21  "substantial portion" criterion of this test.  *See William H. Morris Co. v. Group W,*

22  *Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) (quoting 4 J. Thomas McCarthy, *McCarthy*

23  *on Trademarks and Unfair Competition* § 32.54[4] (3d ed. 1992) for the proposition

24  that "courts have found evidence sufficient where 21 to 34 percent of the recipients

25  were deceived"); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-*

26  *Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 134 n.14 (3d Cir. 1994) ("With regard to

27  what constitutes a substantial or significant number of consumers who are misled,

28  the court cited to several cases which suggest that 20% would be sufficient.")

        8          

1   (*citing Stiffel Co. v. Westwood Lighting Group*, 658 F. Supp. 1103, 1114 (D.N.J.

2   1987) (potential that between 22% and 57% of consumers will be misled is not

3   insubstantial); *R.J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.*, 511 F. Supp.

4   867, 876 (S.D.N.Y. 1980) ('deception rate' of between 20% and 33% sufficient to

5   warrant preliminary injunctive relief); and *McNeilab Inc. v. Am. Home Prod. Corp.*,

6   501 F. Supp. 517, 527 (S.D.N.Y. 1980) (23% not insubstantial number of

7   consumers)").[1]

8       In any event, Pom has failed to present *any* survey evidence regarding

9   consumer perceptions of the Minute Maid's website or advertisements for the Juice.

10  Indeed, in the face of this Court's prior rulings that Pom cannot dispute the Juice's

11  name and label (discussed below at Point II.B), Pom's only consumer survey

12  evidence is a flawed survey of the Juice's "name and label" conducted by Dr. E.

13  Deborah Jay of Field Research Corporation.  A survey of the Juice's label,

14  however, is not probative of how consumers perceive Minute Maid's website or

15  other advertisements for the Juice.  As courts have recognized, consumer

16  impressions of particular words (such as the words "pomegranate" and "blueberry")

17  will vary depending on the context in which those words appear.  A survey of one

18  stimulus, such as the Juice's label, cannot be used as evidence of consumer

19  confusion as to any other stimulus, such as the Juice's website or its print ads.  *See*

20  *AstraZeneca LP v. TAP Pharm., Inc.*, 444 F. Supp. 2d 278, 296 (D. Del. 2006); *Am.*

21  *Home Prods. Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739, 762 (D.N.J. 1994)

22  ("The Court rejects AHP's contention that the FSI and television survey, even if

23  probative, can be employed to assess whether other ALEVE print advertising . . .

24  was false or misleading to the public.")

25      Moreover, Minute Maid's rebuttal expert, Dr. Ran Kivetz, will testify that the

---

[1] In a *preliminary injunction* context – not applicable here – courts have sometimes applied a slightly lower threshold. *See, e.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 594 (3d Cir. 2002) (finding 15% consumer confusion sufficient to allow preliminary injunction to stand).

1    Jay Survey suffers from a number of methodological flaws that render its findings

2    regarding the likelihood of confusion completely unreliable.  The Jay Survey began

3    with two fairly standard, unbiased open-ended questions that asked respondents to

4    discuss in their own words the messages conveyed by the Juice's label.  The

5    responses to these questions provide no evidence of confusion regarding the Juice's

6    pomegranate or blueberry juice contents.  To the contrary, the Jay Survey found

7    that "pomegranate" was not a salient message conveyed by the Juice's label.  And

8    the health-related messages conveyed by the Juice's label were virtually identical to

9    the messages conveyed by the Jay Survey's "control" package that redacted the

10   words "pomegranate" and "blueberry" from the Juice's label.  Thus, the only

11   reliable questions in the Jay Survey actually show that the words "pomegranate"

12   and "blueberry" on the Juice's label are not likely to confuse consumers.

13        After the initial open-ended questions, the Jay Survey proceeded to ask a

14   series of suggestive and biased questions regarding respondents' perceptions of the

15   Juice's "main" types of fruit juice.  At trial, Dr. Kivetz will explain that no valid

16   conclusions can be drawn from these inappropriate questions.  Dr. Kivetz will also

17   explain that the flaws in the Jay Survey's questions were compounded by the fact

18   that the Jay Survey lacked a valid and consumer-relevant "control."  The survey

19   therefore failed to adequately account for "confusion" attributable to extraneous

20   factors such respondents' tendency to guess, their pre-existing beliefs, or the

21   inherent suggestiveness of the Jay Survey's questions.

22        In sum, Pom's flawed survey of the Juice's name and label cannot be used to

23   effectively overturn FDA's painstaking evaluation of how flavored multi-juice

24   blends should be named and labeled.  And it provides no evidence whatsoever that

25   Minute Maid's website or other advertisements are likely to mislead a substantial

26   percentage of consumers.

