FORREST A. HAINLINE, III (SBN 64166)
fhainline@goodwinprocter.com
GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, CA  94111
Telephone:   (415) 733-6065
Facsimile:    (415) 677-9041

KRISTINA M. DIAZ (SBN 151566)
kristina.diaz@roll.com
MATTHEW D. MORAN (SBN 197075)
matthew.moran@roll.com
BROOKE S. HAMMOND (SBN 264305)
brooke.hammond@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:   (310) 966-8400
Facsimile:    (310) 966-8810

Attorneys for Plaintiff
POM WONDERFUL LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| POM WONDERFUL LLC, a Delaware limited liability company,<br><br>         Plaintiff,<br><br>vs.<br><br>THE COCA-COLA COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>         Defendants. | Case No. CV08-06237 SJO (MRWx)<br><br>**PLAINTIFF POM WONDERFUL LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>[L.R. 16-4]<br><br>Judge:    Honorable S. James Otero<br>Trial:     March 15, 2016 |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  ELEMENTS OF POM'S LANHAM ACT CLAIM. ........................................ 1

III.  POM'S BACKGROUND FACTUAL CONTENTIONS .................................. 2

A.  POM's Background .......................................................................... 2

B.  Coca-Cola Willfully Deceived Consumers Regarding The Juice's Content With The Naming And Labeling Of Its Product. ...................... 2

IV.  POM'S LEGAL CONTENTIONS .............................................................. 3

A.  Coca-Cola's False Advertising Is Presumed To Have Deceived Consumers, And The Evidence Confirms That It Does Deceive Consumers. ........................................................................................ 3

B.  Coca-Cola's False Advertising Is Material. ........................................ 5

C.  Coca-Cola Has Introduced Its False Advertising Into Interstate Commerce. ......................................................................................... 6

D.  POM Is Injured By Coca-Cola's False Advertising. ............................. 6

V.  REMEDIES ............................................................................................ 7

A.  POM Is Entitled To A Monetary Recovery From Coca-Cola. ................ 7

B.  POM Is Entitled To An Award Of Its Attorneys' Fees. ....................... 10

C.  The Court Should Enjoin Coca-Cola's False Advertising Of The Pomegranate Blueberry Juice. .......................................................... 11

VI.  ELEMENTS OF COCA-COLA'S AFFIRMATIVE DEFENSES ................. 13

A.  Elements Required To Establish Coca-Cola's Unclean Hands Defense. ........................................................................................... 13

B.  Plaintiff's Unclean Conduct Must Occur At The Time Of The Conduct It Accuses Defendant Of. .................................................... 17

C.  Coca-Cola Should Be Barred From Presenting Evidence Regarding POM's Health Claim Advertising. ................................... 17

VII.  ISSUES TRIABLE TO JURY AS A MATTER OF RIGHT ....................... 19

VIII.  ISSUES NOT TRIABLE TO JURY AS A MATTER OF RIGHT ............... 19

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3
## <u>CASES</u>

4
<u>Aladdin Mfg. Co. v. Mantle Lamp Co. of Am.</u>
116 F.2d 708 (7th Cir. 1941)......................................................................8

5

6
<u>Allee v. Medrano</u>
(1974) 416 U.S. 802, 810-11, 94 S.Ct. 2191, 2197-98, 40 L.Ed.2d 566 ........12

7
<u>Aventis Pharma S.A. v. Amphastar Pharmaceuticals, Inc.</u>
390 F. Supp. 2d 936 (C.D. Cal. 2005)........................................................20

8

9
<u>Avid Identification Systems, Inc. v. Phillips Electronics North America Corp.</u>
2008 WL 819962 (E.D. Tex. Mar. 25, 2008)................................................19

10
<u>Babbit Elecs., Inc. v. Dynascan Corp.</u>
828 F. Supp. 944 (S.D. Fla. 1993) <u>aff'd</u>, 38 F.3d 1161 (11th Cir. 1994)..........8

11

12
<u>Bracco Diagnostics, Inc. v. Amersham Health, Inc.</u>
627 F. Supp. 2d 384 (D.N.J. 2009) .........................................................6, 14

13
<u>Brighton Collectibles, Inc. v. Coldwater Creek Inc.</u>
2009 WL 160235 (S.D. Cal. Jan. 20, 2009)................................................11

14

15
<u>Cal-Agrex, Inc. v. Tassell</u>
258 F.R.D. 340 (N.D. Cal. 2009) ...............................................................17

16
<u>Campagnolo S.R.L. v. Full Speed Ahead, Inc.</u>
258 F.R.D. 663 (W.D. Wash. 2009)...........................................................13

17

18
<u>Cashmere & Camel Hair Manufacturers Institute v. Saks Fifth Avenue</u>
284 F.3d 302 (1st Cir. 2002) ......................................................................5

19
<u>Church & Dwight Co., Inc. v. SC Johnson & Son Inc.</u>
873 F. Supp. 893 (D.N.J. 1994) .................................................................13

20

21
<u>Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City</u>
383 F.3d 110 (3d Cir. 2004)........................................................................15

22
<u>Coca-Cola Co. v. Koke Co. of America</u>
254 U.S. 143, 65 L.Ed. 189, 41 S.Ct.113 (1920) .......................................17

23

24
<u>Coca-Cola Co. v. Tropicana Prods., Inc.</u>
690 F.2d 312 (2d Cir. 1982).....................................................................3, 5

25
<u>Collegenet, Inc. v. XAP Corp.</u>
483 F. Supp. 2d 1058 (D. Or. 2007)...........................................................19

26

27
<u>Dairy Queen v. Wood</u>
(1962) 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 .......................................19

28

Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.
  890 F.2d 165 (9th Cir. 1989) .................................................................. 16

Earthquake Sound Corp. v. Bumper Indus.
  352 F.3d 1210 (9th Cir. 2003) ................................................................ 10

EMED Techs. Corp. v. Repro-Med Sys., Inc.
  2015 WL 3794967 (E.D. Cal. June 17, 2015) ....................................... 15

Four, Inc. v. Dornier Med. Sys., Inc.
  765 F. Supp. 724, (N.D. Ga. 1991) .......................................................... 5

Fuddruckers, Inc. v. Doc's B.R. Others, Inc.
  826 F.2d 837 (9th Cir. 1987) .................................................................. 13

George Basch Co. v. Blue Coral, Inc.
  968 F.2d 1532 (2d Cir. 1992) ................................................................... 8

Go Medical Industries Pty., Ltd. v. Inmed Corp.
  471 F.3d 1264 (Fed. Cir. 2007) .............................................................. 19

Harper House, Inc. v. Thomas Nelson, Inc.
  889 F.2d 197 (9th Cir. 1989) ................................................................ 3, 6

Horphag Research Ltd. v. Garcia
  475 F.3d 1029 (9th Cir. 2007) ................................................................ 10

Hynix Semiconductor, Inc. v. Rambus, Inc.
  591 F. Supp. 2d 1038 (N.D. Cal. 2006) ................................................. 17

In re Novartis Corp.
  127 F.T.C. 580 (1999), aff'd, 223 F.3d 783 (D.C. Cir. 2000) ............... 16

In the Matter of POM Wonderful LLC, et al.
  Dkt. No. 9344, Opinion of Commission (Jan. 10, 2013) ...................... 16

Iron Arrow Honor Soc'y v. Heckler
  464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) ............................... 12