27        ### 3.    Pom Cannot Circumvent the Survey Requirement

28        Pom attempts to circumvent the consumer survey requirement by arguing

1  that Minute Maid's false advertising is "willful."  Where a defendant has

2  "intentionally misled" consumers by "deliberate conduct of egregious nature,"

3  courts may presume that consumers were in fact deceived and shift the burden to

4  the defendant to demonstrate otherwise.  *See The William H. Morris Co. v. Group*

5  *W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995); *Johnson & Johnson-Merck Consumer*

6  *Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 131 (3d Cir. 1994).

7  But that exception is not available here.  Pom's evidence does not in any way

8  demonstrate intentional deception.  Rather, it establishes Minute Maid's good faith

9  belief that it is *in compliance with* the applicable FDA regulations.  This can hardly

10  be proof of an egregious intent to deceive.

11                    **4.    Interstate Commerce**

12      The parties have stipulated that this element has been met.

13                    **5.    Pom Has Not Demonstrated the Materiality of Minute**

14                            **Maid's Purportedly False Advertising**

15       Pom must also prove that any "deception is material, in that it is likely to

16  influence the purchasing decision."  *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170,

17  1180 (9th Cir. 2003) (quoting *Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collection*

18  *Serv.*, 911 F.2d 242, 244 (9th Cir. 1990) (per curiam)).  Even where a defendant is

19  accused of misrepresenting an "inherent quality or characteristic of the product,"

20  *National Basketball Assoc. v. Motorola, Inc.*, 105 F.3d 841, 856 (2d Cir. 1997), a

21  plaintiff must adduce evidence that reasonable consumers would have a tendency to

22  actually rely on the misleading statement in making their purchasing decisions.  *See*

23  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 502 (5th Cir. 2000).  Pom,

24  however, has failed to present any evidence that purported confusion about the

25  proportions of the ingredients in the Juice influenced consumers' purchasing

26  decisions.  As Pom's survey expert Dr. Jay acknowledges, her survey did not

27  evaluate the reasons consumers purchase the Juice; whether consumers purchase

28  the Juice instead of Pom's products; or whether consumers purchase the Juice on

1    the basis of a mistaken belief.  Nor did the Jay Survey ask purportedly "confused"

2    respondents (*i.e.*, those respondents who indicated that pomegranate was a "main"

3    fruit juice in the product) how, if at all, that belief might affect their purchasing

4    decision.

5              **6.    Pom Has Not Been Injured as a Result of Any Allegedly**

6                        **Misleading Advertising**

7        Pom has adduced no evidence that it has been injured as a result of Minute

8    Maid's purportedly misleading advertising.  Dr. Jay's survey did not evaluate

9    whether consumers planned to purchase the Juice, let alone whether they would

10   purchase the Juice in lieu of Pom's product.  Moreover, independent Nielsen sales

11   data show that, in its first two years after launch, only *0.1%* of the Juice's

12   purchasers had switched from purchasing Pom.  Pom offers no evidence as to what

13   percentage, if any, of that miniscule number derived from consumer confusion.

14            **7.    Pom Has Suffered No Damages**

15            **a.    Pom's Disgorgement Claim Fails Because It Is Based**

16                      **on Minute Maid's Revenues for the Juice, Not Its**

17                      **Profits**

18       In connection with its disgorgement claim, Pom relies on Minute Maid's

19   revenues from the Juice.  At trial, however, Minute Maid will prove its costs, which

20   will substantially offset the revenues that are included in the report of Pom's

21   damages expert.

22            **b.    Pom's Lost Profits Claim Has No Merit**

23       Pom's claim for lost profits is equally preposterous.  To arrive at its inflated

24   lost profit estimate, Pom's damages expert constructed a theoretical model of what

25   Pom's sales purportedly would have been "but for" the existence of Minute Maid's

26   improperly-labeled Juice.  Not only is Pom's model riddled with false assumptions,

27   it fails to consider several obvious explanations for the recent decline in the growth

28   rate of Pom's sales.

First, Pom's damages expert ignores the worst U.S. recession in 30 years. Pom concedes in its own documents that Pom's products are "luxury goods." Pom's damages case, however, ignores that in difficult economic times premium-priced products such as Pom's are among the first to be cut from consumers' grocery lists. In complete contradiction, Pom's "but for" sales trendline marches upward without a hiccup.

Second, Pom's damages case simply *assumes* that Pom's investment in its own medical research and advertising campaigns will enable it to sell its entire inventory of pomegranate concentrate, year after year, into 2015. This assumption is not grounded in reality. The marketplace that Pom entered years ago is markedly different today. The recession has depressed demand. New "superfruits" have emerged and captured the attention and limited budgets of consumers. The "pomegranate" fad is waning, replaced by other exotic fruits such as Açaí. And the National Advertising Division's and Advertising Standards Authority's decisions against Pom's advertising have shaken consumers' loyalty to and belief in Pom's medical claims. Pom simply ignores all of these powerful factors in its damages case.