Japan Telecom, Inc. v. Japan Telecom. America Inc.
  287 F.3d 866 (9th Cir. 2002) ............................................................. 15, 16

Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.
  348 F. Supp. 2d 165 (S.D.N.Y. 2004) ...................................................... 5

Kennedy Industries, Inc. v. Aparo
  416 F. Supp. 2d 311 (E.D. Pa. 2005) ..................................................... 13

Levi Strauss & Co. v. Shilon
  121 F.3d 1309 (9th Cir. 1997) ................................................................ 12

Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.
  518 F.Supp.2d 1197 (C.D.Cal. 2007) .................................................... 16

PLAINTIFF POM WONDERFUL LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Mutual Pharm. Co. v. Ivax Pharms., Inc.
     459 F. Supp. 2d 925 (C.D. Cal. 2006)................................................ 2

Mylan Pharms., Inc. v. Thompson
     268 F.3d 1323 (Fed. Cir. 2000) ..................................................... 20

Old Towne Canoe Co. v. Confluence Holdings Corp.
     448 F.3d 1309 (Fed. Cir. 2006) ..................................................... 20

Pfizer, Inc. v. International Rectifier Corp.
     685 F.2d 357 (9th Cir. 1982) ......................................................... 14

Polo Fashions, Inc. v. Dick Bruhn, Inc.
     793 F.2d 1132 (9th Cir. 1986)................................................ 9, 12, 13

Pom Wonderful LLC v. Federal Trade Commission
     777 F.3d 478 (D.C. Cir. 2015) ....................................................... 18

POM Wonderful LLC v. Purely Juice, Inc.
     2008 WL 4222045 (C.D. Cal. July 17, 2008) ....................... 4, 5, 6, 8

Pom Wonderful LLC v. Welch Foods, Inc.
     737 F. Supp. 2d 1105 (C.D. Cal. 2010).......................... 13, 14, 16, 18

Republic Molding Corp. v. B. W. Photo Utilities
     319 F.2d 347 (9th Cir. 1963) ......................................................... 15

Resource Lenders, Inc. v. Source Solutions, Inc.
     404 F. Supp. 2d 1232 (E.D. Cal. 2005).......................................... 13

Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.
     2008 WL 6873811 (C.D. Cal. Jan. 3, 2008) ................................... 14

S & R Corp. v. Jiffy Lube Int'l, Inc.
     968 F.2d 371 (3d. Cir. 1992) ......................................................... 15

Sanofi–Aventis v. Advancis Pharm. Corp.
     453 F. Supp. 2d 834 (D. Del. 2006) ............................................... 15

Seven-Up Co. v. Coca-Cola Co.
     86 F.3d 1379 (5th Cir. 1996) ......................................................... 10

Sinai v. California Bureau of Auto Repair
     28 U.S.P.Q.2d 1627 (N.D. Cal. 1993) .............................................. 5

SLB Toys USA, Inc. v. Wham-O, Inc.
     330 Fed. Appx. 634 (9th Cir. 2009) ............................................... 10

Source Perrier, S.A. v. Waters of Saratoga Springs, Inc.
     1982 WL 51044 (S.D.N.Y. Dec. 9, 1982)......................................... 9

Southern Cal. Darts Ass'n v. Zaffina
     762 F.3d 921 (9th Cir. 2014).......................................................... 13

PLAINTIFF POM WONDERFUL LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Southland Sod Farms v. Stover Seed Co.
   108 F.3d 1134 (9th Cir. 1997) ............................................................passim

Sun Microsystems, Inc. v. Microsoft Corp.
   87 F. Supp. 2d 992 (N.D. Cal. 2000) .............................................. 12

Surefire, LLC v. Jetbeam USA
   2014 WL 1512983 (S.D. Cal. Apr. 16, 2014) ........................... 13, 15

Tamko Roofing Products, Inc. v. Ideal Roofing Co.
   282 F.3d 23 (1st Cir. 2002) .............................................................. 11

TrafficSchool.com, Inc. v. Edriver Inc.
   653 F.3d 820 (9th Cir. 2011) ............................................... 10, 12, 14

Truck Equip. Serv. Co. v. Fruehauf Corp.
   536 F.2d 1210 (8th Cir. 1976) ........................................................... 8

Tube Forgings of America, Inc. v. Weldbend Corp.
   788 F. Supp. 1150 (D. Or. 1992) ...................................................... 14

U-Haul Int'l, Inc. v. Jartran, Inc.
   793 F.2d 1034 (9th Cir. 1986) ................................................ 3, 4, 9, 14

United Indus. Corp. v. Clorox Co.
   140 F.3d 1175 (8th Cir. 1998) ........................................................... 4

United Tactical Sys., LLC v. Real Action Paintball, Inc.
   2014 WL 6788310 (N.D. Cal. Dec. 2, 2014) ................................... 12

University of Kansas v. Sinks
   2009 WL 3191707 (D. Kan. Sept. 28, 2009) ................................... 11

Visioneer, Inc. v. UMAX Tech., Inc.
   1998 WL 856080 (N.D. Cal. Dec. 7, 1998) ...................................... 13

Wang v. Hsu
   15 F.3d 1095 (9th Cir. 1993) ............................................................ 20

Warner-Lambert Co. v. Breathasure, Inc.
   204 F.3d 87 (3d Cir. 2000) ................................................................. 3

Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.
   409 F. Supp. 2d 1131 (D. Minn. 2005) .............................................. 8

William H. Morris Co. v. Group W, Inc.
   66 F.3d 255 (9th Cir. 1995) ............................................................... 4


**STATUTES**

15 U.S.C. § 1116(a) .................................................................................. 12

15 U.S.C. § 1117 .............................................................................. 7, 8, 10

PLAINTIFF POM WONDERFUL LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

15 U.S.C. § 1117(a) ........................................................................................7, 8, 10

15 U.S.C. § 1125................................................................................................7

15 U.S.C. § 1125(a) ...........................................................................................1

15 U.S.C. § 1125(a)(1)(A) ..................................................................................1

15 U.S.C. § 1125(a)(1)(B) ..................................................................................1

35 U.S.C. § 285...............................................................................................10

5 McCarthy on Trademarks and Unfair Competition
    § 27:35 (4th ed.) .........................................................................................6

**OTHER AUTHORITIES**

Senate Rep. No. 93-1400, 93rd Cong. 2d Sess. 2 (Dec. 17, 1974) .............................7

**TREATISES**

5 McCarthy on Trademarks and Unfair Competition
    § 27:28 (4th ed. 2007) ..................................................................................6

5 McCarthy on Trademarks and Unfair Competition
    § 30:73 (4th ed.) .........................................................................................7

5 McCarthy on Trademarks and Unfair Competition
    § 30:90 (4th ed.) .......................................................................................10

5 McCarthy on Trademarks and Unfair Competition
    § 30:99 (4th ed.) .........................................................................................7

Pursuant to Local Rule 16-4 and Paragraph 26(b)(2) of the Court's Initial Standing Order, Plaintiff POM Wonderful LLC ("POM") submits this Memorandum of Contentions of Fact and Law.