Additionally, Pom contends, without any basis, that it will be able to recapture demand it *intentionally depressed* only a few years ago. Due to widespread pomegranate crop failure, Pom placed its retailers and distributors on "allocation" from Summer 2006 to Summer 2007, during which Pom shipped significantly fewer units of product than its customers ordered. As a result, retailers were unable to fill shelf space with Pom products. To fill the void, these retailers moved on to other products. During this period Pom also eliminated nearly all of its advertising in order to keep demand for its products low. Despite deliberately distancing itself from its retailers and end-consumers, Pom now asserts that it can merely flip a switch and resume the demand it formerly enjoyed. But the market

1   for Pom's products has moved on, and certainly will not remain on a trajectory of

2   unchecked growth into 2015.

3       Third, Pom's damages expert *assumes* that Minute Maid's Juice competes for

4   the same consumers as Pom's pomegranate juice. That assumption is demonstrably

5   false. The products taste completely different. They target and appeal to different

6   consumers. They are usually sold in different parts of the grocery store. And they

7   have very different prices. In fact, empirical data collected by the Nielsen

8   company, which maintains the nation's leading database on consumer purchasing

9   behavior, shows that the Juice and Pom's products do not compete. The Nielsen

10  data are collected on a rolling basis from over 100,000 representative households in

11  the U.S. and capture the actual contents of consumers' shopping bags. The data

12  show that less than 1% of Minute Maid's sales of the Juice have come from Pom

13  customers. Thus, even assuming *arguendo* that *all* of Minute Maid's sales were

14  tainted by alleged deception, Pom's lost profits would be trivial.

15      Fourth, Pom's entire lost profits case rests on the incorrect assumption that

16  Pom's confusion survey demonstrates rates of confusion of either 42% and 82%.

17  These confusion rates are not supportable for reasons that will be proven at trial.

18  Even assuming, *arguendo*, that these rates were valid, Pom's lost profits case

19  assumes that *every confused consumer necessarily* would have purchased Pom's

20  product. This is pure fantasy and cannot supply the basis for Pom's bloated

21  damages claim.

22      Finally, Pom's damages model seeks to allocate all of Pom's damages for its

23  depressed sales to Minute Maid, despite the fact that Pom has *also* makes the same

24  claims against *other* juice makers – including Tropicana, Ocean Spray, and Welch's

25  – in other lawsuits. If Pom genuinely believes its sales have been harmed by all of

26  these companies, then it has no basis for seeking to recoup all of its damages from

27  just one company: Minute Maid. Pom's damages model thus seeks to tag Minute

28  Maid for damages that even Pom admits Minute Maid did not cause.

1
2

### 8.    Pom's Own Conduct Shows that Minute Maid's Label for the Juice Is Permissible

3    Pom's conduct in labeling its own juice beverages demonstrates that Minute

4 Maid's label for the Juice is not deceptive.  Indeed, *Pom itself* has engaged in

5 labeling practices similar to Minute Maid's label for the Juice – practices that Pom

6 now claims are deceptive.  Pom has marketed products that do not name each

7 ingredient on the label or do not list each ingredient in the order of predominance

8 by volume.  Indeed, Pom's own Pomegranate Blueberry product originally

9 contained plum, pineapple, apple, and blackberry juices from concentrate, but was

10 always labeled "Pomegranate Blueberry 100% Juice."

11    **[REDACTED AND FILED UNDER SEAL]**

12

### 13    9.    Pom's Hands are "Unclean"

14    "The unclean hands doctrine closes the doors of a court of equity to one

15 tainted with inequitableness or bad faith relative to the matter in which he seeks

16 relief."  *Jarrow,* 304 F.3d at 841 (internal quotations omitted).  The doctrine is a

17 defense to Lanham Act suits.  *See, e.g., Fuddruckers, Inc. v. Doc's B.R. Others,*

18 *Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).

19    Pom's business is built on a foundation of deception about the nature of its

20 products and their health benefits.  While Pom alleges that it "largely created the

21 burgeoning market for genuine pomegranate juice" by educating the public about

22 the purported health benefits of pomegranate juice, those health benefits are not

23 supported by substantial scientific evidence.  Thus, even if Juice purchasers bought

24 the product because they thought it was pure pomegranate juice that would provide

25 attendant health benefits, Pom's unclean hands is a complete bar to recovery.  *See*

26 *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)

27 ("The [unclean hands] doctrine bars relief . . . to a plaintiff who has dirtied his

28

1    hands in acquiring the right presently asserted."); *Jarrow*, 304 F.3d at 841-42;

2    *Fuddruckers*, 826 F.2d at 847.