## I.  INTRODUCTION

POM seeks redress for Defendant The Coca-Cola Company's ("Coca-Cola") deliberate and misleading advertising vis-à-vis the naming and labeling of its Minute Maid® "POMEGRANATE BLUEBERRY" juice product (the "Pomegranate Blueberry Juice" or "Juice").  From September 2007 to December 2014, when Coca-Cola pulled its product from the market, Coca-Cola's false and misleading advertising deceived consumers into believing that the Juice contained primarily pomegranate and blueberry juice, and that there were significant amounts of pomegranate and blueberry juice in the product.  In fact, the Pomegranate Blueberry Juice contained virtually no pomegranate or blueberry juice, and was comprised almost entirely of cheap 'filler' juices, such as apple and grape juice.

Coca-Cola's conduct has caused confusion, deception and mistake in the pomegranate juice market as a whole, and harmed POM's business in particular.  In POM's First Amended Complaint, POM asserts a claim against Coca-Cola pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (federal unfair competition) and seeks injunctive relief to prevent Coca-Cola from reintroducing its Pomegranate Blueberry Juice or similar product in the market.

## II.  ELEMENTS OF POM'S LANHAM ACT CLAIM.

Section 43(a) of the Lanham Act prohibits the use of in connection with any good any "word, term, [or] name," or "false or misleading description of fact, or false or misleading representation of fact," which misrepresents the nature, characteristics or qualities of goods.  See 15 U.S.C. §§ 1125(a) (1)(A) and (B).  A false advertising claim under the Lanham Act requires the following elements:  (1) a false or misleading statement of fact about the defendant's product in connection with its advertising; (2) deception of or a tendency to deceive a substantial segment of the

1 advertisement's audience; (3) deception that is material, *i.e.* likely to influence a

2 purchasing decision; (4) defendant's introduction of its false statement into interstate

3 commerce; and (5) injury or likely injury to the plaintiff as a result of the false

4 statement.  See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th

5 Cir. 1997).  "The central focus of the statute is to combat false representations in

6 promoting a product in the marketplace."  Mutual Pharm. Co. v. Ivax Pharms., Inc.,

7 459 F. Supp. 2d 925, 932 (C.D. Cal. 2006).

8 **III.    POM'S BACKGROUND FACTUAL CONTENTIONS**

9 **A.    POM's Background.**

10 POM is the largest grower and distributor of pomegranates and pomegranate

11 juice in the United States.  Since 2002, POM has been producing, bottling, marketing

12 and selling POM WONDERFUL® brand bottled pomegranate juice, and various

13 pomegranate juice blends including a pomegranate blueberry blend.

14 **B.    Coca-Cola Willfully Deceived Consumers Regarding The Juice's**
15 **Content With The Naming And Labeling Of Its Product.**

16 Coca-Cola introduced its Juice in the fall of 2007.  The label of Coca-Cola's

17 Juice touted the product as "pomegranate blueberry" juice in an effort to capture

18 consumers seeking pomegranate juice.  Coca-Cola's tactics worked together to create

19 the misrepresentation that the product contained appreciable amounts of pomegranate

20 and blueberry juice.

21 However, Coca-Cola's "POMEGRANATE BLUEBERRY" juice actually

22 contained only 0.3% of pomegranate juice and 0.2% blueberry juice, with 0.1%

23 raspberry juice is added.  99.4% of the juice blend was composed of significantly less

24 expensive cheap filler juices (e.g., apple and grape juice).  This is the equivalent of

25 about a teaspoon of pomegranate juice and only a few drops of blueberry and

26 raspberry juices in the 59 ounce bottle.  Yet, Coca-Cola brazenly represented that its

27 product is a blend of 5 types of juices, rather than just 2 – apple and grape.

28

1    By naming this product "POMEGRANATE BLUEBERRY," including the

2  prominent display of a pomegranate and blueberries on the label, and having the

3  words "POMEGRANATE BLUEBERRY" displayed with far greater prominence

4  than other words on the label, by adding only miniscule amounts of pomegranate,

5  blueberry and raspberry juices, and intentionally making the color look like

6  pomegranate and blueberry juice, Coca-Cola misled and confused consumers, who

7  reasonably expected that the Juice contained meaningful amounts of pomegranate and

8  blueberry juices.

9    The result of Coca-Cola's wrongful conduct has been to cause confusion,

10  deception and mistake in the pomegranate blueberry juice market as a whole, and to

11  harm POM's business in particular, causing injury to POM's relationships with

12  existing and prospective customers.  Coca-Cola's wrongful conduct resulted in

13  increased sales of Coca-Cola's Pomegranate Blueberry Juice while hurting the sales

14  of POM's pomegranate juice products.

15  **IV.  POM'S LEGAL CONTENTIONS**

16  **A.    Coca-Cola's False Advertising Is Presumed To Have Deceived
          Consumers, And The Evidence Confirms That It Does Deceive**

17  **Consumers.**

18    Where, as in this case, advertising is demonstrated to be literally false, the

19  Court does not need to enquire into whether consumers were deceived or misled.  A

20  plaintiff is entitled to relief under the Lanham Act on proof of literal falsity alone, as

21  the Court will presume that false statements actually mislead consumers.  See U-Haul

22  Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1040 (9th Cir. 1986); Harper House, Inc. v.

23  Thomas Nelson, Inc., 889 F.2d 197, 209 (9th Cir. 1989) (even in non-comparative

24  false advertising case, no need for actual evidence of consumer deception where

25  defendant engaged in intentional deception); Warner-Lambert Co. v. Breathasure,

26  Inc., 204 F.3d 87, 96 (3d Cir. 2000) (where claim was "literally false, [plaintiff] did

27  not have to introduce consumer testimony, marketing surveys or proof of lost profits

28  to enjoin the use"); accord Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312,

1  317 (2d Cir. 1992) (holding if an advertisement is literally false, the plaintiff need to

2  prove any impact on the buying public); <u>POM Wonderful LLC v. Purely Juice, Inc.,</u>

3  2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008), <u>aff'd</u>, 362 F. App'x 577 (9th Cir.

4  2009) (holding POM was not required to show consumers were deceived or mislead

5  because Purely Juice's advertising was literally false).

6        The Court will also presume that consumers were deceived or misled where, as

7  here, there is evidence that the advertiser deliberately sought to deceive consumers.

8  <u>See</u> <u>William H. Morris Co. v. Group W, Inc.</u>, 66 F.3d 255, 258 (9th Cir. 1995) ("[i]f

9  Omicron intentionally misled consumers, we would presume consumers were in fact

10  deceived and Omicron would have the burden of demonstrating otherwise."); <u>United</u>

11  <u>Indus. Corp. v. Clorox Co.</u>, 140 F.3d 1175, 1183 (8th Cir. 1998) ("[U]nless…literally

12  false, or a trier of fact has determined that [defendant] acted willfully with intent to

13  deceive or in bad faith, a party seeking relief under the Lanham Act bears the ultimate

14  burden of proving actual deception by using reliable consumer or market research.");

15  <u>U-Haul Int'l</u>, 793 F.2d at 1040-41 ("He who has attempted to deceive should not

16  complain when required to bear the burden of rebutting a presumption that he

17  succeeded.").