3          For years, Pom has touted its pomegranate juice as an "Antioxidant

4    Superpower" capable of not only preventing, but actually curing diseases of all

5    types.  Multiple ad campaigns for Pom have cited pomegranate juice as a means of

6    extending a person's lifespan, preventing heart disease, treating prostate cancer and

7    forestalling Alzheimer's disease.  None of these claims are based on credible

8    science.

9          Indeed, advertising authorities have investigated Pom's health claims three

10   times, and three times found that Pom's claims are unsubstantiated or false:

11        •    In 2005, the National Advertising Division of the Council of Better

12             Business Bureaus ("NAD"), a widely respected self-regulatory

13             authority in the U.S., investigated Pom's claim that a glass of

14             pomegranate juice a day can reduce clogged arteries by 30%.  NAD

15             found that the claim was unsupported and recommended that Pom stop

16             making the claim.  POM Wonderful (Pomegranate Juice), NAD Case

17             Report #4303 (03/30/05).

18        •    In 2006, the NAD again investigated Pom and concluded that Pom's

19             claims that its juice fights free radicals that can cause heart disease,

20             premature aging, Alzheimer's disease and cancer were false and

21             misleading.  POM Wonderful (Pomegranate Juice), NAD Case Report

22             #4468 (04/05/06).

23        •    In 2009, the Advertising Standards Authority ("ASA"), the British

24             self-regulatory advertising authority, concluded that claims by Pom

25             that pomegranate juice drinkers can "cheat death" conveyed the wholly

26             unsubstantiated message that Pom's juice prolongs life.

27        In spite of these adverse rulings, Pom continues to promote its pomegranate

28   juice as having unique medicinal and disease-preventing properties.  Pom's

1   President recently described Pom's pomegranate juice this way: "It's more than

2   just a refreshment. It's literally medicine." Gene Maddaus, Bill May Squeeze

3   Pom's Rivals, DailyBreeze (June 2009). Furthermore, Pom has used its packaging,

4   advertisements, website and promotions to give consumers the false impression that

5   its juices are fresh-squeezed, and not "from concentrate."

6       At trial, Minute Maid will prove that Pom has grossly exaggerated and

7   misrepresented the health benefits of pomegranate juice. Pom has never had

8   credible support for any of its fraudulent health claims.

9       Because Pom has built its business on deception, the unclean hands doctrine

10   bars its recovery in this case.

## II.    CONTENTS OF LAW

### A.    Issues to Be Resolved by the Court and the Jury

13      The parties have a right to a jury trial on the legal claims asserted in their

14   respective cases. U.S. CONST. amend. VII; Fed. R. Civ. P. 38(a). Both parties

15   made timely demands for a jury trial.

16      Despite the parties' jury demands, the Court – not the jury – should decide

17   the following issues.

### 1.    The Court Should Decide Dispositive Threshold Legal Questions

20      There are significant threshold legal questions that render Pom's claims non-

21   actionable as a matter of law. There are no genuine issues of material fact as to

22   these issues, and Minute Maid has moved for summary judgment on these grounds.

23   It is for the Court – not the jury – to decide the following questions:

#### a.    Whether Pom's Lanham Act Claim Is Actionable

25   This key legal issue is discussed at Point II.B.1 below.

#### b.    Whether Pom's State Law Claims Are Actionable

27   This key legal issue is discussed at Point II.B.2 below.

28

1
2

### 2.    The Court Should Decide the Merits of Pom's State Law Claims

3  The Court rather than a jury should decide Pom's claims under Cal. Bus. &

4  Prof. Code sections 17200 and 17500.  These statutes provide only for equitable

5  remedies, and there is no right to jury trial in either a section 17200 or 17500 suit.

6  *See, e.g., Hodge v. Superior Court*, 145 Cal.App. 4 278, 281, 51 Cal. Rptr. 3d 519,

7  521 (Cal. App. 2 Dist.  2006).  *See also Okura & Co. (America), Inc. v. Careau*

8  *Group*, 783 F.Supp. 482, 490 n.1 (C.D. Cal. 1991).

9
10

### 3.    The Court Should Decide Whether Pom Is Entitled to the Equitable Remedies It Seeks

11  Similarly, it is appropriate for the Court rather than a jury to rule on the

12  equitable remedies requested in this case.  Specifically, the Court should decide

13  whether Pom is entitled to receive the following types of relief that it seeks:

14  

### a.    Injunction

15  There is no right to trial by jury of an equitable claim for injunctive relief.

16  *See, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687,

17  719 (1999) ("It is settled law that the Seventh Amendment does not apply in" suits

18  seeking injunctive relief).