18        A false advertising claim may also be maintained if the challenged statements

19  are literally true, but misleading.[1]  <u>See</u> <u>Johnson & Johnson Vision Care, Inc. v. 1-800</u>

20  <u>Contacts, Inc.</u>, 299 F.3d 1242, 1247 (11th Cir. 2002); <u>Southland Sod Farms</u>, 108 F.3d

21  at 1140.  Consumer survey research and expert testimony are sufficient to establish

22

23

---

24  [1] Even if Coca-Cola complied with the Federal Food Drug, and Cosmetic Act (the

25  "Act") and its implementing regulations in the naming and labeling of the Juice—

which Coca-Cola did not—that is not dispositive on whether or not Coca-Cola's

26  advertising is misleading.  As Coca-Cola's own expert, Neil Fortin, conceded in his

expert report, a statement made in labeling "may be technically accurate but still

27  mislead."  Further, Coca-Cola's Director of Scientific and Regulatory Affairs has

acknowledged that Coca-Cola has the obligation to both comply with applicable FDA

28  regulations and to ensure that its product labels are not misleading.

1  such actionable deception.  See Johnson & Johnson Merck Consumer Pharm. Co. v.

2  Smithkline Beecham Corp., 960 F.2d 294, 298 (2d Cir. 1992); Coca-Cola Co. v.

3  Tropicana Prods., Inc., supra, 690 F.2d at 317 ("When the challenged advertisement

4  is implicitly rather than explicitly false, its tendency to violate the Lanham Act by

5  misleading, confusing or deceiving should be tested by public reaction."); Southland

6  Sod Farms, 108 F.3d at 1146.  Here, Coca-Cola's strategic advertising, by way of the

7  naming, labeling, and packaging of the Juice, has caused an exceptionally high level

8  of consumer deception, and caused consumers to believe that they purchased a

9  product composed of meaningful amounts of pomegranate and blueberry juice, when

10  in fact, as discussed above, the product contained virtually no pomegranate and

11  blueberry juice.

12      **B.      Coca-Cola's False Advertising Is Material.**

13          As discussed above, Coca-Cola's advertising is literally false, and thus

14  presumed to be material.  See Sinai v. California Bureau of Auto Repair, 28

15  U.S.P.Q.2d 1627, 1628 (N.D. Cal. 1993); Energy Four, Inc. v. Dornier Med. Sys.,

16  Inc., 765 F. Supp. 724, 731 (N.D. Ga. 1991) ("actually false claims are presumed

17  material") (citation omitted); Johnson & Johnson Vision Care, Inc. v. Ciba Vision

18  Corp., 348 F. Supp. 2d 165, 180 (S.D.N.Y. 2004) ("Once it is determined that a

19  statement is false, it is presumed to be material.") (citation omitted).  For the reasons

20  discussed above, Coca-Cola's naming and labeling of the Pomegranate Blueberry

21  Juice was literally false and, as such, materiality should be presumed.

22          Materiality is also presumed, even if the defendant's naming and labeling of its

23  product are merely misleading, if such statements relate to the essential

24  characteristics, nature or quality of the advertised product.  See Cashmere & Camel

25  Hair Manufacturers Institute v. Saks Fifth Avenue, 284 F.3d 302, 312 (1st Cir. 2002);

26  Purely Juice, Inc., 2008 WL 4222045, at *11 (finding false advertising claiming

27  product was 100% pomegranate juice was material because it pertained to the very

28  nature of the juice), citing 1-800 Contacts, Inc., 299 F.3d at 1250 ("A plaintiff may

1  establish this materiality requirement by proving that 'the defendants misrepresented

2  an inherent quality or characteristic of the product.'").

3      Nevertheless, even absent a presumption, the false and misleading content of

4  Coca-Cola's packaging of the Juice is plainly material.  "The materiality inquiry

5  focuses on whether the false or misleading statement is likely to make a difference to

6  purchasers."  Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d

7  384, 478 (D.N.J. 2009) (internal quotation marks and citation omitted); accord J.

8  Thomas McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 27:35 (4th

9  ed.).[2]   The evidence also will show that consumers were actually deceived and

10 misled.

   **C.    Coca-Cola Has Introduced Its False Advertising Into Interstate**
11

12 **Commerce.**

13      It is undisputed that Coca-Cola has introduced its naming and labeling

14 advertising for its POMEGRANATE BLUEBERRY juice into interstate commerce.

15  **D.    POM Is Injured By Coca-Cola's False Advertising.**

16      As an initial matter, it is well-established that "a competitor need not prove

17 injury when suing to enjoin conduct that violates section 43(a)" of the Lanham Act.

18 Harper House, 889 F.2d at 210; see also Southland Sod Farms, 108 F.3d at 1146; see

19 generally 5 McCarthy on Trademarks and Unfair Competition, § 27:28 (4th ed.

20 2007).  It is enough that likelihood of injury be shown.

21      While showing likelihood of injury is enough to carry its burden, POM can

22 also establish actual injury in this case.  POM's damages expert, Joseph Anastasi's

23 expert report quantifies the injury that POM has suffered.  At trial, Mr. Anastasi will

24 present his expert testimony on that subject.

25

26

27 _____

28 [2] See Purely Juice, Inc., 2008 WL 4222045, at *11 (holding consumer inquiries to Purely Juice establish materiality of the company's false advertising).

# V.   REMEDIES

## A.   POM Is Entitled To A Monetary Recovery From Coca-Cola.

The result of Coca-Cola's wrongful conduct in selling its juice product that contains virtually none of the juices in the product name, POM sustained significant damages.  Under the Lanham Act, a plaintiff in a false advertising case is entitled to recover, subject to equitable principles: "(1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  "In order to be entitled to damages, a plaintiff making a false advertising claim under 15 U.S.C. § 1125 need not prove actual harm."  Purely Juice, Inc., 2008 WL 4222045, at *14, citing Southland Sod Farms, 108 F.3d at 1145-46 (noting an inability to show actual damages does not alone preclude a recovery under section 1117).  Applying section 1117, courts have awarded plaintiffs both defendant's profits and damages simultaneously.  See id. at *15; see also 5 McCarthy on Trademarks and Unfair Competition § 30:73 (4th ed.) ("The Lanham Act itself is no obstacle to a recovery of both plaintiff's damages and defendant's profits.").  Injunctive relief and prejudgment interest and costs may also be awarded under the Lanham Act.  See 15 U.S.C. § 1117. Additionally, the Lanham Act provides for the trebling of damages where, as here, defendant's actions are willful and, in exceptional cases, an award of reasonable attorneys' fees.  Id.  Exceptional cases justifying attorneys' fees include cases where the defendant's conduct can be characterized as "malicious, fraudulent deliberate or willful".  5 McCarthy on Trademarks and Unfair Competition § 30:99 (4th ed.) (internal quotes omitted), citing Senate Rep. No. 93-1400, 93rd Cong. 2d Sess. 2 (Dec. 17, 1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133.

Joseph Anastasi, Managing Director at the Berkeley Research Group, a financial and economics consulting firm, calculated POM's measurable lost profits as $77.6 million.  Alternatively, Mr. Anastasi made a very conservative calculation of POM's measurable lost profits as $37.7 million by restricting the calculated projected sales of POM's pomegranate juice products by the amount of pomegranate juice

1  concentrate that would have been available only from POM's own orchards, which is
2  artificially restrictive.  Mr. Anastasi also made a separate, third alternative calculation
3  of POM's ascertainable lost profits of $37.5 million using switching information from
4  the consumer survey of POM's expert, Dr. Yoram Wind, of purchasers of the Juice.
5  This takes into consideration the conservative estimate of the percentage of Coca-
6  Cola's sales of its Pomegranate Blueberry Juice that would have been switched to
7  POM.  Mr. Anastasi's calculations are limited to POM's damages that are measurable
8  and do not include the additional damages POM suffered that are not calculable.