19  

### b.    Attorneys' Fees and Enhanced Damages

20  The Lanham Act specifies that the decisions whether to increase a damages

21  award and whether to award attorneys' fees are for the court rather than a jury.  *See*

22  15 U.S.C. § 1117 ("If *the court* shall find that the amount of the recovery based on

23  profits is either inadequate or excessive *the court* may in its discretion enter

24  judgment for such sum as *the court* shall find to be just, according to the

25  circumstances of the case . . . *The court* in exceptional cases may award reasonable

26  attorney fees to the prevailing party.") (emphasis added).

27  

### c.    Disgorgement/Accounting of Profits

28  An accounting of profits under the Lanham Act is an equitable remedy.  *See,*

1    *e.g., Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th

2    Cir. 1992) ("An accounting of profits under [the Lanham Act] §1117(a) is not

3    synonymous with an award of monetary damages: '[a]n accounting for profits ... is

4    an equitable remedy subject to the principles of equity.'") (quoting *Fuller Brush*

5    *Products Co. v. Fuller Brush Company*, 299 F.2d 772, 777 (7th Cir.), *cert. denied*,

6    370 U.S. 923 (1962).

7        For this reason, it is more appropriate for the Court than a jury to determine

8    whether an accounting of profits award is appropriate.  *See, e.g. Playboy*

9    *Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir.

10   1982) (holding in a Lanham Act case that "any decision concerning the awarding of

11   an accounting of profits remedy should remain within the discretion of the trial

12   court"); *Oyster Software, Inc. v. Forms Processing, Inc.*, No. C-00-0724, 2001 WL

13   1736382, at *3 n.5 (N.D. Cal. Dec. 6, 2001) (noting in the context of a summary

14   judgment motion on the issue of accounting of defendant's profits under the

15   Lanham Act that "it is the Court, and not the jury, that will make the ultimate

16   determination as to whether or not an accounting is appropriate and the scope of

17   any accounting that may be ordered"); *Castrol, Inc. v. Pennzoil Quaker State Co.*,

18   169 F. Supp. 2d 332, 344 (D.N.J. 2001) (holding that the argument that a defendant

19   from whom disgorgement is sought under the Lanham Act is entitled to a jury trial

20   on the issue is "legally erroneous" because "[a] plain reading of the Lanham Act

21   remedy section unqualifiedly weighs against [defendants'] interpretation that they

22   are entitled to a jury trial on the disgorgement of profits issue . . . the language of

23   this section makes no mention of a trial by jury").

24      **B.**    **Key Legal Issues Germane to the Case**

25         **1.**    **Pom's Lanham Act Claim Is Not Actionable**

26       Pom's central allegation – that the name and label of Minute Maid's Juice

27   mislead consumers to believe that the product is primarily pomegranate juice – is an

28   impermissible challenge of FDA juice labeling regulations.  FDA has already

determined that the very elements of the Juice's label challenged by Pom are not misleading. In particular, in designing a labeling system to eliminate consumer confusion, FDA has determined that:

- Fruit juices that constitute less than 1% of a multi-juice blend may be referenced in a product's name so long as the juice is identified as a "flavor." 21 C.F.R. § 102.33(d)(1).

- All of the fruit juices in a flavored multi-juice blend need not be identified on a label (except in the ingredients panel) as long as the juice is called a "blend." 21 C.F.R. § 102.33(c).

- Labels for flavored multi-juice blends may depict any (or all) of the fruits in the blend irrespective of the amount of each type of juice the product contains. 58 Fed. Reg. at 2921.

FDA's "flavored multi-juice blend" regulations were meant to put to rest decades of public debate about the appropriate naming standards for juice products, and were issued through formal notice and comment rulemaking after the agency considered comments from industry, consumers, policymakers and advocacy groups. Upon issuance of the regulations, FDA announced that the agency considered them fully "adequate to prevent misleading labels" on flavored multi-juice beverages. 58 Fed. Reg. at 2920.

At the same time, FDA approved a hypothetical label that is virtually identical to that of the Juice. Simply substituting the word "pomegranate" for "raspberry" in the discussion below shows that FDA has effectively pre-cleared the Juice's name and fruit vignette:

For example, for a 100 percent juice product consisting of apple, grape, and [pomegranate] juices, in which the [pomegranate] juice provides the characterizing flavor, a vignette depicting [pomegranates] . . . . would not be misleading if the beverage were named '[pomegranate] flavored fruit juice blend.

1   58 Fed. Reg. at 2921 (emphasis added).  The Juice's name ("Pomegranate

2   Blueberry **Flavored Blend** of 5 Juices") and label (depicting an apple, grapes,

3   raspberries, a pomegranate and blueberries) thus unequivocally comply with FDA's

4   regulations.