9      Additionally, Mr. Anastasi analyzed Coca-Cola's profits, as Coca-Cola's
10  undue gains are also recoverable under the Lanham Act.  See 15 U.S.C. § 1117(a).
11  Indeed, disgorgement of Coca-Cola's profits is a proper remedy in addition to an
12  award of POM's lost profits.  See id.; Purely Juice, Inc., 2008 WL 4222045, at *15
13  (awarding POM both disgorgement of defendant's profits and damages); George
14  Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992) (both damage and
15  profit awards may be assessed "according to the circumstances of the case"); Babbit
16  Elecs., Inc. v. Dynascan Corp., 828 F. Supp. 944, 958 (S.D. Fla. 1993) aff'd, 38 F.3d
17  1161 (11th Cir. 1994) (awarding plaintiff damages and defendant's profits because
18  recovery under 15 U.S.C. § 1117(a) is "cumulative"); Aladdin Mfg. Co. v. Mantle
19  Lamp Co. of Am., 116 F.2d 708, 716 (7th Cir. 1941) (noting that both damages and
20  profits may be awarded to a prevailing plaintiff).  This is especially true, where, as
21  here, the defendant's conduct is deliberate and willful.  See Truck Equip. Serv. Co. v.
22  Fruehauf Corp., 536 F.2d 1210, 1222-23 (8th Cir. 1976) (considerations of
23  willfulness and bad faith justify awarding all of defendant's profits); Wildlife
24  Research Ctr., Inc. v. Robinson Outdoors, Inc., 409 F. Supp. 2d 1131, 1135 (D. Minn.
25  2005) (granted damages and defendant's profits where willfulness was shown).  Mr.
26  Anastasi calculated Coca-Cola's actual gross sales to be $230.6 million.  Coca-Cola
27  has the burden of showing it is entitled to any deductions from its gross sales.  See id.
28  Mr. Anastasi disagrees with Coca-Cola's calculations of its profits.

1    Furthermore, Mr. Anastasi, calculated that Coca-Cola avoided spending at least

2    $121.3 million in pomegranate and blueberry juice costs by not constituting its juice

3    product with pomegranate and blueberry juices in amounts expected by consumers.

4    These dollars represent, at a minimum, a direct contribution to Coca-Cola's profits of

5    which it should not receive the benefit and which should be added to Coca-Cola's

6    profits to determine the amount awarded to POM.  Here, Coca-Cola alleges it earned

7    $5.6 million in profit on the Juice, but POM suffered $37-$77 million in damages in

8    its lost profits.  Where, as here, the defendant's profits are inadequate to compensate

9    the plaintiff, courts have the discretion to award a sum determined to be equitable

10   under the circumstances.  See, e.g., Source Perrier, S.A. v. Waters of Saratoga

11   Springs, Inc., 1982 WL 51044, at *4-5 (S.D.N.Y. Dec. 9, 1982) (where the defendant

12   sold 720,000 bottles of its sparkling water misappropriating the plaintiff's trademark,

13   but did not make a profit, court awarded plaintiff the amount it determined that

14   plaintiff would have made as profit if it had sold 720,000 bottles of its sparkling

15   water); U-Haul Int'l, Inc., 793 F.2d at 1042 (affirmed a $40 million damages award

16   under the Lanham Act which included $6 million, the cost of the defendant's

17   advertising campaign, as the defendant's profits where the defendant claimed it did

18   not make a profit); Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th

19   Cir. 1986) (awarding the plaintiff the defendant's gross receipts for the sale of

20   counterfeit goods where a portion of the goods were sold at cost because award of

21   only the defendant's profits was not an adequate remedy as it did not remove the

22   economic incentive from the defendant's infringing acts).  Therefore, the Court has

23   the discretion to award POM the $121.3 million as Coca-Cola's profits.

24   Thus, relying on Mr. Anastasi's very conservative calculations, POM would be

25   entitled to $37-$77 million in damages in its lost profits and $121-$230 million in

26   Coca-Cola's profits or undue gains under the Lanham Act.  Moreover, the award of

27   POM's lost profits should be trebled, and the award of Coca-Cola's undue gains

28   should be increased, as a result of Coca-Cola's willful, intentional and deliberate acts.

1   See 15 U.S.C. § 1117(a); see also 5 McCarthy on Trademarks and Unfair

2   Competition § 30:90 (4th ed.) ("Lanham Act § 35 gives a court the discretionary

3   power to:  1. Increase damages up to treble damages; and 2. Increase or decrease an

4   award of profits by any amount if the court finds the profit recovery is 'either

5   inadequate or excessive.'").  Finally, because Coca-Cola's false advertising was

6   willful, this is an exceptional case under 15 U.S.C. § 1117 (a)(3) and POM is entitled

7   to an award of its attorneys' fees, as discussed in more detail below.

8   **B.     POM Is Entitled To An Award Of Its Attorneys' Fees.**

9   Section 35(a) of the Lanham Act authorizes the district court, in its discretion,

10  to award attorneys' fees to the prevailing party in "exceptional circumstances."  15

11  U.S.C. § 1117(a).  Such exceptional circumstances include "cases in which the act is

12  fraudulent, deliberate, or willful."  Horphag Research Ltd. v. Garcia, 475 F.3d 1029,

13  1039 (9th Cir. 2007); see also TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820,

14  832 (9th Cir. 2011) (district court's willfulness finding underpinning award of

15  attorneys' fees was supported by evidence that defendants knew their conduct

16  confused consumers).  Whether Coca-Cola's deception was "egregious" is irrelevant

17  to whether it was "exceptional" under Horphag.  See TrafficSchool.com, 653 F.3d at

18  833, citing Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1217 (9th Cir.

19  2003) (held that exceptionality doesn't require egregious conduct).  The district court

20  decides whether the case is exceptional under 35 U.S.C. § 285, and whether

21  attorneys' fees should be awarded.  See Seven-Up Co. v. Coca-Cola Co., 86 F.3d

22  1379, 1390 (5th Cir. 1996) ("The determination as to whether a case is exceptional is

23  left to the ... discretion of the trial court.").

24  A district court may determine that a case is "exceptional" based upon a jury

25  finding that defendant acted deliberately or willfully.  See SLB Toys USA, Inc. v.

26  Wham-O, Inc. 330 Fed. Appx. 634, 637 (9th Cir. 2009) (holding district court did not

27  abuse its discretion in awarding attorneys' fees to Wham-O based on findings that

28  SLB acted willfully and the district court's own determination that SLB acted

1  deliberately and willfully); <u>University of Kansas v. Sinks</u>, 2009 WL 3191707, at *2

2  (D. Kan. Sept. 28, 2009) ("Here, the jury explicitly found that the defendants acted

3  willfully on the verdict form.").  Once the jury finds willfulness, the district court

4  then has the discretion and responsibility to decide whether the case is "exceptional,"

5  considering the jury's finding.  <u>See</u> <u>Brighton Collectibles, Inc. v. Coldwater Creek</u>

6  <u>Inc.</u>, 2009 WL 160235, at *2 (S.D. Cal. Jan. 20, 2009) ("The Court finds this case

7  exceptional based on the total record of this case, including the jury's finding of

8  willfulness.").  In ruling on this issue, the judge will typically cite the jury's

9  willfulness finding along with other evidence.  <u>See</u> Tamko Roofing Products, Inc. v.