5       Once FDA has spoken about a labeling issue and the defendant's label

6   complies with FDA directives, the issue is within FDA's sole purview and cannot

7   be revisited under the Lanham Act.  *See, e.g.*, *Cytyc Corp. v. Neuromedical Sys.,*

8   *Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) (label "representations . . . that

9   comport substantively with statements approved as accurate by the FDA cannot

10  supply the basis for [Lanham Act] claims" and "are non-actionable").  Indeed, at

11  the outset of this case the Court recognized the need to tread "carefully when

12  applying the Lanham Act to the advertising of goods . . . that are also subject to

13  regulation by the [F]FDCA."  *See* February 10, 2009 Order Granting in Part,

14  Denying in Part Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P.

15  12(b)(6) ("First Order") [Dkt. # 25] at 4.  The Court thus ruled as a matter of law

16  that Pom cannot seek through this action to impose additional naming and labeling

17  standards that are contrary to, or different from, those set by FDA.  Specifically, at

18  the outset of the case, the Court granted (in part) Minute Maid's motion to dismiss

19  Pom's federal Lanham Act claims insofar as they "impermissibly challeng[e] the

20  FDA's regulations regarding an acceptable 'common or usual name' and

21  appropriate labeling for a multiple-juice beverage."  First Order at 6.

22      There is an even greater need to tread carefully if a Lanham Act claim could

23  require a court or a lay jury "to determine preemptively how a federal

24  administrative agency will interpret and enforce its own regulations."  *Sandoz*

25  *Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-31 (3d Cir. 1990)

26  (finding that Lanham Act claim that overlapped with potentially ambiguous FDA

27  regulations was not actionable "absent direct guidance from the promulgating

28  agency").  To avoid "usurp[ing] the FDA's authority," courts do not permit Lanham

1  Act cases to proceed in areas where FDA regulations are unclear or where FDA has

2  yet to act.  *Ethex Corp. v. First Horizon Pharm. Corp.*, 228 F. Supp. 2d 1048, 1055

3  (E.D. Mo. 2002) (refusing to permit Lanham Act claim where FDA had not yet

4  ruled on whether defendant was required to test its product for bioequivalence); *see*

5  *also Summit Tech. Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 306

6  (C.D. Cal. 1996) ("*Summit I*") (refusing to allow Lanham Act claim to proceed

7  when "the claim would force the Court to rule directly 'on the legality of

8  Defendants' conduct before the FDA has had a chance to do so'"); *Summit Tech.*

9  *Inc. v. High-Line Med. Instruments Co.,* 933 F. Supp. 918, 933 (C.D. Cal. 1996)

10  ("*Summit II*") (same).

11          FDA has determined that the name and label for the Juice are not misleading

12  and this determination should be binding on the Court and the jury.  To the extent

13  that there is any doubt as to the Juice's compliance with FDA's regulations, that is

14  an issue which FDA and FDA alone can decide.

15                    **2.      Pom's State Law Claims Are Not Actionable**

16                    **a.      Pom's State Law Claims Are Preempted**

17          As this Court has already determined, Pom's state law claims directed at the

18  Juice's name and label are preempted.  In its First Order, the Court noted that

19  "Pom, through its state law claims, may attempt to impose requirements differing

20  from [the federal] naming and labeling requirements for multiple-juice beverages in

21  the FFDCA and the FDA's implementing regulations."  First Order at 10.  The

22  Court thus held that Pom's claims were "preempted to the extent they seek to

23  impose any obligations that are 'not identical to' the sections of the FFDCA,

24  including the FDA's implementing regulations, as referenced in . . . 21 U.S.C. §

25  343-1, the only relevant sections of which appear to be Section 343(f) and 343(i)."

26  *Id.* at 11.[2]

27  _____

28  [2] Pom's attempt to get around this Court's rulings by asserting claims under
California's Sherman Act, Cal. Health & Safety Code § 109875, is unavailing.

1
2

**b.     Pom's State Law Claims Are Barred by California's Safe Harbor Doctrine**

3    Pom's state law claims are barred by Minute Maid's safe harbor defense.

4    This Court has also already held that Minute Maid's safe harbor defense would

5    apply to the portion of the "claims that the Court has already found to be expressly

6    preempted by the FFDCA."  First Order at 14.  Because it found the claims

7    preempted, the Court deemed it unnecessary to rule directly on the safe harbor

8    issue, but noted that, "[t]o the extent the safe harbor doctrine applied in this case,"

9    the doctrine would bar "Pom's claim for statutory unfair competition under

10   California Business and Professions Code § 17200 with respect to 'business

11   practices specifically permitted' or conduct 'clearly permit[ted]' by the FFDCA."