10  Ideal Roofing Co., Ltd., 282 F.3d 23, 31 (1st Cir. 2002).

11         Thus, to the extent the jury finds that Coca-Cola's false advertising was

12  fraudulent, deliberate, or willful (which, as discussed above, the evidence shows), this

13  case should be found exceptional, and POM should be awarded its reasonable

14  attorneys' fees.

15  **C.    The Court Should Enjoin Coca-Cola's False Advertising Of The**

16  **Pomegranate Blueberry Juice.**

17         POM also seeks an injunction to prevent Coca-Cola from reintroducing the

18  same or similar juice, and, specifically, from reintroducing another pomegranate juice

19  product whether introduced as a "flavor" or ingredient, without disclosing the actual

20  percentage of the juices in the product on the label itself.  Injunctive relief is available

21  for claims asserted pursuant to Section 43(a) of the Lanham Act.  To be entitled to

22  such relief under the Lanham Act, a plaintiff must establish that (1) it will suffer

23  irreparable harm if an injunction is not granted; (2) the potential injury to plaintiff if

24  the injunction is not granted is greater than the potential injury to defendant if the

25  injunction is issued; and (3) that the public interest favors issuing an injunction.  <u>See</u>

26  <u>Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharm. Co.</u>, 290

27  F.3d 578, 595-97 (3d Cir. 2002).  POM can establish these elements, and is thus

28  entitled to a permanent injunction.

1    Although Coca-Cola discontinued sales of its Pomegranate Blueberry Juice in

2    December 2014, POM's request for injunctive relief is not moot.  The Supreme Court

3    has made it crystal clear: a defendant cannot moot a request for injunctive relief by

4    stopping the violative conduct where the conduct can be easily repeated.  See Allee v.

5    Medrano, (1974) 416 U.S. 802, 94 S.Ct. 2191, 2197-98, 40 L.Ed.2d 566.  Regardless

6    of its self-serving promise that it will no longer sell its Pomegranate Blueberry Juice,

7    Coca-Cola bears an extraordinary burden to establish mootness.  See Iron Arrow

8    Honor Soc'y v. Heckler, 464 U.S. 67, 72, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983)

9    (defendant "face[s] a heavy burden to establish mootness in such cases because

10   otherwise they would simply be free to 'return to [their] old ways' after the threat of a

11   lawsuit has passed."); Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-

12   36 (9th Cir. 1986) (held plaintiff need not show that defendant is likely to engage in

13   same misconduct in the future to justify issuance of injunction where defendant has

14   ceased violating the Lanham Act where defendant willfully violated the act and did

15   not stop violations until after plaintiff filed suit).

16   Presently there is no legal bar for Coca-Cola to reintroduce its Pomegranate

17   Blueberry Juice or a similarly misleading product. Coca-Cola should be barred from

18   introducing any pomegranate juice product without disclosing the actual percentages

19   of juices in the product on the label itself.  The Court has discretion to grant such an

20   injunction.  See 15 U.S.C. § 1116(a) (courts "have power to grant injunctions,

21   according to the principles of equity and upon such terms as the court may deem

22   reasonable"); United Tactical Sys., LLC v. Real Action Paintball, Inc., 2014 WL

23   6788310, at *24 (N.D. Cal. Dec. 2, 2014) ("The scope of an injunction is within the

24   broad discretion of the district court.") (quoting TrafficSchool.com, Inc. v. Edriver

25   Inc., 653 F.3d 820, 829 (9th Cir. 2011)).  "Such requested relief poses little, if any,

26   harm to [the defendant]."  Sun Microsystems, Inc. v. Microsoft Corp., 87 F. Supp. 2d

27   992, 998 (N.D. Cal. 2000); see also Levi Strauss & Co. v. Shilon, 121 F.3d 1309,

28   1314 (9th Cir. 1997) ("If [Shilon] sincerely intend[s] not to infringe, the injunction

1   harms [him] little; if [he does], it gives [Levi Strauss] substantial protection of its

2   trademark[s].”), citing <u>Polo Fashions</u>, 793 F.2d at 1135-36; <u>accord</u> <u>Visioneer, Inc. v.</u>

3   <u>UMAX Tech., Inc.</u>, 1998 WL 856080, at *3 (N.D. Cal. Dec. 7, 1998) (recognizing

4   there is no harm to a defendant that is ordered to stop publishing false or misleading

5   statements); <u>Kennedy Indus., Inc. v. Aparo</u>, 416 F. Supp. 2d 311, 317 (E.D. Pa. 2005)

6   (“There is a strong public interest in preventing false advertising of products in the

7   marketplace.”); <u>Resource Lenders, Inc. v. Source Solutions, Inc.</u>, 404 F. Supp. 2d

8   1232, 1249-50 (E.D. Cal. 2005) (same); <u>Church & Dwight Co., Inc. v. SC Johnson &</u>

9   <u>Son Inc.</u>, 873 F. Supp. 893, 912 (D.N.J. 1994) (same).

10      Here, where Coca-Cola uses false and misleading statements via the name and

11   label of the Juice to dupe the public into believing that it is purchasing a 100% juice

12   product that contains meaningful amounts of pomegranate and blueberry juices, the

13   public interest clearly favors injunctive relief to prevent the false advertising of Coca-

14   Cola’s product.

15   **VI.   ELEMENTS OF COCA-COLA’S AFFIRMATIVE DEFENSES**

16      **A.   Elements Required To Establish Coca-Cola’s Unclean Hands**
17      **Defense.**

18      To establish an unclean hands defense, plaintiff’s conduct must have an

19   “immediate and necessary relation” to the claim plaintiff asserts against defendant.

20   <u>Southern Cal. Darts Ass’n v. Zaffina</u>, 762 F.3d 921, 932-33 (9th Cir. 2014).  In the

21   Ninth Circuit, courts interpreting and applying this standard have held such conduct

22   must “directly relate” to the immediate controversy.  <u>See</u> <u>Pom Wonderful LLC v.</u>

23   <u>Welch Foods, Inc.</u>, 737 F. Supp. 2d 1105, 1111 (C.D. Cal. 2010); <u>Surefire, LLC v.</u>

24   <u>Jetbeam USA</u>, 2014 WL 1512983, at *2 (S.D. Cal. Apr. 16, 2014) (law requires “that

25   the plaintiff’s conduct directly relates to the claim which it has asserted against the

26   defendant”) (internal quotation marks and citation omitted); <u>Campagnolo S.R.L. v.</u>

27   <u>Full Speed Ahead, Inc.</u>, 258 F.R. D. 663, 666 (W.D. Wash. 2009) (rejecting unclean

28   hands defense in false advertising case where defendant’s claim that plaintiff

1  misrepresented the weight of its own cranksets did not directly relate to plaintiff's

2  allegations that defendant misrepresented the weight of  plaintiff's cranksets in

3  advertising).  To assert a viable unclean hands defense, it is not enough for the

4  conduct just to be factually similar.  Welch Foods, 737 F. Supp. 2d at 1110; Specialty

5  Minerals, 395 F. Supp. 109, 112-13 ("factually similar misconduct alone is [not]

6  sufficient to create the necessary link").