12   First Order at 14 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

13   20 Cal. 4th 163, 182, 83 Cal. Rptr. 2d 548, 562 (1999); *McKell v. Wash. Mut., Inc.*,

14   142 Cal. App. 4th 1457, 1474, 49 Cal. Rptr. 3d 227, 241 (Cal. Ct. App. 2d 2006).

15   Even had the Court not already so ruled, there is no doubt that Minute Maid's

16   label for the Juice is within the UCL's safe harbor provision.  As detailed above,

17   FDA's multiple-juice beverage regulations clearly permit a manufacturer to include

18   a non-primary ingredient in a product name so long as it also "indicate[s] that the

19   named juice is present as a flavor or flavoring."  21 C.F.R. § 102.33(d)(1).  The

20   regulations further provide that the label of a multiple-juice beverage need not

21   identify all component juices (other than in the ingredient statement) so long as its

22   name includes a word such as "blend."  21 C.F.R. § 102.33(c).  And the regulations

23   permit a label to depict each of the fruit ingredients in a multiple-juice blend,

24   without any requirement that the fruits be shown in a size that proportionally

25   matches their relative presence in the juice.  58 Fed. Reg. 2897, at 2921-22, ¶ 53.

26

27   Pom cannot usurp FDA's exercise of its authority to issue precise rules and
     regulations that govern fruit-juice blends by relying upon a very general state law
28   provision concerning the labeling of any food.

### c.    Pom Lacks Standing To Pursue Its State Law Claims

Pom's state law claims are fatally defective because Pom lacks standing to pursue them.  To have standing to pursue a cause of action under California's Unfair Competition Law (UCL) and False Advertising Law (FAL), a plaintiff must be entitled to restitution from the defendant.  Pom's share of the pomegranate juice market is not a vested interest that would qualify for restitution under the UCL.  *Id.* at 18-19.  Addressing this exact issue in other cases brought by Pom against Tropicana and Welch Foods, Judges Fischer and Matz recently dismissed Pom's UCL and FAL claims for lack of standing.  *Pom Wonderful, LLC v. Tropicana Prods., Inc.*, No. CV 09-566 DSF (CTx), (C.D. Cal. Oct. 21, 2009), [Dkt. # 55] at 2-3; *Pom Wonderful, LLC v. Welch Foods, Inc.*, No. CV 09-567 (AHM) (AGRx), (C.D. Cal. Dec. 21, 2009), [Dkt. # 72] at 6 n.2.

### 3.    Pom Is Not Entitled to Equitable Relief

In addition to damages, Pom seeks equitable relief in the form of (a) in injunction; (b) attorneys' fees and enhanced damages; and (c) an accounting of and disgorgement of Minute Maid's profits.  Pom is not entitled to any such relief.

### a.    Injunction

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  *Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ---, 129 S. Ct. 365, 374 (2008)).  The standard for determining whether a permanent injunction should be granted is "'essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits.'"  *Monex Deposit Co. v. Gilliam*, 2010 WL 325570, at *11 (C.D. Cal Jan. 25, 2010) (quoting *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S.

531, 546 n.12 (1987)).  Even if liability is established, an injunction does not automatically issue.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006).

As detailed above, the Court has already dismissed Pom's claims as to the Juice's name and label, and Pom has failed to prove the elements of its false advertising claims with respect to Minute Maid's website and ads for the Juice.  As such, Pom has failed to prove that it has suffered *any* harm from Minute Maid's advertisements – let alone the irreparable harm required for an injunction to issue. There is no public interest in enjoining Minute Maid's perfectly-permissible advertising.  As such, the balance of hardships manifestly favors Minute Maid.

### b.    Attorneys Fees and Enhanced Damages

The Lanham Act provides that the court "*in exceptional cases* may award reasonable attorney fees to the prevailing party."  15 U.S.C.A. § 1117(a) (emphasis added).  In assessing damages, the court may also "enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  *Id*.  Double or treble damages are, like attorney's fees, an "extraordinary remedy."  *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986).  An act is "exceptional" for purposes of Lanham Act remedies when the conduct at issue is "malicious, fraudulent, deliberate or willful."  *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000).  *See also Int'l Olympic Committee v. San Francisco Arts & Athletics*, 781 F.2d 733, 738 (9th Cir. 1986) (same); *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 364 (9th Cir. 1996) ("[e]xceptional cases include bad faith or other opprobrious conduct.")  As discussed above, none of Pom's evidence demonstrates willful deception.  Rather, it establishes Minute Maid's good faith belief that it was *in compliance with* the applicable FDA regulations.  This can hardly be proof of malicious behavior.