7          Even assuming the plaintiff's alleged misconduct is sufficiently related to the

8  plaintiff's claims against the defendant, the defendant must satisfy the heightened

9  legal standard for the application of any unclean hands defense, i.e. because the

10 defense is very disfavored.  See Bracco Diagnostics, 627 F. Supp. 2d at 465 (citation

11 omitted) ("Although often asserted, an unclean hands defense to a false advertising

12 claim "is rarely successful due to 'a strong public interest in the prevention of

13 misleading advertisements.'").  In fact, "courts are reluctant to apply the unclean

14 hands doctrine in all but the most egregious situations."  U-Haul Int'l, Inc. v. Jartran,

15 Inc., 522 F. Supp. 1238, 1255 (D.C. Ariz. 1981), aff'd, 681 F.2d 1159 (9th Cir. 1982).

16         Therefore, to prevail at trial on an unclean hands defense, a defendant must

17 demonstrate with "clear, convincing evidence" [3] that the plaintiff's conduct was not

18 only inequitable and directly related to the plaintiff's claim against the defendant, but

19 egregious as well.  See Welch Foods, 737 F. Supp. 2d at 1113; Citizens Fin. Group,

---

[3] TrafficSchool.com, 653 F.3d at 834; accord Pfizer, Inc. v. International Rectifier
Corp., 685 F.2d 357, 369 (9th Cir. 1982) ("only a showing of wrongfulness,
willfulness, bad faith, or gross negligence, proved by clear and convincing evidence,
will establish sufficient culpability for invocation of the doctrine of unclean hands.");
Welch Foods, 737 F. Supp. 2d at 1113 (defendant required to submit "clear and
convincing" evidence to prevail on unclean hands defense on summary judgment);
Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 2008 WL 6873811, at *5 (C.D.
Cal. Jan. 3, 2008) (same); Tube Forgings of America, Inc. v. Weldbend Corp., 788 F.
Supp. 1150, 1153 (D. Or. 1992) (summary judgment granted against defendant's
unclean hands defense where defendant failed to come forward with "clear and
convincing" evidence of plaintiff's misconduct).

1   Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 129 (3d Cir. 2004) (a

2   defendant asserting an unclean hands defense must introduce "clear, convincing

3   evidence of egregious misconduct") (internal quotations omitted).  "Egregious

4   misconduct" can take the form of "fraud, unconscionability, or bad faith on the part

5   of the plaintiff." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 377 n. 7 (3d. Cir.

6   1992); Sanofi–Aventis v. Advancis Pharm. Corp., 453 F. Supp. 2d 834, 856–857 (D.

7   Del. 2006) (rejecting the "unclean hands" defense and holding that although

8   defendant put forth some evidence that plaintiffs may have had a competitive purpose

9   in filing the action, "clear, convincing and unequivocal evidence" of "egregious"

10  conduct was lacking).

11          To prove that the plaintiff's conduct is inequitable (or egregious), defendant

12  must show injury either to itself or the public as a result of plaintiff's alleged

13  misconduct.  See Japan Telecom, Inc. v. Japan Telecom. America Inc., 287 F.3d 866,

14  871-72 (9th Cir. 2002) (held fact issue existed as to whether plaintiff's trade name

15  was primarily geographically deceptively misdescriptive, as would demonstrate

16  inequitable conduct supporting unclean hands defense where defendant failed to

17  produce evidence that consumers had actually been deceived); Perfumebay.com Inc.

18  v. ebay, Inc., 506 F.3d 1165 (9th Cir. 2007) (rejecting unclean hands defense where

19  record did "not affirmatively demonstrate that eBay used the advertisements to

20  'deceive consumers'"); EMED Techs. Corp. v. Repro-Med Sys., Inc., 2015 WL

21  3794967, at *12 (E.D. Cal. June 17, 2015) (declining to bar relief on the unclean

22  hands doctrine where defendant failed to prove customers were affected by plaintiff's

23  alleged misleading statements in its user manual); Republic Molding Corp. v. B. W.

24  Photo Utilities, 319 F.2d 347, 349-50 (9th Cir. 1963); Surefire, LLC, 2014 WL

25  1512983, at *2 (rejecting defendant's motion to compel documents based on claimed

26  relevance to its unclean hands affirmative defense where defendant's theory that it

27  would be injured by plaintiff's alleged misconduct was not supported); Metro–

28  Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1223 (C.D.Cal.

1  2007) (rejecting unclean hands defense where defendant suffered no harm).  "Bad

2  intent is the essence of the defense of unclean hands," and a merely negligent action

3  is insufficient.  See Dollar Systems, Inc. v. Avcar Leasing Systems, Inc., 890 F.2d

4  165, 173 (9th Cir. 1989); Japan Telecom., 287 F.3d at 870.

5      Coca-Cola cannot meet its burden with conclusory statements and alleged legal

6  presumptions.  Coca-Cola lacks any expert opinions: (1) interpreting POM's health

7  claim advertising (or surveying consumer's impressions of the same); (2)

8  affirmatively proving that POM's health claims are false; (3) evaluating why

9  consumers bought POM's products; or (4) measuring any harm suffered by

10  consumers or Coca-Cola.  Indeed, there is no evidence of any kind concerning any

11  harm to Coca-Cola or consumers as result of POM's health claim advertising.

12  Therefore, the record is devoid of any admissible fact or expert evidence that Coca-

13  Cola can use to demonstrate that POM's alleged health claim advertising was

14  inequitable, let alone sufficiently egregious to establish the unclean hands defense.

15  See id.; Welch Foods, 737 F. Supp. 2d at 1113 (misconduct not found in absence of

16  evidence that POM's alleged deception caused consumers to purchase a product that

17  they otherwise might not have purchased).[4]

18

19

_____

20  [4] Coca-Cola cannot rely on the FTC decision to meet its burden of proving, with

21  "clear and convincing" evidence, that POM's health claim advertising caused injury
   to Coca-Cola or consumers.  Although the FTC ruled that POM's challenged

22  advertisements were "material" to a consumers' purchasing decision, there was no
   finding of actual harm to consumers.  Indeed, the FTC's materiality finding was

23  based, in primary part, on a presumption of materiality afforded to the FTC for

24  "claims significantly involving health or safety, and claims pertaining to the central

25  characteristic of the product."  In the Matter of POM Wonderful LLC, et al., Dkt. No.

26  9344, Opinion of Commission dated Jan. 10, 2013 at p. 39 (quoting In re Novartis
   Corp., 127 F.T.C. 580, 686 (1999), aff'd, 223 F.3d 783 (D.C. Cir. 2000)).  In the FTC

27  action, no evidence was offered by the FTC to affirmatively prove either that POM's
   challenged advertisements were material to consumers or that consumers were in any

28  way deceived by POM's advertisements.

**B.**   **Plaintiff's Unclean Conduct Must Occur At The Time Of The Conduct It Accuses Defendant Of.**

The doctrine of unclean hands does not deny relief to a plaintiff guilty of past misconduct; only conduct directly related to the matter in which he seeks relief triggers the defense.  Cal-Agrex, Inc. v. Tassell, 258 F.R.D. 340, 351 (N.D. Cal. 2009).  As stated by the Cal-Agrex court:

> The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties.