### c.    Accounting / Disgorgement of Profits

1    While injunctive relief is "the remedy of choice" under the Lanham Act, the

2    statute also permits awards of money damages in certain circumstances.  *Century*

3    *21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see also* 15

4    U.S.C. § 1117(a).  Specifically, Section 35(a) provides that a plaintiff shall be

5    entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2)

6    any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. §

7    1117(a).  The statute makes clear, however, that any damages "shall constitute

8    compensation and not a penalty" and that the court "may in its discretion enter

9    judgment for such sum as the court shall find to be just, according to the

10   circumstances of the case."  *Id.*  In all events, "a [p]laintiff is not . . . entitled to a

11   windfall."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993)

12   (internal quotation omitted).

13   Within the universe of possible monetary awards, disgorgement of a

14   competitor's profits – also known as an "accounting for profits" – is the most

15   extreme and is rarely awarded.  *See U-Haul Int'l., Inc. v. Jartran, Inc.*, 793 F.2d

16   1034, 1039 (9th Cir. 1986) (describing disgorgement as an "extraordinary"

17   remedy); *see also Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 770 (2d Cir.

18   1984).

19   The Ninth Circuit has expressed skepticism about awarding disgorgement in

20   false advertising cases where the challenged claims are "about [defendant's] own

21   product, when advertising does not directly compare defendant's and plaintiff's

22   products, when numerous competitors participate in a market, or when the products

23   are aimed at different market segments."  *Harper House, Inc. v. Thomas Nelson,*

24   *Inc.,* 889 F.2d 197, 209 n.8 (9th Cir. 1989).  In such scenarios, "injury to a

25   particular competitor may be a small fraction of the defendant's sales, profits, or

26   advertising expenses . . . and large, presumptive damage awards are improper in a

27   situation where injury is likely to be slight."  *Id.*

28

1    Pom will adduce no facts at trial entitling it to disgorgement of Minute

2  Maid's profits.  Minute Maid engaged in no conduct that would merit this

3  "extraordinary" remedy.  Moreover, the evidence at trial will show that Minute

4  Maid has earned no profits on the Juice.

5  **III.    EVIDENTIARY ISSUES**

6    Minute Maid has filed the following motions *in limine* addressing anticipated

7  evidentiary issues at trial:

8        1.    to exclude expert testimony of Joseph Anastasi (Minute Maid's

9              Motion *in Limine* ("MIL") No. 1);

10       2.    to exclude testimony of undisclosed expert witnesses (Minute Maid's

11             MIL No. 2);

12       3.    to exclude an irrelevant hearsay statement by a third party (Minute

13             Maid's MIL No. 3);

14       4.    to exclude evidence and testimony regarding consumer comments and

15             complaints (Minute Maid's MIL No. 4);

16       5.    to exclude evidence and testimony about class actions involving

17             Minute Maid (Minute Maid's MIL No. 5);

18       6.    to exclude the Juice's secret formula and the precise percentages of

19             pomegranate and blueberry in the Juice (Minute Maid's MIL No. 6);

20             and

21       7.    to exclude evidence and argument attacking aspects of the Juice's

22             label and advertising not in dispute (Minute Maid's MIL No. 7).

23  **IV.    ABANDONMENT OF ISSUES**

24    Minute Maid does not intend to pursue the following affirmative defenses at

25  trial:  statute of limitations, laches, waiver, First Amendment, and puffing.  Minute

26  Maid reserves the right to re-assert these defenses if appropriate.

27    Many of the defenses that Minute Maid listed as "affirmative defenses" in its

28  Answer in fact go to the issue of whether Pom has met its burden of proof on its

1   affirmative claims.  (*E.g.*, failure to state a cause of action; conduct not unlawful;

2   conduct not likely to deceive customers; lack of awareness; lack of reliance; lack of

3   materiality; lack of causation; lack of damage; good faith; lack of intent;

4   justification and excuse; uncertain damages; unjust enrichment; no right to

5   restitution; unconstitutionality of monetary relief; failure to mitigate; setoff;

6   damages caused by others; no right to punitive damages; no right to attorneys' fees;

7   no right to injunctive relief; adequate remedy at law).  Minute Maid does not

8   presently consider these defenses to be separate "affirmative defenses," but it

9   intends to pursue these defenses at trial.  Minute Maid's arguments in support of

10  these defenses are incorporated in the discussion above.

11  **V.      ATTORNEYS' FEES**

12        Depending upon the proof at trial, Minute Maid reserves the right to seek an

13  award of its costs, disbursements, and attorneys' fees in this action.

14  **VI.     BIFURCATION**

15        Minute Maid does not request that any issues be bifurcated for purposes of

16  trial.

17

18  Dated:  February 8, 2010          PATTERSON BELKNAP WEBB & TYLER LLP

19

20                                    By:    */s/ Steven A. Zalesin*

21                                           Steven A. Zalesin
                                             1133 Avenue of the Americas
22                                           New York, New York 10036

23
                                      Attorneys for Defendant
24                                    THE COCA-COLA COMPANY

25

26

27

28