Id. at 351 (citation omitted); accord Hynix Semiconductor, Inc. v. Rambus, Inc., 591 F. Supp. 2d 1038, 1066-1067 (N.D. Cal. 2006).  This basic limitation on the unclean hands doctrine dates back to 1920.  Coca-Cola Co. v. Koke Co. of America, 254 U.S. 143, 65 L.Ed. 189, 41 S.Ct.113, 147 (1920) ("The plaintiff's position must be judged by the facts as they were when the suit was begun, not by the facts of a different condition and an earlier time.").[5]

**C.**   **Coca-Cola Should Be Barred From Presenting Evidence Regarding POM's Health Claim Advertising.**

Coca-Cola alleges that POM's health claim advertising is "not supported by any substantial scientific evidence."  To the extent that POM's advertising referenced scientific studies, those studies themselves evidence that POM's statements were sufficiently supported.  Further, Coca-Cola's assertion that "Plaintiff's health claims are not supported by any substantial scientific evidence" do not even come close to the type of conduct POM complains of, i.e. the lack of pomegranate and blueberry

---

[5] Coca-Cola is limited to the specific types of purported misconduct it alleges amount to unclean hands in its Thirty-Fourth Affirmative Defense.  Thus, Coca-Cola should be barred from arguing at trial that conduct relating products other than POM's "Pomegranate Blueberry" product constitutes "unclean hands".

1  juice in Coca-Cola's product or any misrepresentation regarding the amount of any

2  particular component or ingredient.  Compare FAC, ¶¶ 17-23 [Dkt. No. 53] with

3  Answer at p. 13:6-7 [Dkt. No. 70].  Instead, Coca-Cola's alleged "wrongs" or

4  "consumer deception" committed by POM are, as in Welch Foods, "premised on a

5  different deception, different factual allegations, and different types of

6  advertisements."  Welch Foods, 737 F. Supp. 2d at 1111.

7       Even assuming this unclean hands defense is "directly related" (and it is not),

8  Coca-Cola lacks clear and convincing evidence of egregious misconduct to support

9  its affirmative defense of unclean hands based on POM's health advertising.  POM

10  anticipates that Coca-Cola may try to rely upon the rulings in Pom Wonderful LLC v.

11  Federal Trade Commission, 777 F.3d 478 (D.C. Cir. 2015).  However, Coca-Coca

12  cannot rely upon the rulings in the FTC proceeding, which has a different evidentiary

13  standard (lack of scientific substantiation) reserved exclusively for the government

14  and prosecuting authorities, not private litigants.  Nor can Coca-Cola under the

15  heightened evidentiary standards for unclean hands defenses, which require a

16  showing of clear and convincing evidence to prevail at trial, prove that POM's health

17  claim advertising is: (i) affirmatively/literally false or misleading;[6] and (ii)

18  sufficiently egregious to support the application of unclean hands.

19       Coca-Cola has not presented any expert opinion on POM's advertising (or on

20  the actual messages purportedly conveyed); it has not presented any expert opinion

21  affirmatively disputing the claimed benefits of POM's pomegranate juice products (as

22  distinguished from expert opinion on whether the studies relied upon by POM are

23  sufficiently reliable or credible).  Nor does Coca-Cola have any evidence of harm

24  from the alleged misleading advertising.  See Welch Foods, 737 F. Supp. 2d at 1113

25  (finding Welch did not demonstrate by clear and convincing evidence that POM's

26

27  ――――――――――――――――

28  [6] In other words, Coca-Cola must offer clear and convincing evidence affirmatively disproving the truth of POM's purported health claims.

1   conduct was egregious where it offered no evidence that POM's alleged deception

2   caused consumers to purchase a product that they otherwise might not have

3   purchased).  It is simply not enough to allege, as Coca-Cola does in its Answer, that

4   the POM's health advertising claims are not "substantiated."

5   **VII.   ISSUES TRIABLE TO JURY AS A MATTER OF RIGHT**

6         POM's claim pursuant to Section 43(a) of the Lanham Act is triable to a jury as

7   a matter of right, and POM has made a timely jury demand via its original Complaint

8   and its First Amended Complaint.  It is well-established that there is a Seventh

9   Amendment right to a jury trial for Lanham Act claims for actual damages.  <u>See</u>

10  <u>Dairy Queen v. Wood</u>, (1962) 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44.

11  The jury decides the actual damages for a Lanham Act violation, and the district court

12  has discretion to increase the jury's award under certain circumstances.[7]

13  **VIII.  ISSUES NOT TRIABLE TO JURY AS A MATTER OF RIGHT**

14        Most of what Coca-Cola's Answer pleads under the title "affirmative defenses"

15  are actually contentions that the evidence does not support an element of POM's

16  affirmative claims – <i>i.e.</i>, they are not affirmative defenses at all.  To the extent Coca-

17  Cola's Answer does plead several affirmative defenses against POM's claim, those

18  defenses are not triable to a jury as a matter of right.  Specifically, Coca-Cola's

19  Second Affirmative Defense (Equitable Defenses) and Thirty-Fourth Affirmative

20  _____

21  [7] <u>See</u> <u>Go Medical Industries Pty., Ltd. v. Inmed Corp.</u>, 471 F.3d 1264, 1274 (Fed. Cir.

22  2007) ("First, we agree with the district court that § 1117 does not allow for a downward adjustment of actual damages."); <u>Collegenet, Inc. v. XAP Corp.</u>, 483 F.

23  Supp. 2d 1058, 1064 (D. Or. 2007) ("This provision does not allow for a downward

24  adjustment of actual damages."); <u>Id.</u> at 1067 ("Section 35(a) of the Lanham Act clearly grants the Court the discretionary authority under certain circumstances to

25  enhance but not to reduce the jury's award of $4.5 million in actual damages to

26  CollegeNET."); <u>Avid Identification Systems, Inc. v. Phillips Electronics North</u>

27  <u>America Corp.</u>, 2008 WL 819962, at *1 (E.D. Tex. Mar. 25, 2008) ("In assessing damages, the court may enter judgment for any sum above the amount of actual

28  damages awarded by the jury.").

1  Defense (Unclean Hands) are not triable to a jury.  Equitable defenses such as

2  unclean hands are for the district court to decide,[8] although the court's decision may

3  be informed by the jury's fact-finding, and the jury may make advisory findings.  See

4  Wang v. Hsu, 15 F.3d 1095, 1993 WL 503265, at *2 (9th Cir. 1993) (declining to

5  apply unclean hands doctrine based upon jury's findings).

6

7  DATED:  February 8, 2016            ROLL LAW GROUP PC

8

9                                      By:  _____/s/ Kristina M. Diaz_____

10                                           Kristina M. Diaz
                                             Attorneys for Plaintiff
11                                           POM WONDERFUL LLC

12

13

14

15

16

17

18

19

20

21

22

23

_____

24  [8] See Aventis Pharma S.A. v. Amphastar Pharmaceuticals, Inc., 390 F. Supp. 2d 936,

25  942 (C.D. Cal. 2005) ("The defense of inequitable conduct is entirely equitable in
    nature, and thus not an issue for a jury to decide."); Mylan Pharms., Inc. v.
26  Thompson, 268 F.3d 1323, 1331 (Fed. Cir. 2000) (defendants' equitable defenses,

27  unclean hands and inequitable conduct, are equitable defenses; the Court, not the jury
    is obligated to decide these issues); Old Towne Canoe Co. v. Confluence Holdings
28  Corp., 448 F.3d 1309, 1322 (Fed. Cir. 2006).